**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

|  |  |  |
|---|---|---|
| **ANDREA THOMAS, DEANDRE TINSON,** | : | |
| **and SHONNIKA SPEARS on behalf** | : | |
| **of themselves and others similarly situated,** | : | **CASE NO.: 6:19-cv-1528-RBD-GJK** |
| | : | |
| | : | **COLLECTIVE ACTION** |
| **Plaintiffs,** | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **JSTC, LLC,** | : | |
| **COMMERCIAL EXPRESS, INC.,** | : | |
| **COEI, LLC,** | : | |
| **AG PLUS EXPRESS, LLC, and** | : | |
| **DROP A BOX, INC.** | : | |
| | : | |
| **Defendants.** | : | |

## FIRST AMENDED COLLECTIVE ACTION COMPLAINT

Plaintiffs Andrea Thomas ("Thomas"), DeAndre Tinson ("Tinson"), and Shonnika Spears ("Spears") (collectively, "Plaintiffs") through their undersigned counsel, individually, and on behalf of all persons similarly situated, file this First Amended Collective Action Complaint ("Complaint") against Commercial Express, Inc. and COEI, LLC ("COEI") (together, "Commercial Express"), JSTC, LLC ("JSTC"), AG Plus Express, LLC ("AG Plus"), and Drop a Box, Inc. ("Drop a Box") (collectively, "Defendants") seeking all available remedies under the Fair Labor  Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*.

This amendment is filed pursuant to Fed. R. Civ. P. 15(a)(1), and it relates back to the date of the original pleading pursuant to Fed. R. Civ. P. 15(c).  The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

**INTRODUCTION**

1.      Defendants COEI, Commercial Express, Inc. AG Plus, JSTC, and Drop a Box (collectively, the "DSPs") are Delivery Service Providers ("DSPs") of Amazon.com LLC and Amazon Logistics, Inc. (together, "Amazon") that employ individuals, such as Plaintiffs and members of the proposed Collective, to deliver packages to Amazon customers ("Delivery Associates").

2.      This case is about Defendants' failure to comply with applicable wage laws and to pay non-exempt Delivery Associates for all the time they worked – including overtime – as was required to deliver hundreds of Amazon packages each day and meet Amazon's delivery needs.

**JURISDICTION AND VENUE**

3.      Jurisdiction over Plaintiffs' FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Defendants reside in and conduct business in this District.

**PARTIES**

1.      Plaintiff Andrea Thomas is a citizen of Florida and resides in Jacksonville, Florida. Plaintiff worked for Defendants Commercial Express and JSTC as a Delivery Associate in Florida from approximately June 2018 to January 2019.  Pursuant to 29 U.S.C. § 216(b), Plaintiff Thomas has consented to be a plaintiff in this action. *See* Ex. A.

2.      Plaintiff DeAndre Tinson is a citizen of Florida and resides in Jacksonville, Florida. Plaintiff Tinson worked for Defendant Commercial Express as a Delivery Associate in Florida from approximately September 2018 to March 2019. Pursuant to 29 U.S.C. § 216(b), Plaintiff Tinson has consented to be a plaintiff in this action. *See* Ex. B.

3.      Plaintiff Shonnika Spears is a citizen of Florida and resides in Jacksonville, Florida. Plaintiff worked for Defendants Commercial Express and Drop a Box as a Delivery Associate in Florida from approximately February 2018 through August 2018, and then for Defendants Commercial Express and JSTC from approximately August 2018 through April 2019. Pursuant to 29 U.S.C. § 216(b), Plaintiff Spears has consented to be a plaintiff in this action. *See* Ex. C.

4.      Defendant Commercial Express, Inc. is a corporation with principal offices in Lake Mary, Florida. Commercial Express, Inc. is the parent company of COEI, with which it has common owners, agents, and a business address.  Commercial Express has entered into agreements with or otherwise directs a number of Delivery Service Providers, including the DSPs, to service Delivery Service Provider contracts to which Amazon is a party.

5.      Defendant COEI is a limited liability company with principal offices in Lake Mary, Florida.  COEI is a subsidiary company of Commercial Express, Inc., with which it has common owners, agents, and a business address. COEI provides Delivery Associates to Amazon as a Delivery Service Provider.

6.      Defendant JSTC is a corporation organized under the laws of Florida with principal offices in Melbourne, Florida.  JSTC provides Delivery Associates to Amazon as a Delivery Service Provider.  On information and belief, Commercial Express contracts with and/or otherwise directs JSTC to deliver Amazon packages from Amazon Delivery Stations located in Jacksonville, Florida.

