# EXHIBIT 3

## <u>RELEASE OF NON-FLSA CLAIMS</u>

This Settlement Agreement and Release of Non-FLSA Claims (the "Agreement") is made and entered into by and between Andrea Thomas ("THOMAS") and Amazon Services, Inc., Amazon.com, LLC, Amazon Logistics, Inc. (collectively "Amazon"), Commercial Express, Inc. and COEI, LLC ("COEI") (together, "Commercial Express"), JSTC, LLC ("JSTC"), AG Plus Express, LLC ("AG Plus"), and Drop a Box, Inc. ("Drop a Box"), and each of their respective present and former affiliates, divisions, members, joint venture partners, subsidiaries, parents, predecessors, any merged entity or merged entities and/or its or their present and former officers, partners, directors, employees, agents, attorneys, shareholders and/or successors, insurers or reinsurers, employee benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under, or in concert with any of them, and any individual or entity that could be jointly liable with any of them ("Amazon," "Commercial Express," "JSTC," "AG Plus," and "Drop a Box" are collectively referred to as "Releasees").

WHEREAS, THOMAS was formerly employed as a Delivery Associate who was paid by JSTC, LLC to deliver packages to customers of Amazon from approximately June 2018 to January 2019;

WHEREAS, THOMAS asserts she might have claims against Releasees that arose during the course of the time period when she worked as a Delivery Associate including, but not limited to, claims that would not arise under the Fair Labor Standards Act. These claims are separate and apart from those brought in the cases styled *Thomas v. Amazon.com Services, Inc., et al.*, Nos. 19-cv-01528, 21-cv-00442, pending in the Middle District of Florida (the "*Thomas* Action");

WHEREAS, Releasees deny the allegations brought by THOMAS and deny any and all liability or wrongdoing and enter into this Agreement as a compromise to avoid the burden and expense of additional litigation. Amazon specifically denies that it was a joint employer of THOMAS;

WHEREAS, this Agreement will become effective when the Court's approval of the FLSA collective action settlement agreement in the *Thomas* action becomes a final, non-appealable order. If the Court does not approve the FLSA collective action settlement agreement, or if the Court's approval does not become a final, non-appealable order, this Agreement shall not become effective. If this Agreement does

not become effective, the parties agree each shall return to their respective positions as existed on the day before this Agreement was executed and this Agreement shall not be used in evidence or argument in any other aspect in this action.

NOW, THEREFORE, the Parties desire, without any concession or admission of unlawful conduct, liability, fault or wrongdoing, to enter into a complete, final and binding settlement and compromise of all claims, complaints, charges, actions, causes of action or issues that have been raised or could be raised by THOMAS against the Releasees arising out of in any way related to THOMAS's employment or alleged employment with Releasees and/or any other occurrence up to and including the date THOMAS signs this Agreement), except as expressly excluded below.

1. **Payment and Other Consideration**. In consideration for the promises by THOMAS in this Agreement, Releasees will deliver (or cause to be delivered) to THOMAS's counsel, a check payable to THOMAS for the amount of Ten Thousand Dollars ($10,000.00) (the "Settlement Payment") in settlement and as consideration for the release of THOMAS's claims against Releasees. Releasees will provide an IRS 1099 Form to THOMAS with respect to the payment.

The Settlement Payment shall be the full settlement amount of all claims or potential claims held by THOMAS against Releasees, other than those claims that were asserted in the *Thomas* Action, and shall be payable within two business days after the last one of these conditions precedent has occurred: 1) this Agreement is executed by THOMAS; 2) Releasees receive an IRS W-9 Form from THOMAS; and 3) Settlement Awards are paid to Settlement Collective Members pursuant to the FLSA collective action settlement agreement in the *Thomas* action.

THOMAS understands and acknowledges that the Settlement Payment referenced above is provided solely in exchange for THOMAS's execution of this Agreement and the releases and terms contained herein, and that THOMAS would not be entitled to any such consideration without executing this Agreement and this Agreement being effectuated in accordance with its terms. Upon receipt of the Settlement Payment Referenced herein, THOMAS agrees that Releasees have no further liability or debt owing to THOMAS whatsoever for any reason as this is a complete and final settlement of all possible claims, that arose or could have arisen prior to the date of execution of this Agreement, whether known or unknown, against Releasees and the Released Parties, other than those FLSA claims in the *Thomas* Action.

2.    **Liability for Taxes**

In the event that any taxing body determines that amounts should have been withheld from the Settlement Payment (or from any portion of it) provided for in Paragraph 1 above, THOMAS acknowledges and assumes all responsibility for the payment of the employee's share of any such taxes and agrees to indemnify and hold Releasees harmless from any tax liability arising out of the settlement amounts, payments, and other consideration provided for herein.

