# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ANDREA THOMAS, DEANDRE            :
TINSON, and SHONNIKA SPEARS,      :
on behalf of themselves and others :
similarly situated,               :
                                  :
              Plaintiffs,         :    Case No.: 6:19-cv-1528---RBD-GJK
                                  :
      v.                          :
                                  :
AMAZON.COM SERVICES, INC.,        :
AMAZON LOGISTICS, INC.,           :
AMAZON.COM LLC, JSTC, LLC,        :
COMMERCIAL EXPRESS, INC.,         :
COEI, LLC, AG PLUS EXPRESS,       :
LLC, and DROP A BOX, INC.,        :
                                  :
              Defendants.         :

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
## UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE
## FAIR LABOR STANDARDS ACT SETTLEMENT AGREEMENT

## **TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................... 1

II.  PROCEDURAL HISTORY ........................................................................ 3

III. TERMS OF THE SETTLEMENT ............................................................. 5

    A.   Settlement Collective Members ........................................................ 5

    B.   Calculation and Distribution of the Wage Settlement Amount ............ 5

    C.   Notice to Settlement Collective Members ........................................... 7

    D.   Release of Claims ........................................................................... 9

    E.   Attorneys' Fees and Costs ................................................................. 9

    F.   General Release of Defendants for Non-FLSA Claims ...................... 10

IV.  ARGUMENT ......................................................................................... 11

    A.   The Court Should Conditionally Certify the Collective ..................... 11

    B.   The Court Should Preliminarily Approve the Settlement ................... 15

        1.   Legal Standard for Approval of FLSA Settlements ................. 15

        2.   A *Bona Fide* Dispute Existed Between the Parties .................... 15

        3.   The Settlement is Fair and Reasonable .................................. 16

        4.   The Proposed Settlement Furthers the Purpose of the FLSA.... 21

    C.   The FLSA Supports the Negotiated Fees and Costs in the Proposed Settlement ..................................................................................... 23

V.   CONCLUSION ...................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adams v. Peco Foods, Inc.*,
  *7:08-cv-0502-LSC,* 2012 WL 13024002 (N.D. Ala. Mar. 2, 2012) ..............................14
*Barbee v. Kochg River Steel, LLC*,
  927 F.3d 1024 (8th Cir. 2019) .....................................................................................23
*Bonetti v. Embarq Mgmt. Co.*,
  715 F. Supp. 2d 1222 (M.D. Fla. 2009) ......................................................................23
*Bright v. Mental Health Res. Ctr., Inc.*,
  *No. 3:10–cv–427–J–37TEM,* 2012 WL 868804, (M.D. Fla. Mar. 14, 2012) ...............22
*Brooklyn Sav. Bank v. O'Neil*,
  324 U.S. 697 (1945) .....................................................................................................21
*Buntin v. Square Foot Mgmt. Co., LLC*,
  6:14-CV-1394-ORL-37, 2015 WL 3407866 (M.D. Fla. May 27, 2015) ......................24
*Campbell v. Pincher's Beach Bar Grill., Inc.*,
  *No: 2:15–cv–695–FtM–99MRM,* 2017 WL 3700629 (M.D. Fla. Aug. 24, 2017) ............23
*Crabtree v. Volkert, Inc.*,
  *No. 11–0529–WS–B,* 2013 WL 593500 (S.D. Ala. Feb. 14, 2013)...................17, 18, 21
*Dail v. George A. Arab Inc.*,
  391 F. Supp. 2d 1142 (M.D. Fla. 2005) ......................................................................17
*Day v. NuCO2 Mgmt., LLC,*
  1:18-cv-02088, 2018 WL 2473472 (N.D. Ill. May 18, 2018).......................................14
*George v. Academy Mortgage Corp.*,
  369 F. Supp. 3d 1356 (N.D. Ga. 2019) .......................................................................20
*Glenn v. Gen Motors Corp.*,
  841 F.2d 1567 (11th Cir. 1988).....................................................................................24
*Grayson v. K Mart Corp.*,
  79 F.3d 1086 (11th Cir. 1996).......................................................................................13
*Hernandez v. Plastipak Packaging*,
  15 F.4th 1321 (11th Cir. 2021)................................................................................18, 19
*Hickman v. TL Transportation, LLC.*,
  *No. 17-1038,* 318 F. Supp. 3d 718 (E.D. Pa. 2018).....................................................13

*Hickman v. TL Transportation, LLC.*,
  No. 17-1038, 317 F. Supp. 3d 890 (E.D. Pa. 2018).........................................................13
*Hipp v. Liberty Nat'l Life Ins. Co.*,
  252 F.3d 1208 (11th Cir. 2001) .....................................................................................13
*Hosier v. Mattress Firm, Inc.*,
  No. 3:10–cv–294–J–32JRK, 2012 WL 2813960 (M.D. Fla. June 8, 2012)..................23
*Huff v. Bobcat N. Am., LLC*, No.,
  No. 6:19-cv-861-Orl-37DCI, 2021 WL 268356 (M.D. Fla. Jan. 25, 2021)........... *Passim*
*Leverso v. SouthTrust Bank of Ala. Nat. Ass'n*,
  18 F. 3d 1527 (11th Cir. 1994)......................................................................................17
*Lockwood v. CIS Services, LLC et al*,
  No. 3:16-CV-00965, 2019 WL 2226126 (M.D. Fla. May 3, 2019) ...............................21
*Lynn's Food Stores, Inc. v. U.S.*,
  679 F. 2d 1350 (11th Cir 1982) .....................................................................................15
*Mcguire v. Intelident Solutions, LLC*,
  No. 8:18-cv-02995-T-23SPF, 2020 WL 10506642 (M.D. Fla. Sept. 20, 2020) ......12, 14
*Morgan v. Family Dollar Stores, Inc.*,
  551 F.3d 1233 (11th Cir. 2008) .....................................................................................11
*Plazas v. Dr. Phillips Ctr. for Performing Arts, Inc.*,
  6-18-CV-392-Orl-37TBS, 2018 WL 3432739 (M.D. Fla. June 29, 2018) ....................22
*Prena v. BMO Fin. Corp.*,
  No. 15 C 09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) .....................................14
*Reams v. Michael Angelo Rest., Inc.*,
  No. 7:19-CV-53, 2019 WL 6898656, Ga. Dec. 18 ........................................................16
*Rodriguez v. Republic Servs.*,
  No. SA–13–CV–20–XR, 2013 WL 5656129 (W.D. Tex. Oct. 15, 2013) ......................18
*Roman v. FSC Clearwater, LLC*,
  6:16-cv-969-Orl-41DCI, 2017 WL 1552304, at *n.1 (M.D. Fla. May 1, 2017)............10
*Urbas v. Nutritious Lifestyles, Inc.*,
  No. 3:19-cv-855-J-34PDB, 2020 WL 264686 (M.D. Fla. Jan. 2, 2020).......................23
*Vela v. Sunnygrove Landscape & Irrigation Maint., LLC*,
  No: 2:18-cv-165-FtM-38MRM, 2018 WL 8576382 (M.D. Fla. Oct. 4, 2018) ..............10
*Vogenberger v. ATC Fitness Cape Coral, LLC*,
  No. 2:14–cv–436–FtM–29CM, 2015 WL 1883537 (M.D. Fla. Apr. 24, 2015).............23