7.      Defendant AG Plus is a limited liability company with principal offices in Windermere, Florida.  AG Plus provides Delivery Associates to Amazon as a Delivery Service Provider.  Commercial Express entered into a contract with AG Plus, pursuant to which AG Plus delivers Amazon packages from Amazon Delivery Stations located throughout Florida – in

Orlando, Davenport, Fort Myers, and Sarasota.

8.      Defendant Drop A Box is a corporation with principal offices in Saint Cloud, Florida.  Drop a Box provides delivery Associates to Amazon as a Delivery Service Provider.  On information and belief, Commercial Express contracts with and/or otherwise directs Drop A Box to deliver Amazon packages from Amazon Delivery Stations located in Jacksonville, Florida.

9.      The unlawful acts alleged in this Complaint were committed by Defendants and/or Defendants' officers, agents, employees, or representatives, while actively engaged in the management of Defendants' businesses or affairs and with the authorization of the Defendants.

10.      During times relevant, the Defendants acted as joint employers with respect to the Delivery Associates who delivered Amazon's packages.

11.      During times relevant, Plaintiff Tinson was an employee of Defendants Commercial Express, Inc and COEI and is covered by the FLSA.

12.      During times relevant, Plaintiff Thomas was an employee of Defendants Commercial Express and JSTC and is covered by the FLSA.

13.      During times relevant, Plaintiff Spears was an employee of Defendants Commercial Express, Drop A Box, and/or JSTC and is covered by the FLSA.

14.      Defendants are employers covered by the FLSA.

15.      Defendants employ individuals, including Delivery Associates, in Florida, as well as potentially other states.

16.      Defendants employ individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as described by 29 U.S.C. §§ 206-207.

17.      Defendants' annual gross sales exceed $500,000.

## COLLECTIVE DEFINITION

18.     Plaintiffs bring Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as

a collective action on behalf of themselves and the following class:

> All current and former Delivery Associates who were paid by Defendants
> Commercial Express, COEI, LLC, or any one of its subcontractors, including AG
> Plus Express, LLC, JSTC, LLC, and/or Drop a Box, Inc. to deliver packages for
> Amazon in the United States during the applicable limitations period (the "FLSA
> Collective").

19.     Plaintiffs reserve the right to redefine the FLSA Collective prior to notice or

certification, and thereafter, as may be warranted or necessary.

## FACTS

### Amazon's Use of Delivery Service Providers, Such as the DSPs

1.     Amazon is one of the largest businesses engaged in the interstate shipment of goods

in the United States.

2.     Amazon holds itself out as a company able to transport goods across the United

States to customers in a short time period.

3.     Amazon is widely known as a company able to transport goods across the United

States to customers in a short time period.

4.     Amazon utilizes Delivery Service Providers to transport goods across the country

to customers in a short time period.

5.     Amazon and Delivery Service Providers are in the business of delivering goods

across the United States.

6.     Delivery associates are engaged to fulfill Amazon's nationwide delivery needs and

make deliveries of goods from Amazon delivery stations to Amazon customers.

7.     The DSPs operate carrier and logistics businesses, in providing trucks and drivers

to deliver goods on behalf of Amazon.com and its affiliates. The goods are purchased by customers using Amazon.com, LLC's digital platform (the Amazon.com website).

8.      Each of the DSPs provide delivery services for Amazon at one or more of Amazon's Delivery Stations through the use of Delivery Associates such as Plaintiff.

9.      Plaintiff Tinson was hired in September 2018 and worked as a Delivery Associate for Defendants Commercial Express and COEI until on or about March 2019 in Amazon's Jacksonville, Florida location, making deliveries of packages on behalf of Amazon.

10.     Plaintiff Thomas was hired in June 2018 and worked as a Delivery Associate for Defendants Commercial Express and JSTC until on or about January 2019 in Amazon's Jacksonville, Florida location, making deliveries of packages on behalf of Amazon.

11.     Plaintiff Spears was hired in approximately February 2018 and worked as a Delivery Associate for Defendants Commercial Express and Drop a Box until August 2018 in Amazon's Jacksonville, Florida location, making deliveries of packages on behalf of Amazon.  Plaintiff Spears subsequently worked as a Delivery Associate for Defendants Commercial Express and JSTC from approximately August 2018 until approximately April 2019 in Amazon's Jacksonville, Florida location, making deliveries of packages on behalf of Amazon.

12.     The goods that Delivery Associates deliver from Amazon delivery stations to Amazon customers originate, or are transformed into their final condition, in a different state than the delivery state.

13.     The goods Delivery Associates deliver from Amazon delivery stations to Amazon customers are not transformed or modified during the shipping process.