3.    **Waiver and Release of Claims.**  In exchange for the consideration set forth in this Settlement Agreement, THOMAS agrees to release and discharge Releasees finally, forever and with prejudice, from any and all causes of action, claims, rights, damages of any nature, penalties, liabilities, expenses, losses, and issues of any kind or nature whatsoever, whether known or unknown, that THOMAS has or may have against the Releasees that arose prior to the date on which she executed this Agreement, including without limitation any claims, whether in law or equity, known or unknown, against Releasees relating to THOMAS's employment (or alleged employment or joint employment) or termination of employment, including but not limited to claims arising under the Americans with Disabilities Act, National Labor Relations Act, Equal Pay Act, Employee Retirement Income Security Act of 1974, the Worker Adjustment and Retraining Notification Act, Title VII of the Civil Rights Act of 1964, the Vocational Rehabilitation Act of 1973, the Civil Rights Act of 1866, 1871, and 1991, including Section 1891 of the Civil Rights Act, the Family and Medical Leave Act, the Florida Civil Rights Act, the Florida AIDS Act, the Florida Wage Discrimination Law, the retaliation provision of Florida Workers Compensation Act (Fla. Stat. Ann. § 440.205), the Florida Fair Housing Act, the Florida Private Sector Whistleblower's Act, the Florida minimum wage and wage payment laws, including any claims under Fla. Stat. Ann §§ 440.01, *et seq.* or attorney's fees or costs under Fla. Stat. Ann. § 440.34, Fla. Const. art. X, § 24, the retaliation provision of the Florida False Claims Act (Fla. Stat. Ann. § 68.088), and claims arising under the Florida Constitution, and/or any other federal, state, or local law, statute, regulation, constitution, ordinance, and/or public policy, contract, or tort law, or any claim of retaliation under such laws, or any claim of breach of any contract (whether express, oral, written or implied from any source), or any claim of unjust enrichment, intentional or negligent infliction of emotional distress, or any claims that were or could have been asserted besides FLSA claims for alleged unpaid wages, overtime compensation, liquidated or other damages, unpaid costs, restitution or other compensation or relief arising under applicable wage and hour laws or in equity.

THOMAS acknowledges she may have claims that are presently unknown based on actions that took place prior to the date she executes this Agreement and that the release contained in this Agreement is intended to and will fully, finally, and forever discharge all claims against Releasees, whether now asserted or not asserted, known or unknown, suspected or unsuspected, which now exist, or heretofore existed, which if known, might have affected her decision to enter this release. THOMAS agrees that, although she may discover facts in addition to or different from those that are currently known or believed to be true with respect to THOMAS's released claims, it is her intention to fully, finally, and forever settle and release any and all claims, without regard to the subsequent discovery or existence of such additional or different facts.

Provided, however, that nothing in this Agreement prohibits THOMAS from (1) filing a claim or charge with a federal, state or local administrative agency, or (2) reporting, communicating directly with or providing information, including documents, not otherwise protected from disclosure by any applicable law or privilege, to the Securities and Exchange Commission (the "SEC"), the Occupational Safety and Health Administration ("OSHA"), the Equal Employment Opportunity Commission ("EEOC"), or any other federal, state or local governmental agency or commission regarding possible legal violations, without disclosure to the Defendants, subject to the condition that once this Agreement becomes effective, THOMAS may not receive a monetary award in connection with any such charge or complaint that is filed or is filed on THOMAS's behalf with the EEOC or state or local fair employment agency.

THOMAS further agrees and acknowledges she has not made any claims or allegations related to sexual harassment or sexual abuse, and none of the payments to her as set forth in this Agreement are related to sexual harassment or sexual abuse.

This General Release shall not apply to FLSA claims that are the subject of the *Thomas* Action. THOMAS acknowledges and agrees that this waiver and release is an essential and material term of this Agreement and that no settlement could have been reached by the parties without this term.

4.     **Non-Admission.** The parties acknowledge that this Agreement does not constitute an admission by Releasees of any liability whatsoever but results solely from the desire to expeditiously resolve disputed issues, and that Releasees denies all allegations of violation of any law, statute, ordinance, regulation, common law, tort or contract.

5.  **Use of Agreement in Subsequent Proceedings.** The parties agree that this Agreement may not be used as evidence in any subsequent proceedings of any kind (without the written consent of all other parties) except one in which any party alleges a breach of this Agreement or as otherwise required by law.

6.  **Entire Agreement.** Other than the FLSA collective action settlement agreement in the *Thomas* action, this Agreement constitutes the complete understanding between the parties and supersedes any and all other agreements, whether written or oral, by both parties. No other promises or agreements, either express or implied, will be binding between the parties unless signed in writing by all parties.

7.  **Severability**. The parties agree that the provisions of this Agreement are severable and that, if any clause or clauses are found to be invalid or unenforceable, the remaining portions of the Agreement will remain in full force and effect. In the event that Paragraph 3 (Waiver and Release of Claims) is found to be invalid or unenforceable, in whole or in part, Releasees shall have the option in its sole discretion to enforce the remaining parts of that Paragraph or to conceal the entire Agreement. In the event Releasees decide to cancel the entire Agreement, the Agreement shall be null and void and none of the consideration shall be owing, and if already paid, will be repaid in fully by THOMAS.

8.  **Signatures.** This Agreement may be signed in counterparts, each of which shall be effective only upon delivery and thereafter shall be deemed an original, and all of which taken together shall constitute the same instrument for the same effect as if all parties had signed the same signature page. An email or other electronic copy of any party's signature shall be deemed as legally binding as an original signature.

9.  **Governing Law.** This Agreement is governed by, interpreted and construed in accordance with the laws of the State of Florida, without regard to principles of conflicts of laws.