*Wing v. Plann B. Corp.*,
  *No. 6:11–cv–1499–Orl–36GJK,* 2012 WL 4746258 (M.D. Fla. Sept 17, 2012)...........23

Statutes

29 U.S.C. § 201 ....................................................................................................1
29 U.S.C. § 202 ..................................................................................................21
29 U.S.C. § 216(b)................................................................................... *Passim*

## I.     INTRODUCTION

This collective action wage and hour lawsuit against Defendants Amazon.com Services, Inc., Amazon Logistics, Inc., Amazon.com LLC, (together, "Amazon"), JSTC, LLC, ("JSTC") Commercial Express, Inc. ("Commercial Express"), and COEI, LLC ("COEI"), AG Plus Express, LLC, ("AG Plus") and Drop a Box, Inc., ("Drop a Box") (together, the "DSP Defendants") (collectively, the DSP Defendants and Amazon will be referred to as "Defendants") has been settled, and Plaintiffs Andrea Thomas, DeAndre Tinson, and Shonnika Spears submit this memorandum of law in support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Fair Labor Standards Act Collective Action Settlement Agreement. The proposed settlement satisfies the criteria for approval of a Fair Labor Standards Act, 29 U.S.C. § 201 ("FLSA") collective action settlement because it is a fair and reasonable resolution of a *bona fide* dispute reached by counsel with extensive experience in complex employment law cases, and after arm's-length negotiations assisted by experienced wage and hour mediators.

Plaintiffs and the approximately 1,365 Settlement Collective[1] Members worked as Delivery Associates ("DAs"), delivering packages to Amazon's customers.

---

[1] The Settlement Collective includes Plaintiffs and all current and former DAs who were paid by the DSP Defendants to deliver packages to customers of Amazon in the United States between March 1, 2017 and June 22, 2019. The Settlement Collective does not include individuals who were provided with notice in and/or who opted into *Gibbs v. MLK Express, LLC*, Case No. 2:18-cv-434-SPC-MRM, an action pending in the United States District Court for the Middle District of Florida.  The approximate Settlement Collective Member number was calculated based on the delivery data Amazon provided ("Rabbit" data), which indicates a DA has delivered a package to an Amazon customer.

Plaintiffs' Consolidated Amended Collective Action Complaint alleges Defendants failed to pay DAs overtime compensation when they worked more than 40 hours in a workweek by paying DAs on a day rate basis, in violation of the FLSA. Following pre-litigation discussions with Amazon, two videoconference mediations with the court-approved JAMS mediator Stephen Sonnenberg, and a full day, hybrid in person / remote mediation session conducted by court-approved mediator, Dennis Clifford, the Parties agreed to terms to settle the matter for the approximately 28-month time period at issue— between March 1, 2017 and June 22, 2019[2] — for the Wage Settlement Amount of $955,700. The Settlement Agreement is attached as Exhibit 1.

Plaintiffs respectfully submit this Motion should be granted because the proposed Settlement satisfies all the criteria for approval and is a fair and reasonable resolution of a *bona fide* dispute. Accordingly, Plaintiffs request the Court issue an order: (1) for settlement purposes, preliminarily certifying the collective pursuant to U.S.C.§ 216(b) on behalf of the Settlement Collective Members defined in the Settlement Agreement; (2) granting preliminary approval of the Parties' Settlement Agreement as a fair and reasonable resolution of a *bona fide* dispute under the FLSA; (3) authorizing notice to be sent to members of the Settlement Collective to advise

---

[2] The proposed Settlement Agreement resolves wage and hour claims of DAs for the entire period when DAs who performed work for the duration of the contract between Amazon and the Delivery Service Partner ("DSP") Commercial Express, Inc (including the entity named of COEI, LLC) – between March 1, 2017 and June 22, 2019. Agreement ¶ 11(m). During this time period, the DSP Defendants changed their pay policies to stop paying DAs on a day rate basis. Based on Plaintiffs' review of payroll records from the DSP Defendants after the pay policies were changed, Plaintiffs allege additional violations of the wage and hour laws, including failure to include bonuses in the regular rate of pay for overtime purposes. Defendants deny such violations occurred. The proposed Settlement Agreement therefore includes the entire time period, as described in further detail below.

them of the settlement, allow them to submit any disputes about their estimated minimum settlement awards, and allow them to update their contact information with the settlement administrator; and (4) setting a date for final approval of the Settlement Agreement. Defendants do not oppose this Motion.

## II.    PROCEDURAL HISTORY

Plaintiff Andrea Thomas worked as a DA in Florida and filed this case on August 16, 2018, alleging Defendant JSTC violated the FLSA by paying her and similarly situated individuals on a day rate basis without paying overtime for work performed over forty hours in a workweek (the "Action"). Plaintiffs DeAndre Tinson and Shonnika Spears joined in a First Amended Collective Action Complaint against the DSP Defendants (ECF No. 40), alleging that the DSP Defendants violated the FLSA in failing to pay them and similarly situated DAs overtime compensation when they worked more than 40 hours in a workweek by paying them and similarly situated individuals on a day rate basis.

On April 22, 2021, Plaintiffs filed a separate action against Amazon, alleging essentially identical allegations and naming Amazon as a joint employer. The two cases were consolidated against all Defendants in a Consolidated Amended Collective Action Complaint on September 3, 2021. (ECF No. 87.)

The Parties engaged in numerous efforts to resolve the lawsuit. Plaintiffs' Counsel engaged in pre-litigation discussions with Amazon and entered into a tolling agreement with Amazon for the benefit of the collective of the workers for the claims at issue. Plaintiffs and JSTC met in person in Florida on December 14, 2019, for a

settlement conference. Plaintiffs and all of the Defendants participated in a mediation via videoconference on October 15, 2020, with JAMS mediator Stephen Sonnenberg. (ECF No. 49.) Plaintiffs and all of the Defendants met for a second day of mediation with Mr. Sonnenberg via videoconference on April 7, 2021, but the Parties were not able to reach a resolution of the matter. (ECF No. 75.)