14.     Delivery Associates deliver goods to Amazon customers in the same condition as they were shipped to the Amazon delivery station.

15.     Delivery Associates deliver goods to Amazon customers that were shipped around the United States.

16.     Plaintiffs and other Delivery Associates are necessary in order for Amazon goods traveling interstate make it to their final destination.

### The Nature of the Relationship Between the Defendant Delivery Service Providers

17.     Commercial Express, Inc. is the parent company of COEI.  The companies are owned and operated by the same individuals -- Max Schottmiller, Peter Schottmiller, Patricia A. Hart – and operate out of the same business address: 335 Lakeview Ave., Lake Mary, Florida 32746.

18.     Commercial Express has entered into agreements with or otherwise directs a number of Delivery Service Providers, including the DSPs, to service Delivery Service Provider contracts to which Amazon is a party.

19.     Commercial Express directs and controls the work of the Delivery Associates who are hired by the DSPs in accordance with mandates as to work, conditions, and management that are set by Amazon.

20.     Amazon is aware of this practice.

21.     Commercial Express entered into a contract with AG Plus, pursuant to which AG Plus delivers Amazon packages from Amazon Delivery Stations located throughout Florida, in Orlando, Davenport, Fort Myers, and Sarasota.  *See*, First Amended Complaint, *Optimal Logistics LLC et al. v. AG Plus Express, LLC et al.*, 6:18-cv-02224, ¶ 18 (M.D. Fl. Jan 29, 2019) (Dkt. No. 15).

22.     On information and belief, Commercial Express also contracts with or otherwise directs JSTC and Drop A Box to deliver Amazon packages from Amazon Delivery Stations located in Jacksonville, Florida.

23.     Along with Amazon, Commercial Express controls the work activities, policies, conditions, and management of the Delivery Service Providers with whom they contract, including the DSPs, and the Delivery Associates that those Delivery Service Providers hire, such as Plaintiffs. On information and belief, these specifications concerning work activities, policies, conditions, and management that that Commercial Express imposes are dictated by Amazon.

24.     For example, in a portion of the contract between Commercial Express and AG Plus, Commercial Express provided that it would set the distribution points from which AG Plus Delivery Associates would receive packages, set specified windows in which Delivery Associate must make these deliveries, establish the Delivery Associates' uniform according to specifications set out in the contract, and set other terms and policies with which AG Plus and its Delivery Associates were required to comply.  *See*, First Amended Complaint, *Optimal Logistics LLC et al. v. AG Plus Express, LLC et al.*, Exh. A, 6:18-cv-02224 (M.D. Fl. Jan 29, 2019) (Dkt. No. 15).

25.     On information and belief, Commercial Express maintained the right to directly enforce these Amazon policies and procedures on the Delivery Associates hired by the DSPs.

26.     For example, in its contract with AG Plus, Commercial Express provided that it was entitled to review compliance with its terms and policies through inspection of AG Plus' business records, on site visits, "ride-along" observations of the Delivery Associates performing their job duties, and other inspections of the processes and procedures related to the delivery operations.  *Id.* And, if any review established noncompliance with the terms and policies, the contract provided that Commercial Express had the right to demand prompt cure of the non-compliance.  *Id.*

27.     On information and belief, Commercial Express has entered into agreements with JSTC and Drop a Box that have substantially similar terms to those set out in its contract with AG Plus.

## The Nature of Plaintiffs and Delivery Associates' Work

28.     The nature of the work performed by Delivery Associates is similar and standardized at each of the Delivery Station(s) where the DSPs provide services for Amazon, as the nature of the work is centrally controlled and directed by Amazon and Commercial Express.

29.     Plaintiffs and other Delivery Associates began their shifts once they arrived at an Amazon facility to pick up their assigned vehicle or when they pick up their vehicle at an offsite facility.

30.     Once the vehicle was picked up, Plaintiffs and other Delivery Associates would drive the vehicles to a separate Amazon Delivery Station.  Upon arrival, Plaintiffs and Delivery Associates would pick up their assigned route, a "Rabbit" handheld scanning device, gas card, and packages.

31.     Plaintiffs and other Delivery Associates were regularly scheduled to work five (5) or more days per week, with shifts that were scheduled for ten (10) hours.

32.     Although shifts were scheduled for ten (10) hours per day, all of the work-related activities that Plaintiffs and other Delivery Associates were required to and did perform often took ten (10) or more hours per day to complete.

33.     Plaintiffs regularly worked more than forty (40) hours a week.  Plaintiffs observed that other Delivery Associates routinely worked similar hours.