10.  **Additional Acknowledgments.**

THOMAS acknowledges that THOMAS has read the terms of this Agreement, and that THOMAS understands its terms and effects, including the fact that THOMAS has agreed to **RELEASE AND FOREVER DISCHARGE** Releasees from any legally waivable actions, including but not limited to any and all

actions arising out of THOMAS's employment relationship with Releasees and the termination of that employment relationship other than FLSA claims;

that THOMAS has signed this Agreement voluntarily and knowingly in exchange for the consideration described herein, which THOMAS acknowledges is adequate and satisfactory to THOMAS;

that THOMAS has signed this Agreement after the date of THOMAS's separation from Releasees and was offered at least 21 days to consider THOMAS's choice to sign this Agreement, which THOMAS acknowledges is a reasonable period of time to consider the Agreement;

that THOMAS has been advised to consult and has consulted with an attorney, concerning this Agreement; and

that THOMAS agrees that changes to this Agreement before its execution, whether material or immaterial, do not restart THOMAS's time to review the Agreement.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as follows:

**PLAINTIFF:**

_Andrea Thomas_
_____          Date: __December 6__, 2021
Andrea Thomas

**DEFENDANTS:**

_____          Date: _____, 2021
Amazon Services, Inc.

_____          Date: _____, 2021
Amazon.com, LLC

_____          Date: _____, 2021
Amazon Logistics, Inc.

_____          Date: _____, 2021
Commercial Express, Inc.

actions arising out of THOMAS's employment relationship with Releasees and the termination of that employment relationship other than FLSA claims;

that THOMAS has signed this Agreement voluntarily and knowingly in exchange for the consideration described herein, which THOMAS acknowledges is adequate and satisfactory to THOMAS;

that THOMAS has signed this Agreement after the date of THOMAS's separation from Releasees and was offered at least 21 days to consider THOMAS's choice to sign this Agreement, which THOMAS acknowledges is a reasonable period of time to consider the Agreement;

that THOMAS has been advised to consult and has consulted with an attorney, concerning this Agreement; and

that THOMAS agrees that changes to this Agreement before its execution, whether material or immaterial, do not restart THOMAS's time to review the Agreement.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as follows:

**PLAINTIFF:**

_____     Date: _____, 2021
Andrea Thomas


**DEFENDANTS:**

*Zane Brown*
_____     Date: _____, 2021
Amazon Services, Inc.

*Zane Brown*
_____     Date: _____, 2021
Amazon.com, LLC

*Zane Brown*
_____     Date: _____, 2021
Amazon Logistics, Inc.

_____     Date: _____, 2021
Commercial Express, Inc.

actions arising out of THOMAS's employment relationship with Releasees and the termination of that employment relationship other than FLSA claims;

that THOMAS has signed this Agreement voluntarily and knowingly in exchange for the consideration described herein, which THOMAS acknowledges is adequate and satisfactory to THOMAS;

that THOMAS has signed this Agreement after the date of THOMAS's separation from Releasees and was offered at least 21 days to consider THOMAS's choice to sign this Agreement, which THOMAS acknowledges is a reasonable period of time to consider the Agreement;

that THOMAS has been advised to consult and has consulted with an attorney, concerning this Agreement; and

that THOMAS agrees that changes to this Agreement before its execution, whether material or immaterial, do not restart THOMAS's time to review the Agreement.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as follows:

**PLAINTIFF:**

_____     Date: _____, 2021
Andrea Thomas


**DEFENDANTS:**

_____     Date: _____, 2021
Amazon Services, Inc.

_____     Date: _____, 2021
Amazon.com, LLC

_____     Date: _____, 2021
Amazon Logistics, Inc.

_____     Date: 12/08, 2021
Commercial Express, Inc.

_____          Date: 12/08, 2021
COEI, LLC

_____          Date: _____, 2021
AG Plus Express, LLC

_____          Date: _____, 2021
Drop a Box, Inc.

_____          Date: _____, 2021
JSTC, LLC

7

_____        Date: _____, 2021
COEI, LLC

_____        Date: DEC 08 , 2021
AG Plus Express, LLC

_____        Date: _____, 2021
Drop a Box, Inc.

_____        Date: _____, 2021
JSTC, LLC

7

_____        Date: _____, 2021
COEI, LLC

_____        Date: _____, 2021
AG Plus Express, LLC

_____        Date: 12 - 9 , 2021
Drop a Box, Inc.

_____        Date: _____, 2021
JSTC, LLC

7

_____     Date: _____, 2021
COEI, LLC

_____     Date: _____, 2021
AG Plus Express, LLC

_____     Date: _____, 2021
Drop a Box, Inc.

_____     Date: 12 / 13 / 2021 2021
JSTC, LLC

7

Doc ID: 53b3b35a64412e09659e56ee3c60dde769f3e28f

## <u>RELEASE OF NON-FLSA CLAIMS</u>

This Settlement Agreement and Release of Non-FLSA Claims (the "Agreement") is made and entered into by and between Shonnika Spears ("SPEARS") and Amazon Services, Inc., Amazon.com, LLC, Amazon Logistics, Inc. (collectively "Amazon"), Commercial Express, Inc. and COEI, LLC ("COEI") (together, "Commercial Express"), JSTC, LLC ("JSTC"), AG Plus Express, LLC ("AG Plus"), and Drop a Box, Inc. ("Drop a Box"), and each of their respective present and former affiliates, divisions, members, joint venture partners, subsidiaries, parents, predecessors, any merged entity or merged entities and/or its or their present and former officers, partners, directors, employees, agents, attorneys, shareholders and/or successors, insurers or reinsurers, employee benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under, or in concert with any of them, and any individual or entity that could be jointly liable with any of them ("Amazon," "Commercial Express," "JSTC," "AG Plus," and "Drop a Box" are collectively referred to as "Releasees").