On October 28, 2021, the Parties participated in a third, full-day mediation conducted by mediator Dennis Clifford. Mr. Clifford, Plaintiffs' Counsel, and Amazon's Counsel participated in person in Chicago, Illinois, and the DSP Defendants participated remotely. At the end of the business day, Mr. Clifford made a mediator's proposal which was accepted by all Parties on November 5, 2021. (ECF No. 97.) The Parties separately negotiated wage damages and attorneys' fees and costs.

The Parties engaged in substantial discovery and exchange of information in connection with the litigation of the case and settlement efforts. Prior to their mediation efforts, the DSP Defendants provided Plaintiffs' Counsel with payroll data and timekeeping data, and Amazon provided its delivery data ("Rabbit" data) for DAs who were paid by the DSP Defendants and delivered packages to Amazon customers, which Plaintiffs' Counsel reviewed and analyzed extensively. Plaintiffs also served multiple non-party entities with subpoenas for documents and data in December 2020. Defendants Commercial Express and COEI responded to written discovery in the form of interrogatories and document requests. The Parties engaged in numerous meet and confer calls regarding the facts and data prior to and in connection with the

multiple mediations. As a result of these mediations and continued arm's length negotiations, the Parties agreed to settle Plaintiffs' claims.

## III.   TERMS OF THE SETTLEMENT

### A.   Settlement Collective Members

There are approximately 1,365 Settlement Collective Members, as identified in the Rabbit data. Plaintiffs have relied on the records produced by Defendants in negotiating this Settlement. *See supra* n.1. Agreement ¶ 11(s) (defining Settlement Collective Members). The Parties have stipulated and agreed, for settlement purposes only, certification of the Settlement Collective Members as a collective under the FLSA pursuant to 29 U.S.C. § 216(b) is appropriate. *Id.* ¶ 9. Each Settlement Collective Member will be fully advised of this Settlement with the Notice of Settlement, which shall provide each Settlement Collective Member with the minimum estimated settlement amount they can expect to receive, as well as the number of workweeks used to form the basis for their settlement amount, and provide them with the opportunity to submit any disputes about this information to the Settlement Administrator. *Id.* at Ex. A. The Notice of Settlement will also permit Settlement Collective Members the opportunity to update their contact information to ensure their check is sent to the correct location. *Id.*

### B.   Calculation and Distribution of the Wage Settlement Amount

The Parties have agreed to resolve the claims of the Settlement Collective for the total Wage Settlement Amount of $955,700.00. *Id.* ¶11(t). In addition, Defendants will separately pay the employer's share of payroll taxes associated with the Wage

Settlement Amount, Settlement Administrator Fees in an amount not to exceed $19,000, and the separately negotiated Fees and Costs Settlement Amount in the amount of $514,300. *Id.* ¶11(h) (q). The entirety of the Wage Settlement Amount will be distributed to the Members of the Settlement Collective without the need for them to submit claim forms, and, with the other funds described above, will be deposited into an established QSF within forty-five (45) calendar days after this Court preliminarily approves this Proposed Settlement. Agreement ¶14, 11(l).

The following objective formula will be utilized to calculate the settlement shares from the Wage Settlement Amount[3]:

1. *First,* the minimum amount of $50 per Settlement Collective Member will be deducted from the Wage Settlement Amount prior to the determination of *pro rata* individual settlement shares and allocated to each Settlement Collective Member so each settlement Collective Member receives at least $50 in exchange for their release in this Settlement Agreement. *Id.* ¶17(a).

2. *Second,* in addition to the $50 payment, Settlement Collective Members will receive a *pro rata* portion of the Wage Settlement Amount as follows:

    a. For each workweek during which the Settlement Collective Member worked four (4) or more days during the Day Rate Time Period[4], the Settlement Collective Member shall receive five (5) settlement shares. For each workweek

---

[3] For purposes of calculating the estimated minimum settlement shares to report in the Settlement Notice, there will be a $25,000 reserve fund, set aside from the Wage Settlement Amount, to account for any disputes that may arise during the course of the notice process. *Id.* ¶13(d). Any unallocated amounts from the reserve fund at the conclusion of the notice process will be utilized in the calculation of final settlement awards so the entirety of the Wage Settlement Amount is distributed to Settlement Collective Members.

[4] The Day Rate Time Period means the time period between March 1, 2017 and February 22, 2018 for Delivery Associates at the Tampa, FL delivery station (called DTP1); March 1, 2017 and March 10, 2018 for Delivery Associates at the Sarasota, FL delivery station (called DSR1); and March 1, 2017 and March 3, 2019 at the Jacksonville, FL delivery station (called DJX1), Orlando, FL delivery station (called DMO1), and Melbourne, FL delivery station (called DMB1). *Id.* ¶ 11(e). As described above, *supra* note 2, the allocation formula accounts for the change in pay policy put into place after the Day Rate Time Period by valuing settlement shares during this period with a multiplier of five, while still providing value for workweeks after this time period based on Plaintiffs' allegations of continued wage and hour violations.

during which the Settlement Collective Member worked four (4) or more days during the Relevant Time Period but after the Day Rate Time Period, the Settlement Collective Member shall receive one (1) settlement share. *Id.* ¶17(b)(i).

b. The total number of settlement shares for all Settlement Collective Members will be added together and the resulting sum will be divided into the Wage Settlement Amount to reach a per share dollar figure. That figure will then be multiplied by each Settlement Collective Member's number of settlement shares to determine the Settlement Collective Member's Settlement Award. *Id.* ¶17(b)(ii).

Fifty percent (50%) of the amount paid to each Settlement Collective Member will be considered wages and the remaining 50% considered liquidated damages. *Id.* ¶21.

## C.  Notice to Settlement Collective Members

The Settlement Agreement provides for robust notice provisions by first class mail and email, and it allows Settlement Collective Members to submit disputes and/or update their contact information during the Notice Period. *See id.* ¶ 13; Exhibit A. The initial Settlement Notice will inform Settlement Collective Members of their estimated minimum settlement amount and number of settlement shares, as well as other pertinent information to ensure they are adequately informed of their rights under the Settlement Agreement. *Id.* Importantly, Settlement Collective Members do not need to submit a claim form in order to receive their Settlement Award. *Id.* ¶ 13(i).