34.     On average, Plaintiffs delivered between approximately 200-300 Amazon packages per shift.  Plaintiffs observed that other Delivery Associates routinely delivered a similar number of packages.

35.     Even after Plaintiffs were finished delivering their assigned packages, Defendants routinely required them to "rescue" other Delivery Associates by going to meet other Delivery

Associates in the field to help deliver some of their packages. Plaintiffs were directed to "rescue" other Delivery Associates and observed other Delivery Associates do the same.

36.     Upon return to the Amazon Delivery Station, Plaintiffs and other Delivery Associates had to unload their vehicles and check in with supervisors concerning the day's route.

37.     After leaving the Amazon Delivery Station, Plaintiffs and other Delivery Associates had to park the vehicles at the separate off-site location.

38.      Plaintiffs observed other Delivery Associates routinely work similar schedules. Defendants were not only aware of and permitted this practice, but the work schedules and conditions imposed by Defendants effectively required this practice.

### Defendants Failed to Pay Delivery Associates Properly

39.     Plaintiffs and other Delivery Associates regularly worked more than 40 hours per week.

40.     Plaintiffs and other Delivery Associates regularly worked five (5) or more days per week.

41.     Defendants did not pay Plaintiffs and other Delivery Associates for all hours worked in excess of forty (40) hours in a workweek and did not pay proper overtime premiums.

42.     Defendants paid the Delivery Associates a fixed amount of pay per day, and regularly did not pay overtime premiums for hours worked more than forty in a workweek.

43.     On atypical occasions when Defendants did pay additional amounts on weeks that Plaintiffs worked more than forty hours per week, these amounts paid did not meet overtime requirements.

44.     Plaintiff Tinson was paid $130 per scheduled ten-hour shift and he was not paid an overtime premium, despite regularly working more than 40 hours per week.

45.     For example, for the pay period between December 9, 2018 and December 15, 2018, Plaintiff Tinson's paystub reflected 50 hours of work paid at $13 per hour, with no overtime premiums paid, as follows:

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 13.0000 | 50.00 | 650.00 | 3,770.00 |
| Gross Pay | | | $650.00 | 3,770.00 |

46.     Plaintiff Thomas was paid $130 per scheduled ten-hour shift and she was not paid an overtime premium, despite regularly working 50-60 hours or more per week.

47.     For example, for the pay period between November 12, 2018 and November 18, 2018, Plaintiff Thomas's paystub reflected sixty hours of work paid at $13 per hour, with no overtime premiums paid, as follows:

| PAY | Hours | Rate | Current | YTD |
|---|---|---|---|---|
| Regular Pay | 60.00 | 13.00 | 780.00 | 5,810.00 |
| Other Earnings | - | - | 0.00 | 3,900.00 |

48.     Plaintiff Spears was paid $130 per scheduled ten-hour shift and she was not paid an overtime premium, despite regularly working 50 hours or more per week.

49.     For example, Plaintiff Spears' paystub reflected that she was paid "Daily" and set a pay rate at $130 per day, with no overtime premiums paid.

50.     Some Delivery Associates also received other forms of compensation for services in addition to the fixed sum of work per day.

51.     Defendants' pay policy, in which Plaintiff and other Delivery Associates are not compensated for all time worked and are not paid an overtime premium for all hours worked in excess of 40 per workweek, does not comply with the requirements of the Fair Labor Standards Act.    *See Hickman v. TL Transportation LLC*, 317 F. Supp. 3d 890 (E.D. Pa. 2018) (granting

summary judgment to the plaintiff in holding that a similar compensation scheme by another company that provided delivery services for Amazon violated the FLSA).

**<u>The Failure to Properly Pay Delivery Associates Is Willful</u>**

52.     Defendants' actions in violation of the FLSA were or are made willfully in an effort to avoid liability under the FLSA.

53.     Despite being able to track Amazon packages to the second, Defendants have failed to make, keep and preserve records with respect to the Plaintiffs and other Delivery Associates sufficient to determine their lawful wages, actual hours worked, and other conditions of employment as required by law. *See, e.g.,* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c) (requiring employers to maintain payroll records for three years and time sheets for two years, including the exact number of hours worked each day and each week).

54.     Even though the FLSA and applicable state law requires overtime premium compensation for hours worked over 40 per week, Defendants do not pay Delivery Associates, such as Plaintiffs, proper overtime premium compensation for overtime hours worked.

55.     Defendants knew or, absent their own recklessness should have known, that the Delivery Associates were entitled to such overtime premiums.