WHEREAS, SPEARS was formerly employed as a Delivery Associate who was paid by Drop a Box to deliver packages to customers of Amazon from approximately February 2018 to April 2019;

WHEREAS, SPEARS asserts she might have claims against Releasees that arose during the course of the time period when she worked as a Delivery Associate including, but not limited to, claims that would not arise under the Fair Labor Standards Act.  These claims are separate and apart from those brought in the cases styled *Thomas v. Amazon.com Services, Inc., et al.*, Nos. 19-cv-01528, 21-cv-00442, pending in the Middle District of Florida (the "*Thomas* Action");

WHEREAS, Releasees deny the allegations brought by SPEARS and deny any and all liability or wrongdoing and enter into this Agreement as a compromise to avoid the burden and expense of additional litigation.  Amazon specifically denies that it was a joint employer of SPEARS;

WHEREAS, this Agreement will become effective when the Court's approval of the FLSA collective action settlement agreement in the *Thomas* action becomes a final, non-appealable order.  If the Court does not approve the FLSA collective action settlement agreement, or if the Court's approval does not become a final, non-appealable order, this Agreement shall not become effective.  If this Agreement does

not become effective, the parties agree each shall return to their respective positions as existed on the day before this Agreement was executed and this Agreement shall not be used in evidence or argument in any other aspect in this action.

NOW, THEREFORE, the Parties desire, without any concession or admission of unlawful conduct, liability, fault or wrongdoing, to enter into a complete, final and binding settlement and compromise of all claims, complaints, charges, actions, causes of action or issues that have been raised or could be raised by SPEARS against the Releasees arising out of in any way related to SPEARS's employment or alleged employment with Releasees and/or any other occurrence up to and including the date SPEARS signs this Agreement), except as expressly excluded below.

1.     **Payment and Other Consideration**.  In consideration for the promises by SPEARS in this Agreement, Releasees will deliver (or cause to be delivered) to SPEARS's counsel, a check payable to SPEARS for the amount of Ten Thousand Dollars ($10,000.00) (the "Settlement Payment") in settlement and as consideration for the release of SPEARS's claims against Releasees. Releasees will provide an IRS 1099 Form to SPEARS with respect to the payment.

The Settlement Payment shall be the full settlement amount of all claims or potential claims held by SPEARS against Releasees, other than those claims that were asserted in the *Thomas* Action, and shall be payable within two business days after the last one of these conditions precedent has occurred: 1) this Agreement is executed by SPEARS; 2) Releasees receive an IRS W-9 Form from SPEARS; and 3) Settlement Awards are paid to Settlement Collective Members pursuant to the FLSA collective action settlement agreement in the *Thomas* action.

SPEARS understands and acknowledges that the Settlement Payment referenced above is provided solely in exchange for SPEARS's execution of this Agreement and the releases and terms contained herein, and that SPEARS would not be entitled to any such consideration without executing this Agreement and this Agreement being effectuated in accordance with its terms.  Upon receipt of the Settlement Payment Referenced herein, SPEARS agrees that Releasees have no further liability or debt owing to SPEARS whatsoever for any reason as this is a complete and final settlement of all possible claims, that arose or could have arisen prior to the date of execution of this Agreement, whether known or unknown, against Releasees and the Released Parties, other than those FLSA claims in the *Thomas* Action.

2.    **Liability for Taxes**

In the event that any taxing body determines that amounts should have been withheld from the Settlement Payment (or from any portion of it) provided for in Paragraph 1 above, SPEARS acknowledges and assumes all responsibility for the payment of the employee's share of any such taxes and agrees to indemnify and hold Releasees harmless from any tax liability arising out of the settlement amounts, payments, and other consideration provided for herein.

3.    **Waiver and Release of Claims.**  In exchange for the consideration set forth in this Settlement Agreement, SPEARS agrees to release and discharge Releasees finally, forever and with prejudice, from any and all causes of action, claims, rights, damages of any nature, penalties, liabilities, expenses, losses, and issues of any kind or nature whatsoever, whether known or unknown, that SPEARS has or may have against the Releasees that arose prior to the date on which she executed this Agreement, including without limitation any claims, whether in law or equity, known or unknown, against Releasees relating to SPEARS's employment (or alleged employment or joint employment) or termination of employment, including but not limited to claims arising under the Americans with Disabilities Act, National Labor Relations Act, Equal Pay Act, Employee Retirement Income Security Act of 1974, the Worker Adjustment and Retraining Notification Act, Title VII of the Civil Rights Act of 1964, the Vocational Rehabilitation Act of 1973, the Civil Rights Act of 1866, 1871, and 1991, including Section 1891 of the Civil Rights Act, the Family and Medical Leave Act, the Florida Civil Rights Act, the Florida AIDS Act, the Florida Wage Discrimination Law, the retaliation provision of Florida Workers Compensation Act (Fla. Stat. Ann. § 440.205), the Florida Fair Housing Act, the Florida Private Sector Whistleblower's Act, the Florida minimum wage and wage payment laws, including any claims under Fla. Stat. Ann §§ 440.01, *et seq.* or attorney's fees or costs under Fla. Stat. Ann. § 440.34, Fla. Const. art. X, § 24, the retaliation provision of the Florida False Claims Act (Fla. Stat. Ann. § 68.088), and claims arising under the Florida Constitution, and/or any other federal, state, or local law, statute, regulation, constitution, ordinance, and/or public policy, contract, or tort law, or any claim of retaliation under such laws, or any claim of breach of any contract (whether express, oral, written or implied from any source), or any claim of unjust enrichment, intentional or negligent infliction of emotional distress, or any claims that were or could have been asserted besides FLSA claims for alleged unpaid wages, overtime compensation, liquidated or other damages, unpaid costs, restitution or other compensation or relief arising under applicable wage and hour laws or in equity.

3

SPEARS acknowledges she may have claims that are presently unknown based on actions that took place prior to the date she executes this Agreement and that the release contained in this Agreement is intended to and will fully, finally, and forever discharge all claims against Releasees, whether now asserted or not asserted, known or unknown, suspected or unsuspected, which now exist, or heretofore existed, which if known, might have affected her decision to enter this release. SPEARS agrees that, although she may discover facts in addition to or different from those that are currently known or believed to be true with respect to SPEARS's released claims, it is her intention to fully, finally, and forever settle and release any and all claims, without regard to the subsequent discovery or existence of such additional or different facts.