There will be a sixty-day notice period, during which time Settlement Collective Members may contact the Settlement Administrator with questions regarding their settlement shares and submit any disputes regarding their shares.[5] *Id.* ¶13(i). Following

---

[5] There is a rebuttable presumption that Defendants' records are correct, but Settlement Collective Members may, should they disagree with Defendants' records, provide documentation to show contrary information by no later than the conclusion of the Notice Deadline. Such a dispute shall be

the implementation of the Settlement Agreement's notice provision, including the sixty-day notice period, Plaintiffs will seek final approval of the Settlement and request that the Court finally certify the Settlement Collective. *Id.* ¶13(j). Upon the Court's final approval, the Parties will provide to the Settlement Administrator the final Settlement share calculations and the Settlement Administrator will mail Settlement Awards to all Settlement Collective Members, along with an accompanying Notice of Settlement Check substantially in the form attached at Exhibit B to the Settlement Agreement, as approved by the Court. *Id.* ¶20. The Notice of Settlement Check shall also be emailed to the last known address of the Settlement Collective Members. *Id.*

The Settlement Awards shall be checks containing a limited endorsement placed on the back of the check stating that by signing, depositing, and/or cashing the settlement check, the Settlement Collective Member agrees to opt into this action:

> By depositing or cashing this check, I am opting into and affirm my release of Amazon.com Services, Inc.; Amazon.com, LLC; Amazon Logistics, Inc.; Commercial Express, Inc.; COEI, LLC; JSTC, LLC; AG Plus Express, LLC; and Drop a Box, Inc., and all other Released Parties of my Released Claims as defined in the Settlement Agreement approved by the Court in *Thomas v. Amazon.com, LLC, et al.*, 19-cv-01528, 21-cv-00442 (M.D. Fla.). I affirm that I will not sue or assert any of the Released Claims, including FLSA claims, against any of the Released Parties.

*Id.* Settlement Award checks issued to Settlement Collective Members will be valid and negotiable for 180 days from the issue date and will be accompanied by the Notice of Settlement. A reminder letter will be distributed via U.S. mail and email to those who have still not cashed their check after 60 days, and the Settlement Administrator

---

directed to the Settlement Administrator, who will notify all Counsel of the dispute and promptly provide Counsel with a copy of the records provided by the individual. *Id.* ¶13(i).

will call those that have still not cashed their check to remind them to do so within the last 60 days of the Check Cashing Period. Any amounts from uncashed settlement checks remaining after the 180-day period will be paid back to Defendants in recognition of the fact that those individuals who do not cash their settlement checks do not release any claims against Defendants, as described below. *Id.* ¶22. At the conclusion of the check cashing period, Plaintiffs' Counsel shall file a notice with the Court identifying the Settlement Collective Members who have signed, deposited, or cashed their checks and, therefore, released the Released Parties of the Released Claims.[6] *Id.* ¶23.

### D.    Release of Claims

In exchange for the monetary benefits, Settlement Collective Members who sign, deposit, or cash their Settlement Award agree not to sue the Released Parties for the Released Claims.  Settlement Collective Members who choose not to cash their Settlement Award shall not release any claims against Defendants, and the Notice proposed as Exhibit B to the Settlement Agreement so informs the Settlement Collective Members. *Id.* ¶11(m) Ex. B.

### E.    Attorneys' Fees and Costs

The Parties negotiated the Fees and Costs Settlement Amount separately from

---

[6] "Released Claims" means any and all Fair Labor Standards Act claims (and related Florida state law wage claims) that accrued to the Settlement Collective Members while working for Defendants at any time between March 1, 2017 and June 22, 2019, including, without limitations, all FLSA and Florida state law claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses. The Released Claims shall become released upon the signing, cashing, or depositing of a Settlement Award. Agreement ¶11(m).

the Wage Settlement Amount, in the amount of $490,000.00 as well as their out-of-pocket costs of $24,300. *Id.* ¶ 7, 11(h). The Fees and Costs Settlement Amount will compensate Plaintiff's Counsel for all work performed in this Lawsuit as well as all work remaining to be performed, such as, securing Court approval of the Settlement Agreement, and making sure the Settlement Agreement is fairly administered and implemented, as well as reimbursement for out-of-pocket costs. *Id.* ¶11(h).

### F.     General Release of Defendants for Non-FLSA Claims

The Named Plaintiffs and Defendants separately negotiated a release for Non-FLSA claims (general release), attached hereto as Exhibit 3. This release had no impact on the FLSA Settlement Agreement or the formulas used to determine FLSA damages. It is independent of the FLSA Settlement and supported by additional consideration of $10,000.00. *Id.* To the extent it is not necessary, the Parties do not seek separate approval of the Non-FLSA release, and they respectfully submit that this does not impact the fairness of the FLSA Settlement Agreement. *See, e.g., Huff v. Bobcat N. Am., LLC*, No. 619CV861ORL37DCI, 2021 WL 268356, at *4 (M.D. Fla. Jan. 25, 2021), *report and recommendation adopted*, No. 619CV861ORL37DCI, 2021 WL 268355 (M.D. Fla. Jan. 27, 2021) (Dalton, J.) (approving general release in the amount of $10,000 and explaining that "[w]hile general releases are generally disfavored in FLSA actions, courts have found that parties may enter into a general release for separate consideration" and recommending that the Court "not pass on the validity of the separate release, but instead find that it does not affect the fairness of the FLSA

settlement in this action as set forth in the Agreement"), attached hereto as Exhibit 5.[7] This general release agreement does not contain any additional terms such as a confidentiality, no-rehire, or non-disparagement clauses. *Id.*

## IV.   ARGUMENT

### A.   The Court Should Conditionally Certify the Collective

Plaintiffs request that the Court conditionally certify the Settlement Collective pursuant to 29 U.S.C. § 216(b), for the purposes of: (i) notifying the Settlement Collective Members of the Settlement and their rights to participate, and providing the opportunity for them to submit any disputes regarding their individual settlement shares; (ii) preliminarily approving the FLSA Settlement Agreement and its terms as a fair and reasonable resolution of a *bona fide* dispute; (iii) approving the proposed form of Settlement Notice (Exhibit A to Exhibit 1)and its means of dissemination; and (iv) setting a date for Plaintiffs' Motion for Final Certification and Approval of the Settlement.