56.     Defendants have failed to pay Plaintiffs and Delivery Associates all overtime compensation owed.

57.     By failing to pay the all overtime compensation owed to Plaintiffs and other Delivery Associates, Defendants have acted willfully and with reckless disregard of clearly applicable FLSA provisions.

**<u>COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA</u>**

58.     Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on

behalf of the FLSA Collective defined above.

59.     Plaintiffs desire to pursue their FLSA claims on behalf of any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

60.     Plaintiffs and the FLSA Collective are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to Defendants' previously described common pay practices and, as a result of such practices, were not paid for all hours worked when they worked more than forty (40) hours per week and were not paid the full and legally mandated overtime premium for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common compensation, timekeeping and payroll practices.

61.     Specifically, Defendants failed to pay overtime at time and a half (1½) the employee's regular rate as required by the FLSA for hours worked in excess of forty (40) per workweek.

62.     The similarly situated employees are known to Defendants and are readily identifiable and may be located through Defendants' business records and the records of any payroll companies Defendants use.

63.     Defendants employ many FLSA Collective Members throughout Florida, and possibly elsewhere. These similarly situated employees may be readily notified of the instant litigation through direct means, such U.S. mail and/or other appropriate means, and should be allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their similar claims for overtime and other compensation violations, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

**COUNT I**
**Violation of the FLSA**

**(On Behalf of Plaintiffs and the FLSA Class)**

64.    All previous paragraphs are incorporated as though fully set forth herein.

65.    The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed.  *See* 29 U.S.C. § 207(a)(1).

66.    Defendants are subject to the wage requirements of the FLSA because Defendants are each an "employer" under 29 U.S.C. § 203(d).

67.    At all relevant times, Defendants were each an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

68.    During all relevant times, Plaintiffs and Collective Members were covered employees entitled to the above-described FLSA protections.  *See* 29 U.S.C. § 203(e).

69.    Plaintiffs and Collective Members are not exempt from the requirements of the FLSA.

70.    Plaintiffs and Collective Members are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

71.    Defendants' compensation scheme applicable to Plaintiffs and Collective Members failed to comply with either 29 U.S.C. § 207(a)(1) or 29 C.F.R. § 778.112.

72.    Defendants knowingly failed to compensate Plaintiffs and Collective Members for all hours worked when they worked in excess of forty (40) hours per week and failed to pay proper overtime premiums at a rate of one and one-half (1 ½) times their regular hourly wage, in violation of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

73.     Defendants also failed to make, keep, and preserve records with respect to Plaintiffs and Collective Members sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA.  29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

74.     In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

75.     Pursuant to 29 U.S.C. § 216(b), employers such as Defendant, who intentionally fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek the following relief on behalf of themselves and all others similarly situated:

a.     An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

b.     Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective members;

c.     Back pay damages (including unpaid overtime compensation, unpaid spread of hours payments and unpaid wages) and prejudgment interest to the fullest extent permitted under the law;

d.     Liquidated damages to the fullest extent permitted under the law;

e.     Litigation costs, expenses and attorneys' fees to the fullest extent permitted under the law; and

f.     Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury for all issues of fact.

Dated: April 14, 2020                    Respectfully submitted,

                                         /s/ Janet R. Varnell
                                         Janet Varnell; FBN: 0071072
                                         Brian W. Warwick; FBN: 0605573
                                         VARNELL & WARWICK P.A.
                                         1101 E. Cumberland Ave., Ste. 201H, #105
                                         Tampa, FL 33602
                                         Tel: (352) 753-8600
                                         Fax: (352) 504-3301
                                         jvarnell@varnellandwarwick.com

                                         Sarah R. Schalman-Bergen (*admitted pro hac vice*)
                                         Michaela L. Wallin (*admitted pro hac vice*)
                                         Krysten Connon (*admitted pro hac vice*)
                                         BERGER MONTAGUE PC
                                         1818 Market Street, Suite 3600
                                         Philadelphia, PA  19103
                                         Tel.: (215) 875-3000
                                         Fax: (215) 875-4620
                                         sschalman-bergen@bm.net
                                         mwallin@bm.net
                                         kconnon@bm.net

                                         Ryan Allen Hancock (*admitted pro hac vice*)
                                         WILLIG, WILLIAMS & DAVIDSON
                                         1845 Walnut Street, 24th Floor
                                         Philadelphia, PA  19103
                                         Tel.: (215) 656-3600
                                         Fax: (215) 567-2310
                                         rhancock@wwdlaw.com

                                         *Attorneys for Plaintiff and the*
                                         *Proposed FLSA Collective*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 14, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Janet R. Varnell
Janet R. Varnell