Provided, however, that nothing in this Agreement prohibits SPEARS from (1) filing a claim or charge with a federal, state or local administrative agency, or (2) reporting, communicating directly with or providing information, including documents, not otherwise protected from disclosure by any applicable law or privilege, to the Securities and Exchange Commission (the "SEC"), the Occupational Safety and Health Administration ("OSHA"), the Equal Employment Opportunity Commission ("EEOC"), or any other federal, state or local governmental agency or commission regarding possible legal violations, without disclosure to the Defendants, subject to the condition that once this Agreement becomes effective, SPEARS may not receive a monetary award in connection with any such charge or complaint that is filed or is filed on SPEARS's behalf with the EEOC or state or local fair employment agency.

SPEARS further agrees and acknowledges she has not made any claims or allegations related to sexual harassment or sexual abuse, and none of the payments to her as set forth in this Agreement are related to sexual harassment or sexual abuse.

SPEARS expressly waives any and all claims against Releasees from any and all actual or potential actions, claims, causes of action, and damages, known or unknown, arising out of SPEARS's employment with Releasees or the termination of that employment under the Age Discrimination in Employment Act and the Older Workers Benefit Protection Act.

This General Release shall not apply to FLSA claims that are the subject of the *Thomas* Action. SPEARS acknowledges and agrees that this waiver and release is an essential and material term of this Agreement and that no settlement could have been reached by the parties without this term.

4.     **Non-Admission.** The parties acknowledge that this Agreement does not constitute an admission by Releasees of any liability whatsoever but results solely from the desire to expeditiously resolve disputed issues, and that Releasees denies all allegations of violation of any law, statute, ordinance, regulation, common law, tort or contract.

5.     **Use of Agreement in Subsequent Proceedings.** The parties agree that this Agreement may not be used as evidence in any subsequent proceedings of any kind (without the written consent of all other parties) except one in which any party alleges a breach of this Agreement or as otherwise required by law.

6.     **Entire Agreement.** Other than the FLSA collective action settlement agreement in the *Thomas* action, this Agreement constitutes the complete understanding between the parties and supersedes any and all other agreements, whether written or oral, by both parties. No other promises or agreements, either express or implied, will be binding between the parties unless signed in writing by all parties.

7.     **Severability**. The parties agree that the provisions of this Agreement are severable and that, if any clause or clauses are found to be invalid or unenforceable, the remaining portions of the Agreement will remain in full force and effect. In the event that Paragraph 3 (Waiver and Release of Claims) is found to be invalid or unenforceable, in whole or in part, Releasees shall have the option in its sole discretion to enforce the remaining parts of that Paragraph or to conceal the entire Agreement. In the event Releasees decide to cancel the entire Agreement, the Agreement shall be null and void and none of the consideration shall be owing, and if already paid, will be repaid in fully by SPEARS.

8.     **Signatures.** This Agreement may be signed in counterparts, each of which shall be effective only upon delivery and thereafter shall be deemed an original, and all of which taken together shall constitute the same instrument for the same effect as if all parties had signed the same signature page.  An email or other electronic copy of any party's signature shall be deemed as legally binding as an original signature.

9.     **Governing Law.** This Agreement is governed by, interpreted and construed in accordance with the laws of the State of Florida, without regard to principles of conflicts of laws.

10. **Additional Acknowledgments.**

a)    SPEARS acknowledges that SPEARS has read the terms of this Agreement, and that SPEARS understands its terms and effects, including the fact that SPEARS has agreed to **RELEASE AND FOREVER DISCHARGE** Releasees from any legally waivable actions, including but not limited to any and all actions arising out of SPEARS's employment relationship with Releasees and the termination of that employment relationship other than FLSA claims;

b)    that SPEARS has signed this Agreement voluntarily and knowingly in exchange for the consideration described herein, which SPEARS acknowledges is adequate and satisfactory to SPEARS;

c)    that SPEARS has signed this Agreement after the date of SPEARS's separation from Releasees and was offered at least 21 days to consider SPEARS's choice to sign this Agreement;

d)    that SPEARS has been advised to consult and has consulted with an attorney, concerning this Agreement; and

e)    that SPEARS knows SPEARS can revoke this Agreement within 7 days of signing it and that the Agreement does not become effective until that 7-day period has passed.  To revoke, contact Christopher K. Ramsey, Morgan, Lewis & Bockius LLP, One Oxford Centre, Thirty-Second Floor, Pittsburgh, PA 15219, John C. Getty, Williams Parker Harrison Dietz & Getzen, 200 S. Orange Ave, Sarasota, FL 34236, and Paul L. Sutherland, Wilson McCoy, P.A., Point 11\00 Building, 100 E Sybelia Ave #205, Maitland, FL 32751

f)    that SPEARS agrees that changes to this Agreement before its execution, whether material or immaterial, do not restart SPEARS's time to review the Agreement.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as follows:

**PLAINTIFFS:**

_Shonnika Spears_
_____     Date: December 6 _____, 2021
Shonnika Spears


**DEFENDANTS:**

_____     Date: _____, 2021
Amazon Services, Inc.

_____     Date: _____, 2021
Amazon.com, LLC

_____     Date: _____, 2021
Amazon Logistics, Inc.

_____     Date: _____, 2021
Commercial Express, Inc.

_____     Date: _____, 2021
COEI, LLC

_____     Date: _____, 2021
AG Plus Express, LLC

_____     Date: _____, 2021
Drop a Box, Inc.

_____     Date: _____, 2021
JSTC, LLC

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as follows:

**PLAINTIFFS:**

_____     Date: _____, 2021
Shonnika Spears


**DEFENDANTS:**

*Zane Brown*     Date: _____, 2021
Amazon Services, Inc.