Under the FLSA, an action "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other

---

[7] *See also, e.g., Roman v. FSC Clearwater*, LLC, 6:16-cv-969-Orl-41DCI, 2017 WL 1552304, at *n.1 (M.D. Fla. May 1, 2017) (court declined to express opinion on validity of general release agreement for which additional consideration was paid) (Mendoza, J.); *Sibauste v. Forge Motor Sport, Inc.,* Case No: 6:17-cv-2069-Orl-DCI, at *n.1 (M.D. Fla. May 17, 2018) (court approved FLSA settlement without "passing judgment on the enforceability of any of the provisions unrelated to the settlement of Plaintiff's FLSA claim, such as the general release and confidentiality provision for which separate consideration was paid.") (Irick, J.); *Vela v. Sunnygrove Landscape & Irrigation Maint., LLC,* No. 2:18-cv-165-FtM-38MRM, 2018 WL 8576382, at *3-4 (M.D. Fla. Oct. 4, 2018), report and recommendation adopted, No. 2:18-cv-165-FtM-38MRM, 2018 WL 8576384, at *1 (M.D. Fla. Nov. 7, 2018) (approving a general release, emphasizing that the parties' briefing specifically explained that "(1) the clauses were specifically bargained for between the parties and (2) the mutual general release was not a condition of their FLSA settlement").

employees similarly situated." 29 U.S.C. § 216(b). Thus, the FLSA authorizes the use of collective actions against employers accused of violating the FLSA. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008).[8] To maintain a collective action, plaintiffs must demonstrate that they are "similarly situated." *Id.*

Although not mandated, courts have utilized a two-tiered approach for certifying a section 216(b) opt-in collective action, and where a collective action is settled before conditional certification, courts in this District have utilized a two-step process for approval of an FLSA collective action settlement. *See, e.g., Dominique v. Capreit, Inc.*, No. 2:18-cv-231 (M.D. Fla. Nov. 10, 2020); *but see Mcguire v. Intelident Solutions, LLC*, No. 8:18-cv-02995, 2020 WL 10506642, *3 (M.D. Fla. Sept. 20, 2020) (final certification of collective action settlement is not required, and approving settlement where only collective members who cash their settlement checks are bound by release of claims); *Huff*, 2021 WL 268356, at *2 ("final certification or decertification is not necessary for approval of the [FLSA] settlement").[9]

---

[8] The purposes of the collective action are twofold: (1) to reduce the burden on plaintiffs by pooling their resources; and (2) to efficiently resolve common issues of fact and law that arise from the same illegal conduct. *Id.* at 1264. Basically, a collective action allows the efficient resolution of a large number of plaintiffs' claims at one time. *Id.*

[9] Courts in this Circuit have also utilized and endorsed a one-step approval process in FLSA cases, recognizing that the FLSA, unlike class actions under Rule 23, do not implicate the same due process concerns as underlie the two-step settlement process in Rule 23 cases. In a similar case involving Amazon and a DSP litigated by the same undersigned Plaintiffs' counsel, the District Court for the Northern District of Georgia approved a similarly structured settlement using a one-step approval process. Specifically, in *Gaines v. Amazon.Com, LLC*, 1:19-cv-00528-WMR (N.D. Ga. June 22, 2020) (ECF 72), the Court approved the FLSA settlement as a fair and reasonable resolution of *bona fide* dispute, "finally certifie[d]", for settlement purposes, the collective of delivery associates defined in the settlement agreement, and ordered that "Settlement Collective Members who choose to cash or deposit their settlement checks are hereby enjoined from prosecuting any Released Claims against Defendants and the Releasees." See *Gaines* Order, attached as Exhibit 4.

In an abundance of caution, to comport with local practice and to ensure Settlement Collective Members have the opportunity to dispute their settlement shares, Plaintiffs seek an order conditionally certifying the collective at this preliminary approval stage. "[T]he similarly situated requirement is not particularly stringent." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1241 (11th Cir. 2001). To demonstrate that a group of similarly situated employees exists, a plaintiff must only show that his position is similar – not identical – to the positions held by the putative class members. *Id.* While a plaintiff is not required to demonstrate the existence of an illegal pay practice or policy at the conditional certification stage, he may do so as a means of meeting the "similarly situated" standard. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996).

The DAs to whom Plaintiffs seek to send settlement notice are similarly situated in that they 1) all performed uniform services which Plaintiffs allege were at the direction of Defendants to deliver Amazon's packages; 2) they all performed work pursuant to a single contract for one DSP; 3) they were all paid pursuant to a day rate compensation policy that violated the FLSA until such time that the DSPs and/or its subcontractors were allegedly directed to cease paying Delivery Associates on a day rate basis by Amazon; and 4) were not paid overtime for all hours worked over forty (40) in a single work week. As such, Plaintiffs easily satisfy the criteria for issuance of notice under 29 U.S.C. § 216(b), which will permit all members of the Settlement Collective to receive payment for the alleged uncompensated wages that they were denied during the course of their work. Numerous courts have certified similar classes

and collectives of DAs performing similar work for DSPs performing contracts with Amazon in cases around the country.[10]

Defendants stipulate to certification for settlement purposes only. Following notice and final approval, collective members will be sent settlement awards and will affirmatively "opt-in" to the litigation by cashing or depositing their settlement award, with language on the back of the check affirming their opting in to the settled litigation. *See, supra* Section III(C). At the conclusion of the check cashing period, Plaintiffs' Counsel will file a notice with the Court identifying the Settlement Collective Members who opted in to the settled litigation. *Id. See also* Agreement at ¶23. Similar processes for settlement have been approved by district courts in this Circuit as well as across the country, including in cases involving Amazon and DSPs.[11] Collective action treatment is appropriate for purposes of settlement.

---

[10] *Hickman v. TL Transportation, LLC, Amazon.com, et al.,* No. 2:17-cv-01038, Dkt. No. 130; *Hickman,,* 317 F. Supp. 3d 890 (E.D. Pa. 2018); and *Hickman,* 318 F. Supp. 3d 718 (E.D. Pa. 2018) (settlement on behalf of DAs in class and collective wage claim against Amazon and DSP; favorable opinions obtained on liability, personal jurisdiction, DSP owner individual liability, and certification); *Green v. Amazon.com, et al.*, No. 1:18-cv-1032 (M.D.N.C.) (DAs represented by Undersigned Counsel certified for settlement purposes on behalf of "all current and former [DAs] who were paid by Defendant Valdivia to deliver packages to customers of Amazon.com …"); *Gaines v. Amazon.com, LLC, et al.*, No. 1:19-cv-00528-WMR (N.D. Ga. Jun. 22, 2020) (Dkt. No. 72) (DAs represented by Undersigned Counsel with collective certified for settlement purposes on behalf of "Plaintiff, Opt-In Plaintiffs, and all current and former [DAs] who were paid by Defendant on the Go to deliver packages to customers of Amazon.com …"); *Gongaware v. Amazon.com, et al.*, No. 1: 18-cv-08358 (N.D. Ill.) (DAs represented by Undersigned Counsel certifying for settlement purposes "a class and collective of … all [DAs] who were paid by Defendant Sheard-Loman Transport, LLC to deliver packages to Amazon customers …."); *Southern Star Express v. Page*, No. 5:19-cv-01423 (W.D. Tx. Mar. 31, 2021) (Dkt. No. 42) (DAs represented by Undersigned Counsel approving settlement on behalf of collective of "all current and former [DAs] paid by Southern Star to deliver packages to customers of Amazon…").