*Zane Brown*     Date: _____, 2021
Amazon.com, LLC

*Zane Brown*     Date: _____, 2021
Amazon Logistics, Inc.

_____     Date: _____, 2021
Commercial Express, Inc.

_____     Date: _____, 2021
COEI, LLC

_____     Date: _____, 2021
AG Plus Express, LLC

_____     Date: _____, 2021
Drop a Box, Inc.

_____     Date: _____, 2021
JSTC, LLC

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as follows:

**PLAINTIFFS:**

_____     Date: _____, 2021

Shonnika Spears


**DEFENDANTS:**

_____     Date: _____, 2021

Amazon Services, Inc.

_____     Date: _____, 2021

Amazon.com, LLC

_____     Date: _____, 2021

Amazon Logistics, Inc.

_____     Date: 12/08 , 2021

Commercial Express, Inc.

_____     Date: 12/08 , 2021

COEI, LLC

_____     Date: _____, 2021

AG Plus Express, LLC

_____     Date: _____, 2021

Drop a Box, Inc.

_____     Date: _____, 2021

JSTC, LLC

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as follows:

**PLAINTIFFS:**

_____     Date: _____, 2021
Shonnika Spears


**DEFENDANTS:**

_____     Date: _____, 2021
Amazon Services, Inc.

_____     Date: _____, 2021
Amazon.com, LLC

_____     Date: _____, 2021
Amazon Logistics, Inc.

_____     Date: _____, 2021
Commercial Express, Inc.

_____     Date: _____, 2021
COEI, LLC

_____     Date: DEC 13, 2021
AG Plus Express, LLC

_____     Date: _____, 2021
Drop a Box, Inc.

_____     Date: _____, 2021
JSTC, LLC

7

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as follows:

**PLAINTIFFS:**

_____          Date: _____, 2021
Shonnika Spears

**DEFENDANTS:**

_____          Date: _____, 2021
Amazon Services, Inc.

_____          Date: _____, 2021
Amazon.com, LLC

_____          Date: _____, 2021
Amazon Logistics, Inc.

_____          Date: _____, 2021
Commercial Express, Inc.

_____          Date: _____, 2021
COEI, LLC

_____          Date: _____, 2021
AG Plus Express, LLC

_____          Date: Dc 9 _____, 2021
Drop a Box, Inc.

_____          Date: _____, 2021
JSTC, LLC

7

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as follows:

**PLAINTIFFS:**

_____       Date: _____, 2021
Shonnika Spears


**DEFENDANTS:**

_____       Date: _____, 2021
Amazon Services, Inc.

_____       Date: _____, 2021
Amazon.com, LLC

_____       Date: _____, 2021
Amazon Logistics, Inc.

_____       Date: _____, 2021
Commercial Express, Inc.

_____       Date: _____, 2021
COEI, LLC

_____       Date: _____, 2021
AG Plus Express, LLC

_____       Date: _____, 2021
Drop a Box, Inc.

_____       Date: 12 / 13 / 2021, 2021
JSTC, LLC

7

Doc ID: 73b3dd7ef2c19291376e4f1f051c96b9255b33c1

## <u>RELEASE OF NON-FLSA CLAIMS</u>

This Settlement Agreement and Release of Non-FLSA Claims (the "Agreement") is made and entered into by and between DeAndre Tinson ("TINSON") and Amazon Services, Inc., Amazon.com, LLC, Amazon Logistics, Inc. (collectively "Amazon"), Commercial Express, Inc. and COEI, LLC ("COEI") (together, "Commercial Express"), JSTC, LLC ("JSTC"), AG Plus Express, LLC ("AG Plus"), and Drop a Box, Inc. ("Drop a Box"), and each of their respective present and former affiliates, divisions, members, joint venture partners, subsidiaries, parents, predecessors, any merged entity or merged entities and/or its or their present and former officers, partners, directors, employees, agents, attorneys, shareholders and/or successors, insurers or reinsurers, employee benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under, or in concert with any of them, and any individual or entity that could be jointly liable with any of them ("Amazon," "Commercial Express," "JSTC," "AG Plus," and "Drop a Box" are collectively referred to as "Releasees").

WHEREAS, TINSON was formerly employed as a Delivery Associate who was paid by Commercial Express to deliver packages to customers of Amazon from approximately September 2018 to March 2019;

WHEREAS, TINSON asserts he might have claims against Releasees that arose during the course of the time period when he worked as a Delivery Associate including, but not limited to, claims that would not arise under the Fair Labor Standards Act. These claims are separate and apart from those brought in the cases styled *Thomas v. Amazon.com Services, Inc., et al.*, Nos. 19-cv-01528, 21-cv-00442, pending in the Middle District of Florida (the "*Thomas* Action");

WHEREAS, Releasees deny the allegations brought by TINSON and deny any and all liability or wrongdoing and enter into this Agreement as a compromise to avoid the burden and expense of additional litigation. Amazon specifically denies that it was a joint employer of TINSON;

WHEREAS, this Agreement will become effective when the Court's approval of the FLSA collective action settlement agreement in the *Thomas* action becomes a final, non-appealable order. If the Court does not approve the FLSA collective action settlement agreement, or if the Court's approval does not become a final, non-appealable order, this Agreement shall not become effective. If this Agreement does

not become effective, the parties agree each shall return to their respective positions as existed on the day before this Agreement was executed and this Agreement shall not be used in evidence or argument in any other aspect in this action.