[11] In each of the cases listed in footnote 10, the district courts approved similar procedures regarding the release of FLSA claims to the one proposed here. *See, e.g.,* Ex. 4, *Gaines v. Amazon.Com, LLC*, 1:19-cv-00528-WMR (N.D. Ga. June 22, 2020) (ECF 72); *See also Mcguire*, 2020 WL 10506642, *3 (approving settlement where only collective members who cash their settlement checks are bound by release of claims); *Frazier v. American Health Imaging, Inc.*, 1:16-CV-02148-ELR (N.D. Ga. Sept. 28,

B.     **The Court Should Preliminarily Approve the Settlement**

1.     **Legal Standard for Approval of FLSA Settlements**

When parties bring a proposed settlement of an FLSA claim before a court, the Court must scrutinize the settlement to determine whether it is a fair and reasonable resolution of a *bona fide* dispute. *Lynn's Food Stores, Inc. v. U.S.*, 679 F. 2d 1350, 1354-55 (11th Cir 1982)). If a settlement in an FLSA suit reflects "a reasonable compromise over issues," such as FLSA coverage or computation of wages that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354. "There is a strong presumption in favor of settlement." *Huff*, 2021 WL 268356, at *2.

The Settlement Agreement meets the requirements for both fairness and reasonableness and furthers the implementation of the FLSA. The Court should preliminarily approve the Settlement Agreement.

2.     **A *Bona Fide* Dispute Existed Between the Parties**

A proposed settlement resolves a *bona fide* dispute where its terms "reflect a reasonable compromise over issues such as…back wages, that are actually in dispute."

---

2017) (ECF 27) (all Participating Settlement Opt-ins …will be deemed by the Court to have consented to this lawsuit and opted into this lawsuit by negotiating a Settlement Check."); *Adams v. Peco Foods, Inc.*, 2012 WL 13024002 (N.D. Ala. Mar. 2, 2012) (same); *see also Day v. NuCO2 Mgmt., LLC*, 1:18-cv-02088, 2018 WL 2473472, at *1 (N.D. Ill. May 18, 2018) ( "Eligible Settlement Class Members will not be bound by the release if they do not timely sign and cash their settlement payments"); *Prena v. BMO Fin. Corp.*, No. 15 C 09175, 2015 WL 2344949, *1 (N.D. Ill. May 15, 2015) (approving FLSA settlement and noting "[t]he settlement notice is approved. It is sufficiently in plain English to explain the important points: the terms of the settlement, the allocation formula, the amount of the entitlement, how to opt-in, and that cashing the check is equivalent to releasing the claim.").

*Lynn's Foods Stores*, 679 F.2d at 1355. Here, the Parties disagreed on numerous legal and factual issues that would have impacted the case moving forward, including, but not limited to, the following:

1)   the amount of time the DAs spent performing their work, and whether the DSP Defendants' timekeeping methods accurately tracked all time worked for purposes of calculating overtime;

2)   the appropriate rate at which overtime should be paid when DAs were paid a day rate (*i.e.,* half-time or time-and-one-half the regular rate);

3)   whether Defendants would be able to meet their burden of demonstrating good faith, such that they would avoid the imposition of liquidated damages;

4)   whether Amazon would be held liable for the alleged pay violations as a joint employer, and whether the DSP Defendants would be able to pay any judgment in the event Amazon was not found to be a joint employer;

5)   whether Plaintiffs could maintain a collective action; and

6)   whether Plaintiffs and/or Defendants would appeal myriad legal or factual determinations, including collective action treatment, liability, and damages.

Ultimately, the Wage Settlement Amount agreed upon represents a compromised resolution on these issues, accounts for the risks of litigation, and provides certain, immediate, and meaningful payment for the low wage workers in this case for the time period at issue. *See, e.g., Reams v. Michael Angelo Rest., Inc.*, No. 7:19-CV-53 (HL), 2019 WL 6898656, at *2 (M.D. Ga. Dec. 18, 2019) (approving settlement resolving *bona fide* disputes regarding "whether Plaintiff received the statutory rate for his overtime hours; the number of overtime hours Plaintiff worked; the applicable statute of limitations; and whether Plaintiff is entitled to liquidated damages").

### 3.   The Settlement is Fair and Reasonable

The proposed Settlement in this case meets the standard for approval of an FLSA Settlement because it has been negotiated at arm's length and is a fair and reasonable compromise of disputed issues under *Lynn's Food Stores* and satisfies all of the *Leverso* factors applied by this Circuit to assess fairness and reasonableness of settlement of an FLSA collective action.[12]

### a.  The Parties Fairly and Honestly Negotiated the Settlement and There was No Fraud or Collusion

The settlement reached represents an excellent result for the Settlement Collective Members. There is no indicia of fraud or collusion with respect to this proposed Settlement, which was reached after arm's-length negotiations, including three full-day mediations conducted by two separate respected wage and hour mediators over the course of a year, including an in-person mediation in Chicago after the exchange of substantial data and analyses and numerous meet and confers regarding potential exposure. Indeed, the final settlement was the product a mediator's proposal designed to reach a compromise resolution between intransigent Parties. *See, e.g.,* ECF No. 95-1 (Decl. of Dennis Clifford).

The settlement is based on extensive and appropriate investigation, including detailed analyses of the data provided. Ultimately, represented by experienced

---

[12] In determining whether an FLSA settlement is "fair and reasonable," courts in the Eleventh Circuit may consider the following six factors: "(1) the existence of collusion behind the settlement; (2) the complexity, expense, and likely duration of the case; (3) the stage of the proceedings and the discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel." *Huff,* 2021 WL 268356, at *2 (citing *Leverso v. SouthTrust Bank of Ala. Nat. Ass'n*, 18 F. 3d 1527, 1530 n.6 (11th Cir. 1994)). "When considering these factors, the Court should keep in mind the strong presumption in favor of finding a settlement fair." *Dail v. George A. Arab Inc.*, 391 F. Supp. 3d 1142, 1146 (M.D. Fla. 2005) (internal quotes and citation omitted).

17

counsel, and with assistance of two experienced mediators, the Parties have agreed to this Settlement as a fair and reasonable resolution of the action. *Crabtree v. Volkert, Inc.,* 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013) (court's conclusion that settlement is reasonable is "reinforced by the fact that plaintiffs were ably represented during the settlement negotiations by capable, experienced counsel with extensive experience in complex employment law cases."). These factors support approval of the Settlement.

> **b.** **The Settlement is Fair and Reasonable In View of the Complexity, Expense, and Likely Duration of the Litigation, and the Range of Recovery**

The Settlement provides the Settlement Collective Members a certain, substantial and immediate payment and averts years of continued complex, time-consuming, and expensive litigation, with no assurance of success. Importantly, the acceptance of this settlement is voluntary—if Settlement Collective Members do not wish to participate in the settlement and do not cash their settlement award, they will not release any claims against Defendants.