NOW, THEREFORE, the Parties desire, without any concession or admission of unlawful conduct, liability, fault or wrongdoing, to enter into a complete, final and binding settlement and compromise of all claims, complaints, charges, actions, causes of action or issues that have been raised or could be raised by TINSON against the Releasees arising out of in any way related to TINSON's employment or alleged employment with Releasees and/or any other occurrence up to and including the date TINSON signs this Agreement), except as expressly excluded below.

1.    **Payment and Other Consideration**.  In consideration for the promises by TINSON in this Agreement, Releasees will deliver (or cause to be delivered) to TINSON's counsel, a check payable to TINSON for the amount of Ten Thousand Dollars ($10,000.00) (the "Settlement Payment") in settlement and as consideration for the release of TINSON's claims against Releasees. Releasees will provide an IRS 1099 Form to TINSON with respect to the payment.

The Settlement Payment shall be the full settlement amount of all claims or potential claims held by TINSON against Releasees, other than those claims that were asserted in the *Thomas* Action, and shall be payable within two business days after the last one of these conditions precedent has occurred: 1) this Agreement is executed by TINSON, 2) Releasees receive an IRS W-9 Form from TINSON, and (3) Settlement Awards are paid to Settlement Collective Members pursuant to the FLSA collective action settlement agreement in the *Thomas* action.

TINSON understands and acknowledges that the Settlement Payment referenced above is provided solely in exchange for TINSON's execution of this Agreement and the releases and terms contained herein, and that TINSON would not be entitled to any such consideration without executing this Agreement and this Agreement being effectuated in accordance with its terms.  Upon receipt of the Settlement Payment Referenced herein, TINSON agrees that Releasees have no further liability or debt owing to TINSON whatsoever for any reason as this is a complete and final settlement of all possible claims, that arose or could have arisen prior to the date of execution of this Agreement, whether known or unknown, against Releasees and the Released Parties, other than those FLSA claims in the *Thomas* Action.

2.     **Liability for Taxes**

In the event that any taxing body determines that amounts should have been withheld from the Settlement Payment (or from any portion of it) provided for in Paragraph 1 above, TINSON acknowledges and assumes all responsibility for the payment of the employee's share of any such taxes and agrees to indemnify and hold Releasees harmless from any tax liability arising out of the settlement amounts, payments, and other consideration provided for herein.

3.     **Waiver and Release of Claims.**  In exchange for the consideration set forth in this Settlement Agreement, TINSON agrees to release and discharge Releasees finally, forever and with prejudice, from any and all causes of action, claims, rights, damages of any nature, penalties, liabilities, expenses, losses, and issues of any kind or nature whatsoever, whether known or unknown, that TINSON has or may have against the Releasees that arose prior to the date on which he executed this Agreement, including without limitation any claims, whether in law or equity, known or unknown, against Releasees relating to TINSON's employment (or alleged employment or joint employment) or termination of employment, including but not limited to claims arising under the Americans with Disabilities Act, National Labor Relations Act, Equal Pay Act, Employee Retirement Income Security Act of 1974, the Worker Adjustment and Retraining Notification Act, Title VII of the Civil Rights Act of 1964, the Vocational Rehabilitation Act of 1973, the Civil Rights Act of 1866, 1871, and 1991, including Section 1891 of the Civil Rights Act, the Family and Medical Leave Act, the Florida Civil Rights Act, the Florida AIDS Act, the Florida Wage Discrimination Law, the retaliation provision of Florida Workers Compensation Act (Fla. Stat. Ann. § 440.205), the Florida Fair Housing Act, the Florida Private Sector Whistleblower's Act, the Florida minimum wage and wage payment laws, including any claims under Fla. Stat. Ann §§ 440.01, *et seq.* or attorney's fees or costs under Fla. Stat. Ann. § 440.34, Fla. Const. art. X, § 24, the retaliation provision of the Florida False Claims Act (Fla. Stat. Ann. § 68.088), and claims arising under the Florida Constitution, and/or any other federal, state, or local law, statute, regulation, constitution, ordinance, and/or public policy, contract, or tort law, or any claim of retaliation under such laws, or any claim of breach of any contract (whether express, oral, written or implied from any source), or any claim of unjust enrichment, intentional or negligent infliction of emotional distress, or any claims that were or could have been asserted besides FLSA claims for alleged unpaid wages, overtime compensation, liquidated or other damages, unpaid costs, restitution or other compensation or relief arising under applicable wage and hour laws or in equity.

TINSON acknowledges he may have claims that are presently unknown based on actions that took place prior to the date he executes this Agreement and that the release contained in this Agreement is intended to and will fully, finally, and forever discharge all claims against Releasees, whether now asserted or not asserted, known or unknown, suspected or unsuspected, which now exist, or heretofore existed, which if known, might have affected her decision to enter this release. TINSON agrees that, although he may discover facts in addition to or different from those that are currently known or believed to be true with respect to TINSON's released claims, it is his intention to fully, finally, and forever settle and release any and all claims, without regard to the subsequent discovery or existence of such additional or different facts.

Provided, however, that nothing in this Agreement prohibits TINSON from (1) filing a claim or charge with a federal, state or local administrative agency, or (2) reporting, communicating directly with or providing information, including documents, not otherwise protected from disclosure by any applicable law or privilege, to the Securities and Exchange Commission (the "SEC"), the Occupational Safety and Health Administration ("OSHA"), the Equal Employment Opportunity Commission ("EEOC"), or any other federal, state or local governmental agency or commission regarding possible legal violations, without disclosure to the Defendants, subject to the condition that once this Agreement becomes effective, TINSON may not receive a monetary award in connection with any such charge or complaint that is filed or is filed on TINSON's behalf with the EEOC or state or local fair employment agency.