The Settlement provides an excellent result to Settlement Collective Members. Schalman-Bergen Decl. During this time-period, Settlement Collective Members averaged only approximately 20 weeks of work. *Id.* at ¶ 20. Based on analysis of the data provided, in more than 60% of workweeks, Settlement Collective Members were unlikely to have worked more than forty hours in a workweek (and therefore would not be entitled to any overtime damages). *Id.* at ¶ 20. Plaintiffs' counsel performed damages calculations using various assumptions about the amount of time worked in each workweek that appeared in the Rabbit data,  and the rate of overtime they would

18

have been owed if Plaintiffs prevailed on all claims. [13] Ultimately, the Wage Settlement Amount agreed upon represents a compromise amount that totals more than approximately 4.5 times Plaintiffs' lowest calculations utilizing the legal and factual assumptions Defendants argued were reasonable and proper, and approximately 50% of alleged unpaid wages using Plaintiffs' most favorable calculations (that Defendants challenged both legally and factually). *Id.* at ¶ 21. This will result in significant amounts of compensation being paid to the low wages workers who worked for relatively short periods of time in workweeks between March 1, 2017 and June 22, 2019.

This is an excellent result, which provides Settlement Collective Members a certain, substantial, and immediate payment and averts years of continued complex, time-consuming, and expensive litigation, with no assurance of success. *Id.* at ¶ 22. The fairness of these amounts is further supported by the structure of the settlement, whereby all Settlement Collective Members will be sent a check without the administrative hurdle of having to submit a claim form. Settlement Collective Members will then have the option of cashing their check and releasing their claims. If they do not believe that the settlement represents fair and adequate compensation for their claims, they do not need to cash the settlement check. This process maximizes the amount of money available to Settlement Collective Members without the due

---

[13] Defendants strenuously objected to any calculations that involved payment of damages at a time and a half rate. *Compare Rodriguez v. Republic Servs.,* No. SA–13–CV–20–XR, 2013 WL 5656129 (W.D. Tex. Oct. 15, 2013) (holding that where employer pays a day rate and additional forms of compensation, it may not pay overtime at only the half time rate, rather than one and one-half times rate) *with Hernandez v. Plastipak Packaging,* 15 F.4th 1321 (11th Cir. 2021) (holding that paying employee a bonus, on top of fixed weekly salary, does not preclude an employer from using fluctuating workweek method to calculate employee's overtime pay).

process concerns inherent in Rule 23 cases where claims are released by virtue of approval of the settlement.

### c.   The Stage of the Proceedings and Discovery Completed

The court considers "the degree of case development that class counsel have accomplished prior to settlement" to ensure "counsel had an adequate appreciation of the merits of the case before negotiating." *George v. Academy Mortgage Corp.,* 369 F. Supp. 3d 1356, 1370 (N.D. Ga. 2019). "At the same time, '[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations.'" *Id.* at 1371.

Here, the Settlement was reached after thorough investigation and analysis of the facts and law related to the claims, and continuous development of the facts through interviewing Plaintiffs and other collective members and through the mediation process, including Plaintiffs' Counsel's extensive review and analysis of payroll and timekeeping data and Amazon's delivery data. Schalman-Bergen Decl. 18. *See George,* 369 F. Supp. 3d at 1371 ("Class Counsel's review of the payroll, class identification, and other documents produced positioned them to evaluate with confidence the strengths and weaknesses of Plaintiffs' claims…"). Plaintiffs' Counsel—who have extensive experience in litigating wage and hour cases against Amazon and DSPs—were familiar with the applicable law and facts and with the risks attendant in continuing to pursue the litigation.

### d.   The Risks of Achieving Success on the Merits

"The 'likelihood and extent of any recovery from the defendants absent … settlement' is another important factor in assessing the reasonableness of a settlement." *George*, 369 F. Supp. 3d at 1371. A trial on the merits would involve significant risks for Settlement Collective Members based on the disputed issues identified in Section B(2), *supra*. In addition, as in any FLSA case, there was a risk the Settlement Collective Members would not succeed in maintaining a collective through trial. While Plaintiffs believe the case was very strong, the outcome of the litigation would require significant factual development. Moreover, any verdict at trial could be delayed based on any appeals by Defendants. Further, if Plaintiffs had not prevailed in holding Amazon liable as a joint employer, it is not clear that the remaining Defendants would have been able to satisfy any judgment, even if Plaintiffs had prevailed on all claims. These likely risks attending to Plaintiffs' claims and the certain delay and expense of continued litigation further counsel in favor of final approval of this Settlement.[14]

### 4. The Proposed Settlement Furthers the Purpose of the FLSA

Finally, the Settlement Agreement contains no provisions that would be contrary to the purposes of the FLSA or frustrate the implementation of the FLSA in the workplace, such as a confidentiality clause or overbroad release. The Settlement Agreement furthers the purposes of the FLSA by providing Settlement Collective

---

[14] *Lockwood v. CIS Services, LLC*, No. 3:16-cv-965, 2019 WL 2226126, at *9 (M.D. Fla. May 3, 2019) ("Without a settlement, the parties would have to proceed to trial, and the plaintiffs would risk receiving nothing. The parties and their counsel believe this is a reasonable settlement."); *Crabtree*, 2013 WL 593050, at *3 (finding FLSA settlement reasonable, because even if plaintiffs had prevailed in proving liability, defendant may have prevailed in demonstrating good faith, such that no liquidated damages award was appropriate).

Members, DAs earning relatively low wages, with substantial recovery for their unpaid wages and overtime they may have otherwise been unable to recover. *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency...."). All Settlement Collective Members will receive an award, and will not release any claims against Defendants unless they sign, cash, or deposit their Settlement Award check. *See supra* n.11.

Additionally, because a plaintiff may only compromise FLSA claims on the basis of a "dispute over FLSA provisions," certain concessions, such as pervasive general releases are reviewed for their impact on a settlement's fairness, especially when they appear gratuitous or to be the result of overreaching by an employer. *See Bright v. Mental Health Res. Ctr., Inc.*, No. 3:10–cv–427–37TEM, 2012 WL 868804, (M.D. Fla. Mar. 14, 2012) ("Employers cannot use the settlement of FLSA claims to extract a general release of claims before paying over the wages").