TINSON further agrees and acknowledges he has not made any claims or allegations related to sexual harassment or sexual abuse, and none of the payments to him as set forth in this Agreement are related to sexual harassment or sexual abuse.

This General Release shall not apply to FLSA claims that are the subject of the *Thomas* Action. TINSON acknowledges and agrees that this waiver and release is an essential and material term of this Agreement and that no settlement could have been reached by the parties without this term.

4.    **<u>Non-Admission.</u>** The parties acknowledge that this Agreement does not constitute an admission by Releasees of any liability whatsoever but results solely from the desire to expeditiously resolve disputed issues, and that Releasees denies all allegations of violation of any law, statute, ordinance, regulation, common law, tort or contract.

5. **Use of Agreement in Subsequent Proceedings.** The parties agree that this Agreement may not be used as evidence in any subsequent proceedings of any kind (without the written consent of all other parties) except one in which any party alleges a breach of this Agreement or as otherwise required by law.

6. **Entire Agreement.** Other than the FLSA collective action settlement agreement in the *Thomas* action, this Agreement constitutes the complete understanding between the parties and supersedes any and all other agreements, whether written or oral, by both parties. No other promises or agreements, either express or implied, will be binding between the parties unless signed in writing by all parties.

7. **Severability**. The parties agree that the provisions of this Agreement are severable and that, if any clause or clauses are found to be invalid or unenforceable, the remaining portions of the Agreement will remain in full force and effect. In the event that Paragraph 3 (Waiver and Release of Claims) is found to be invalid or unenforceable, in whole or in part, Releasees shall have the option in its sole discretion to enforce the remaining parts of that Paragraph or to conceal the entire Agreement. In the event Releasees decide to cancel the entire Agreement, the Agreement shall be null and void and none of the consideration shall be owing, and if already paid, will be repaid in fully by TINSON.

8. **Signatures.** This Agreement may be signed in counterparts, each of which shall be effective only upon delivery and thereafter shall be deemed an original, and all of which taken together shall constitute the same instrument for the same effect as if all parties had signed the same signature page.  An email or other electronic copy of any party's signature shall be deemed as legally binding as an original signature.

9. **Governing Law.** This Agreement is governed by, interpreted and construed in accordance with the laws of the State of Florida, without regard to principles of conflicts of laws.

10. **Additional Acknowledgments.**

a)     TINSON acknowledges that TINSON has read the terms of this Agreement, and that TINSON understands its terms and effects, including the fact that TINSON has agreed to **RELEASE AND FOREVER DISCHARGE** Releasees from any legally waivable actions, including but not limited to any and all actions

arising out of TINSON's employment relationship with Releasees and the termination of that employment relationship other than FLSA claims;

b)    that TINSON has signed this Agreement voluntarily and knowingly in exchange for the consideration described herein, which TINSON acknowledges is adequate and satisfactory to TINSON;

c)    that TINSON has signed this Agreement after the date of TINSON's separation from Releasees and was offered at least 21 days to consider TINSON's choice to sign this Agreement, which TINSON acknowledges is a reasonable period of time to consider the Agreement;

d)    that TINSON has been advised to consult and has consulted with an attorney, concerning this Agreement; and

e)    that TINSON agrees that changes to this Agreement before its execution, whether material or immaterial, do not restart TINSON's time to review the Agreement.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as follows:

**PLAINTIFFS:**

_____    Date: ___December 8___, 2021
DeAndre Tinson

**DEFENDANTS:**

_____    Date: _____, 2021
Amazon Services, Inc.

_____    Date: _____, 2021
Amazon.com, LLC

_____    Date: _____, 2021
Amazon Logistics, Inc.

arising out of TINSON's employment relationship with Releasees and the termination of that employment relationship other than FLSA claims;

b)     that TINSON has signed this Agreement voluntarily and knowingly in exchange for the consideration described herein, which TINSON acknowledges is adequate and satisfactory to TINSON;

c)     that TINSON has signed this Agreement after the date of TINSON's separation from Releasees and was offered at least 21 days to consider TINSON's choice to sign this Agreement, which TINSON acknowledges is a reasonable period of time to consider the Agreement;

d)     that TINSON has been advised to consult and has consulted with an attorney, concerning this Agreement; and

e)     that TINSON agrees that changes to this Agreement before its execution, whether material or immaterial, do not restart TINSON's time to review the Agreement.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as follows:

**PLAINTIFFS:**

_____     Date: _____, 2021
DeAndre Tinson

**DEFENDANTS:**

*Zane Brown*
_____     Date: _____, 2021
Amazon Services, Inc.

*Zane Brown*
_____     Date: _____, 2021
Amazon.com, LLC

*Zane Brown*
_____     Date: _____, 2021
Amazon Logistics, Inc.

_____     Date: 12/17, 2021
Commercial Express, Inc.

_____     Date: 12/17, 2021
COEI, LLC


_____     Date:_____, 2021
AG Plus Express, LLC


_____     Date:_____, 2021
Drop a Box, Inc.


_____     Date:_____, 2021
JSTC, LLC

_____     Date: _____, 2021
Commercial Express, Inc.


_____     Date: _____, 2021
COEI, LLC


_____     Date: _____, 2021
AG Plus Express, LLC


_____     Date: _____, 2021
Drop a Box, Inc.


_____     Date: 12 / 13 / 2021, 2021
JSTC, LLC

7

Doc ID: 5fc692358aa89013d3e9882ec8988ccab00b36ce