The Settlement Agreement does not contain a pervasive general release[15], though it does release wage and hour claims under the FLSA and state law. This is because Plaintiffs' analysis led them to allege that, after the change from day rate to

---

[15] As described in Section III(F), the general release agreements between Defendants and the Named Plaintiffs were separately negotiated for separate consideration. Similar such agreements have been approved by this Court. *See Huff*, 2021 WL 268356, at *2.

hourly, payroll records showed a failure to incorporate bonuses in the regular rate, and therefore the settlement includes all weeks worked by Settlement Collective Members for the duration of the applicable DSP contract with Amazon. Narrow releases such as this are approved as fair and reasonable. *Plazas v. Dr. Phillips Ctr. for Performing Arts, Inc.*, 6-18-CV-392-Orl-37TBS, 2018 WL 3432739, at *3 (M.D. Fla. June 29, 2018) (approving a release for all unpaid wage claims under FLSA "or any similar state or local law"), report and recommendation adopted, 2018 WL 3428155 (M.D. Fla. July 16, 2018) (Dalton, J.). The Settlement Agreement should be preliminarily approved.

## C.   The FLSA Supports the Negotiated Fees and Costs in the Proposed Settlement

The FLSA provides "[t]hat the court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the Defendants, and costs of the action." 29 U.S.C. § 216(b). Counsel for the Parties stipulate that the amount negotiated as attorneys' fees and costs is fair and reasonable, and that Plaintiffs accept this amount in full satisfaction of the attorneys' fees and costs incurred.

This District has held that the court's scrutiny of the reasonableness of the fees is unnecessary in an FLSA settlement where "the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff," except in circumstances where "the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney." *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228

(M.D. Fla. 2009).[16] In addition, the FLSA provides for a mandatory award of "[c]osts of the action to a prevailing plaintiff." *See* 29 U.S.C. § 216(b); *Glenn v. Gen Motors Corp.*, 841 F.2d 1567 (11th Cir. 1988).

This Court applies *Bonetti* and has stated that the fairness and reasonableness of attorneys' fees is established when the Parties separately negotiate the claim for attorneys' fees and nothing in the record indicates that the Plaintiffs' recovery would be adversely affected by the amount paid to counsel. *Buntin v. Square Foot Mgmt. Co., LLC*, 6:14-CV-1394-ORL-37, 2015 WL 3407866, at *4 (M.D. Fla. May 27, 2015); *See also Huff*, 2021 WL 268356, at *4 (adopted by Dalton, J.) (parties' representations of separate negotiation of attorneys' fees adequately establishes the reasonableness of the fees under the Agreement).

Similarly, here, the Plaintiffs' damages were calculated using the formulas discussed, and the fees were separately negotiated based on time expended, which the Parties agree was necessary for the prosecution of this action. Schalman-Bergen Decl. ¶ 23. This case has been time consuming, and Plaintiffs' Counsel has spent significant

---

[16] *See also Urbas v. Nutritious Lifestyles, Inc.*, No. 3:19-cv-855-J-34PDB, 2020 WL 264686, at *3 (M.D. Fla. Jan. 2, 2020) ("If the parties negotiated attorney's fees separately from the amount to the plaintiff, the court need not undertake a lodestar review of the attorney's fees for reasonableness"); *Campbell v. Pincer's Beach Bar Grill, Inc.*, No: 2:15–cv–695, 2017 WL 3700629, *4 (M.D. Fla. Aug. 24, 2017) ("If these matters are addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement."); *Wing v. Plann B. Corp.*, No. 6:11–cv–1499–Orl–36GJK, 2012 WL 4746258, at *4 (M.D. Fla. Sept 17, 2012) (declining to examine reasonableness of attorney's fee payment in FLSA settlement where "Plaintiff's claims were resolved separately and apart from the issue of attorneys' fees," such that "there is no reason to believe that Plaintiff's recovery was adversely affected by the amount of fees and costs to be paid to Plaintiff's counsel."); *Vogenberger v. ATC Fitness Cape Coral, LLC*, 2015 WL 1883537, at *5 (M.D. Fla. Apr. 24, 2015); *Hosier v. Mattress Firm, Inc.*, 2012 WL 2813960 (M.D. Fla. June 8, 2012); *see also Barbee v. Kochg River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019) (held that the FLSA does not require court approval for attorneys' fees as the statute treats the merits of a claim and attorneys' fees as distinct).

amounts of time both in pursuing discovery formally and informally, and in working with multiple parties in extensive mediation processes that ultimately led to a settlement that will provide more than a thousand low wage workers with meaningful compensation for their work. *Id.* ¶ 23. Plaintiffs' Counsel pursued this action on a complete contingent basis, and has spent time and expended significant costs to prosecute this action, with no guarantee of recovery. *Id.* The agreement regarding the payment of attorneys' fees and costs does not affect the reasonableness and fairness of the settlement and should be approved.[17]

## V.   CONCLUSION

Plaintiffs respectfully requests that the Court grant this Unopposed Motion to Preliminarily Approve the Settlement, and enter an accompanying proposed Order: (1) for settlement purposes, preliminarily certifying the collective pursuant to U.S.C.§ 216(b) on behalf of the Settlement Collective Members defined in the Settlement Agreement; (2) granting preliminary approval of the Parties' Settlement Agreement as a fair and reasonable resolution of a *bona fide* dispute under the FLSA; (3) authorizing notice to be sent to members of the Settlement Collective to advise them of the settlement, allow them to submit any disputes about their estimated minimum settlement awards, and allow them to update their contact information with the settlement administrator; and (4) setting a date for final approval of the Settlement Agreement.

---

[17] Should the Court seek further information about the Fees and Costs Settlement Amount, Plaintiffs can supplement their submission in connection with seeking final approval from the Court.

Dated: December 17, 2021        Respectfully submitted,

/s/ Sarah R. Schalman-Bergen
Sarah R. Schalman-Bergen
Krysten Connon
LICHTEN & LISS-RIORDAN, PC
729 Boylston St, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
ssb@llrlaw.com
kconnon@llrlaw.com

Janet R. Varnell
Brian W. Warwick
VARNELL & WARWICK, P.A.
1101 E. Cumberland Ave.
Suite 201H, #105
Tampa, FL  33602
(352)753-8600
jvarnell@vandwlaw.com

Ryan Hancock
WILLIG, WILLIAMS & DAVIDSON
rhancock@wwdlaw.com
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103

Michaela L. Wallin
BERGER MONTAGUE PC
mwallin@bm.net
1818 Market Street, Suite 3600
Philadelphia, PA 19103

*Attorneys for Plaintiffs and the FLSA Collective*

26

## CERTIFICATE OF SERVICE

The undersigned hereby certifies a true and correct copy of the foregoing has been filed on the ECF docket and is available for viewing and download on this 17th day of December 2021.

s/ Sarah R. Schalman-Bergen
Sarah R. Schalman-Bergen