ANDREA THOMAS, DEANDRE
TINSON, and SHONNIKA
SPEARS on behalf of themselves
and all others similarly situated,

                      Plaintiffs,

v.                                    Case No:   6:19-cv-1528-RBD-GJK

AMAZON.COM SERVICES, INC.;
AMAZON LOGISTICS, INC.;
AMAZON.COM LLC; JSTC, LLC;
COMMERCIAL EXPRESS, INC.;
COEI, LLC; AG PLUS EXPRESS,
LLC; and DROP A BOX, INC.,

                      Defendants.

_____

### REPORT AND RECOMMENDATION[1]

    This cause came on for consideration without oral argument on the following motion:

| MOTION: | PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE FAIR LABOR STANDARDS ACT COLLECTIVE ACTION SETTLEMENT AGREEMENT (Doc. No. 101) |
|---|---|
| FILED: | December 17, 2021 |

_____

[1] Magistrate Judge David A. Baker substituting for Magistrate Judge Gregory J. Kelly.

> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED IN PART AND DENIED IN PART**.

## I.    BACKGROUND.

On August 16, 2019, Plaintiff Andrea Thomas filed suit against Defendant JSTC, LLC, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* Doc. No. 1. Thomas alleged that she worked for JSTC, which is a Delivery Service Provider ("DSP") of Amazon.com LLC and Amazon Logistics, Inc., as a Delivery Associate delivering packages. *Id.* at ¶ 1. Thomas brought suit individually, and on behalf of those similarly situated, alleging that JSTC violated the FLSA by failing to pay her for all hours worked in excess of forty hours in a workweek and failing to pay proper overtime premiums. *Id.* at ¶ 44. Thomas proposed a collective class consisting of "[a]ll current and former Delivery Associates who were paid by Defendant JSTC, LLC to deliver packages for Amazon in the United States during the applicable limitations period . . . ." *Id.* at ¶ 13.

On April 14, 2020, Thomas filed an amended complaint naming additional defendants Commercial Express, Inc.; COEI, LLC; AG Plus Express, LLC, and Drop a Box, Inc., alleging that they employ her and members of the proposed collective class. Doc. No. 40 at ¶ 1. Fellow Delivery Associates DeAndre Tinson and Shonnika Spears were also added as plaintiffs. *Id.* at ¶¶ 2, 3. On September 3, 2021, Thomas, Tinson, and Spears (collectively, the "Named Plaintiffs") filed a Consolidated Amended Collective Action Complaint, consolidating this action

with their FLSA action for overtime wage violations against Defendants Amazon.Com Services, Inc., Amazon Logistics, Inc., and Amazon.com LLC, case number 3:21-cv-442-RBD-GJK, that was pending in the Jacksonville Division of this Court. Doc. No. 87. Named Plaintiffs allege that Defendants are joint employers and repeat their allegations that Defendants failed to comply with the overtime wage provisions of the FLSA. *Id.* at ¶¶ 29-61, 86. Named Plaintiffs amended the definition of the proposed collective class to the following: "All current and former Delivery Associates who were paid by Defendants Commercial Express, COEI, LLC, or any one of its subcontractors, including AG Plus Express, LLC, JSTC, LLC, and/or Drop a Box, Inc. to deliver packages for Amazon in the United States during the applicable limitations period . . . ." *Id.* at ¶ 27. Excluded from the proposed collective are "individuals who have opted into *Gibbs v. MLK Express, LLC*, Case No. 2:18-cv-434-SPC-MRM, an action pending in the United States District Court for the Middle District of Florida." *Id.* at ¶ 27 n.1. On September 24, 2021, Defendants filed answers and affirmative defenses. Doc. Nos. 90-92.

On November 5, 2021, the parties notified the Court that they settled this matter. Doc. No. 97. On December 17, 2021, Named Plaintiffs filed an unopposed motion for preliminary approval of the settlement agreement (the "Motion"). Doc. No. 101. On January 20, 2022, the undersigned ordered the parties to provide

briefing regarding the applicability of *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020), *mandate withheld pending petition for rehearing en banc*, No. 18-12344 (Nov. 9, 2020), Doc. No. 106, which the parties provided on January 25, 2022, Doc. No. 107. On January 27, 2022, the Court held a hearing on the Motion. Doc. No. 108. On February 2, 2022, the parties filed their supplemental brief, including a new Notice of Settlement Award Check that corrected typographical errors in the original. Doc. Nos. 109, 109-2.

## II.    LAW.

In *Lynn's Food Stores, Inc. v. United States Department of Labor*, 679 F.2d 1350 (11th Cir. 1982), the Eleventh Circuit addressed the means by which an FLSA settlement may become final and enforceable:

> There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them . . . . The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

Thus, unless the parties have the Secretary of Labor supervise the payment of unpaid wages owed or obtain the Court's approval of the settlement agreement, the parties' agreement is unenforceable. *Id*. Before approving an FLSA settlement,

the Court must scrutinize it to determine if it is a fair and reasonable resolution of a bona fide dispute. *Id.* at 1354-55. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement. *Id.* at 1354.

In determining whether the settlement is fair and reasonable, the Court should consider the following factors:

> (1) the existence of collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of plaintiff's success on the merits;
> (5) the range of possible recovery; and
> (6) the opinions of counsel.

*See Leverso v. SouthTrust Bank of Ala., Nat'l Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994); *Hamilton v. Frito-Lay, Inc.*, Case No. 6:05-cv-592-ACC-JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007), *report and recommendation adopted*, 2007 WL 219981 (M.D. Fla. Jan. 26, 2007). The Court should be mindful of the strong presumption in favor of finding a settlement fair. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).[2]

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

In FLSA cases, the Eleventh Circuit has questioned the validity of contingency fee agreements. *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (citing *Skidmore v. John J. Casale, Inc.*, 160 F.2d 527, 531 (2d Cir. 1947) ("We have considerable doubt as to the validity of the contingent fee agreement; for it may well be that Congress intended that an employee's recovery should be net[.]")).[3] In *Silva*, the Eleventh Circuit held:

> That Silva and Zidell entered into a contingency contract to establish Zidell's compensation if Silva prevailed on the FLSA claim is of little moment in the context of FLSA. FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement. FLSA provides for reasonable attorney's fees; the parties cannot contract in derogation of FLSA's provisions. *See Lynn's Food*, 679 F.2d at 1352 ("FLSA rights cannot be abridged by contract or otherwise waived.") (quotation and citation omitted). To turn a blind eye to an agreed upon contingency fee in an amount greater than the amount determined to be reasonable after judicial scrutiny runs counter to FLSA's provisions for compensating the wronged employee. *See United Slate, Tile & Composition Roofers v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 504 (6th Cir. 1984) ("the determination of a reasonable fee is to be conducted by the district court regardless of any contract between plaintiff and plaintiff's counsel"); *see also Zegers v. Countrywide Mortg. Ventures, LLC*, 569 F.Supp.2d 1259 (M.D. Fla. 2008).

---

[3] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

307 F. App'x at 351-52. For the Court to determine whether the proposed settlement is reasonable, plaintiff's counsel must first disclose the extent to which the FLSA claim has or will be compromised by the deduction of attorney's fees, costs, or expenses pursuant to a contract between the plaintiff and counsel, or otherwise. *Id*. When a plaintiff receives less than a full recovery, any payment from plaintiff's recovery above a reasonable fee improperly detracts from the plaintiff's recovery. [4] Thus, a potential conflict can arise between counsel and client regarding how much of the plaintiff's total recovery should be allocated to attorney's fees and costs.[5] It is the Court's responsibility to ensure that any such allocation is reasonable. *Id.* As the Court interprets the *Lynn's Food Stores, Inc.* and *Silva* cases, where there is a compromise of the amount due to the plaintiff, the Court should decide the reasonableness of the attorney's fees provision under the parties' settlement agreement using the lodestar method as a guide. In such a case, any compensation for attorney's fees beyond that justified by the lodestar method is unreasonable unless exceptional circumstances would justify such an award.

---

[4] From a purely economic standpoint, a defendant is largely indifferent as to how its settlement proceeds are divided as between a plaintiff and counsel. Where a plaintiff is receiving less than full compensation, payment of fees necessarily reduces the plaintiff's potential recovery.

[5] This potential conflict is exacerbated in cases where the defendant makes a lump sum offer which is less than full compensation, because any allocation between fees and the client's recovery could become somewhat arbitrary.

An alternative means of demonstrating the reasonableness of attorney's fees and costs was set forth in *Bonetti v. Embarq Management Co.*, 715 F. Supp. 2d 1222 (M.D. Fla. 2009). In *Bonetti*, the Honorable Gregory A. Presnell held:

> In sum, if the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) *represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.*

*Id.* at 1228 (emphasis added). Judge Presnell maintained that if the matter of attorney's fees "[is] addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement." *Id*. The Court finds this reasoning persuasive.

## III.   ANALYSIS.

In determining whether the "FLSA Collective Action Settlement Agreement" (the "Agreement") entered into between the parties is fair and reasonable, the undersigned considered the procedural posture of the case, the amount of the settlement, the agreed-upon attorney's fees and costs, the terms of the Agreement regarding modification and future disputes, the settlement procedure, and Named Plaintiffs' general releases.

## A. Conditional Certification

In the Motion, the parties request that the Court conditionally certify the following collective:

> Plaintiffs and all current and former DAs who were paid by Commercial Express, COEI, LLC, or any one of its subcontractors, including AG Plus Express, LLC, JSTC, LLC, and/or Drop a Box, Inc. to deliver packages to customers of Amazon in the United States between March 1, 2017 and June 22, 2019.

Doc. No. 101 at ¶ 1. The Agreement includes this as the definition of the "Settlement Collective Members" and adds that "[t]he Settlement Collective does not include individuals who were provided with notice and/or who opted in to *Gibbs v. MLK Express, LLC*, Case No. 2:18-cv-434-SPC-MRM, an action pending in the United States District Court for the Middle District of Florida." Doc. No. 101-2 at 7.

There is a two-step procedure for whether a FLSA collective action should be certified: 1) the notice stage; and 2) the decertification stage. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008). The Motion falls under the notice stage. The notice stage is when "a district court determines whether other similarly situated employees should be notified." *Id.*

At the notice stage, "[a] plaintiff has the burden of showing a 'reasonable basis' for his claim that there are other similarly situated employees." *Id.* (quoting *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007)). The standard for

determining similarity at the notice stage is fairly lenient, not particularly stringent, and not heavy. *Id.* at 1261. In addition to determining whether there are similarly situated employees to the plaintiff, the court must also "satisfy itself that there are other employees of the []employer who desire to 'opt-in' . . . ." *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).

Named Plaintiffs must be "'similarly situated' with respect to [their] job requirements and with regard to [their] pay provisions . . . ." *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d at 1567-68. Named Plaintiffs have the burden of demonstrating similarity. *Kelley v. Taxprep1, Inc.*, No. 5:13-CV-451-ACC-PRL, 2014 WL 10248251, at *2 (M.D. Fla. Apr. 2, 2014). Similar does not equal identical. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001). Job duties, pay provisions, and whether the employees were subjected to a common policy that is the basis for the alleged FLSA violation are factors to be considered in determining whether Named Plaintiffs are similarly situated to the proposed class. *Allen v. Hartford Fire Ins. Co.*, No. 6:16-CV-1603-RBD-KRS, 2017 WL 3701139, at *7 (M.D. Fla. Aug. 25, 2017).

In the memorandum supporting the Motion, Named Plaintiffs state that members of the proposed collective are similarly situated in the following four ways:

> 1) all performed uniform services which Plaintiffs allege were at the direction of Defendants to deliver Amazon's packages;

2) they all performed work pursuant to a single contract for one DSP; 3) they were all paid pursuant to a day rate compensation policy that violated the FLSA until such time that the DSPs and/or its subcontractors were allegedly directed to cease paying Delivery Associates on a day rate basis by Amazon; and 4) [they] were not paid overtime for all hours worked over forty (40) in a single work week.

Doc. No. 102 at 18. Defendants do not contest certification for settlement purposes. *Id.* at 19. Named Plaintiffs' representations demonstrate that they share similar job duties, pay provisions, and were subjected to a common policy that is the basis for the alleged FLSA violations.

Named Plaintiffs also have the burden to provide a reasonable basis supporting their position that other aggrieved individuals exist in the broad putative class. *Hart v. JPMorgan Chase Bank, N.A.*, No. 8:12-CV-00470-JDW, 2012 WL 6196035, at *4 (M.D. Fla. Dec. 12, 2012). In the definition of "Settlement Collective Members" contained in the Agreement, it states that "[t]here are approximately 1,365 Settlement Collective Members . . . ." Doc. No. 101-2 at 7. It is also noted that three individuals bring this action. *See Guerra v. Big Johnson Concrete Pumping, Inc.*, No. 05-14237-CIV, 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006) (finding requirement met with evidence of one other co-worker wishing to join suit).

As Named Plaintiffs demonstrate that they are similarly situated to the proposed collective and that there are other aggrieved individuals in the broad

putative class, it is recommended that the Court certify the collective as defined in the Agreement.

**B. Settlement of FLSA Claims.**

This case involves disputed issues of liability under the FLSA, which constitutes a bona fide dispute. Doc. Nos. 87, 90-92. Under the Agreement, the Wage Settlement Amount is $955,700.00. Doc. No. 101-2 at 7. Each Settlement Collective Member will receive at least fifty dollars. *Id.* at 12. The Settlement Collective Members will be awarded "shares," which will determine their pro rata portion of the Wage Settlement Amount they will receive in addition to the fifty dollars. *Id.* at 11. The formula for calculating the number of shares each Settlement Collective Member will receive is as follows:

i. For each workweek during which the Settlement Collective Member worked four (4) or more days during the Day Rate Time Period, the Settlement Collective Member shall receive five (5) settlement shares. For each workweek during which the Settlement Collective Member worked four (4) or more days during the Relevant Time Period but after the Day Rate Time Period, the Settlement Collective Member shall receive one (1) settlement share.

ii. The total number of settlement shares for all Settlement Collective Members will be added together and the resulting sum will be divided into the Wage Settlement Amount to reach a per share dollar figure. That figure will then be multiplied by each Settlement Collective Member's number of settlement shares to determine the Settlement Collective Member's Settlement Award.

*Id.* at 12. The minimum fifty dollars per Settlement Collective Member will be deducted from the Wage Settlement Amount before determining the pro rata individual settlement shares. *Id.* The parties agree that fifty percent of the Settlement Awards shall be considered wages and fifty percent shall be considered liquidated damages. *Id.* at 13-14.

Named Plaintiffs represent that "the Wage Settlement Amount agreed upon represents a compromise amount that totals more than approximately 4.5 times Named Plaintiffs' lowest calculations utilizing the legal and factual assumptions Defendants argued were reasonable and proper, and approximately 50% of alleged unpaid wages using Named Plaintiffs' most favorable calculations (that Defendants challenged both legally and factually)." Doc. No. 102 at 24.

Because the Settlement Collective Members are receiving less than the amount Named Plaintiffs claim they are owed, they compromised their claims under the FLSA. *See Caseres v. Texas de Brazil (Orlando) Corp.*, 6:13-cv-1001-RBD-KRS, 2014 WL 12617465, at *2 (M.D. Fla. April. 2, 2014). The case involves disputed issues regarding FLSA liability. Doc. Nos. 87, 90-92. Mindful of the uncertainty associated with continued litigation, the parties decided to amicably resolve their dispute. Doc. No. 102 at 24. The parties were represented by experienced counsel during the settlement negotiations, which included three full-day mediations. *Id.* at 22-23. Finally, the terms of the Agreement were the result of negotiations

without any coercion, collusion, or undue influence. *Id.* After receiving sufficient information to make informed decisions, the parties decided to settle their dispute. *Id.* Considering the foregoing, and the strong presumption favoring settlement, the settlement amount is fair and reasonable.

### C. Attorney's Fees and Costs.

Under the Agreement, and subject to Court approval, Named Plaintiffs' counsel will receive $490,000.00 in attorney's fees and $24,300.00 in costs. Doc. No. 101-2 at 5-6. The parties state that they "separately negotiated the wage damages and attorneys' fees and costs." *Id.* at 4. Thus, the issue of attorneys' fees and costs does not affect the amount paid to the Settlement Collective Members. *See Bonetti*, 715 F. Supp. 2d at 1228.

### D. Other Terms of the Agreement.

Other provisions of the Agreement warrant discussion. The Agreement contains a modification provision stating that it "may be amended or modified only by a written instrument signed by counsel for all Parties or their successors in interest." Doc. No. 101-2 at 15. This provision appears to attempt to negate the necessity of Court approval of the Agreement, as it provides for the parties to modify the settlement agreement without any review by the Court. Thus, it is unenforceable. *See Madison v. United Site Servs. of Fla., Inc.*, No. 6:16-CV-1991-CEM-DCI, 2018 WL 2197757, at *1 (M.D. Fla. May 14, 2018) ("Pursuant to *Lynn's Food*

*Stores, Inc.*, 679 F.2d at 1355, any future modifications to the Settlement Agreements are unenforceable absent judicial approval."). At the hearing on the Motion, the parties agreed to the undersigned recommending to the Court that the Agreement be approved subject to any modification requiring Court approval.

The Agreement also states that all legal actions arising from the Agreement "must be brought exclusively in the United States District Court for the Middle District of Florida." Doc. No. 101-2 at 16-17. In *Kokkonen v. Guardian Life Insurance*, the Supreme Court explained that the enforcement of a settlement agreement "is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." 511 U.S. 375, 378 (1994). The Court may wish to decide whether to retain jurisdiction, however. *But see Colon v. Kissimmee B-Logistic Serv.*, No. 6:15-cv-733-PGB-KRS, 2016 WL 3147583, at *3, 2016 U.S. Dist. LEXIS 72622, at *8-9 (M.D. Fla. May 16, 2016) ("'[C]ourts in this District routinely deny requests to retain jurisdiction to oversee and enforce the terms of an FLSA settlement agreement.'") (quoting *Santiago-Valle v. Transition House, Inc.*, No. 6:15-cv-715-PGB-GJK, 2015 U.S. Dist. LEXIS 169419, at *12 (M.D. Fla. Dec. 10, 2015), *adopted by* 2015 U.S. Dist. LEXIS 169420 (M.D. Fla. Dec. 19, 2015)).

### E.  Settlement Procedures.

The Agreement sets forth the process by which the Settlement Awards will be made. Doc. No. 101-2 at 9-13. Settlement Notices will be mailed to Settlement

Collective Members within ten days of the Settlement Administrator receiving estimated minimum settlement shares for the Settlement Collective Members. *Id.* at 9. If Settlement Collective Members disagree with Defendants' records, then they may "provide documentation to show contrary information by no later than the conclusion of the Notice Deadline." *Id.* at 10. The Settlement Administrator will notify all counsel of the dispute and provide counsel with a copy of the Member's documentation. *Id.* Disputes not resolved to counsel's satisfaction may be presented to the Court. *Id.*

Within ten days of the Settlement Administrator receiving the final Settlement share calculations, the Settlement Administrator will mail the Settlement Awards to the Settlement Collective Members along with a Notice of Settlement Check. *Id.* at 13. "The Settlement Awards shall be checks that contain a limited endorsement placed on the back of the check stating that by signing, depositing, and/or cashing the settlement check, the Settlement Collective Member agrees to opt in to this collective action . . . ." *Id.* The limited endorsement also states that the Settlement Collective Member affirms the release of Defendants as stated in the Agreement. *Id.* This process appears fair and reasonable.

Although the Agreement does not provide a process for the Settlement Collective Members to object to it, the Settlement Collective Members only release their claims against Defendants if they sign, cash, or deposit their Settlement

Award checks. *Id.* at 7-8. The Notice of Collective Action Settlement contains the date and time of the hearing for final approval of the agreement and informs the Settlement Collective Members that depositing or cashing the Settlement Award check will release their FLSA and related wage claims against Defendants. *Id.* at 26-29. The Notice of Settlement Award Check contains the same release information. Doc. No. 109-2 at 4. In addition, the notice of the settlement and the notice of the award check state that if the Settlement Collective Members do not deposit or cash the Settlement Award checks, then they do not release any claims against Defendants or the Released Parties. Doc. No. 101-2 at 29; Doc. No. 109-2 at 4. *Id.* Defendants also agree to the following regarding those that do not cash the Settlement Award checks:

> [T]his Settlement Agreement may not be used to assert collateral estoppel, *res judicata*, waiver, or any other claim preclusion of FLSA claims with respect to individuals who did not specifically release those FLSA claims; however, Defendants do not waive the right to assert other defenses to those claims regarding timeliness, scope, and/or applicability of exemptions.

Doc. No. 101-2 at 6, 29; Doc. No. 109-2 at 5. Because those that object to the Agreement will not be compelled to release Defendants from their particular FLSA and related wage claims, the lack of a procedure for the Settlement Collective Members to object does not preclude finding the Agreement fair and reasonable. *See Dozier v. DBI Servs., LLC*, No. 3:18-CV-972-BJD-MCR, 2021 WL 6061742, at *8

(M.D. Fla. Dec. 22, 2021) (preliminarily approving FLSA collective settlement agreement that did not provide process for members to object where opt-in plaintiffs that choose not to participate in the settlement would have their claims equitably tolled and would not give up their rights to refile their unpaid wages claims against the defendants and their pro rata share of the settlement would revert back to the defendants).

### F. General Releases.

The parties agree that Named Plaintiffs will each receive $10,000 in exchange for executing a general release.[6] Doc. Nos. 101-4, 109-1. Courts in this District have approved FLSA settlements with general releases where the parties provide the Court with sufficient information, such as detailed explanations in their motions or affidavits from the plaintiffs, regarding any other claims that the plaintiffs are knowingly releasing, including the fair value of such claims, whether those claims are being compromised and, if so, the reasons for such compromise and the consideration given in exchange for the general release. *See Middleton v. Sonic Brands L.L.C.*, Case No. 6:13-cv-386-JA-KRS, 2013 WL 4854767, at *3 (M.D. Fla. Sept. 10, 2013) (approving FLSA settlement providing $100.00 as separate

---

[6] Tinson's general release originally submitted to the Court was not signed by AG Plus Express LLC or Drop a Box, Inc. Doc. No. 101-4 at 31-34. On February 2, 2022, the parties submitted Tinson's fully executed general release. Doc. No. 109-1.

consideration for a general release); *Bright*, 2012 WL 868804, at *5 (approving FLSA settlement agreement as to one employee who signed a general release in exchange for the employer foregoing its counterclaims against her).

The concern regarding the general releases here is that they are given in conjunction with the settlement of a collective action and in amounts more frequently seen as incentive awards to class representatives than as consideration for general releases.

In *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020) (*pending petition for rehearing en banc*), the Eleventh Circuit held that incentive awards for class action representatives that compensate them for their time and reward them for bringing lawsuits are prohibited. "A plaintiff suing on behalf of a class can be reimbursed for attorneys' fees and expenses incurred in carrying on the litigation, but he cannot be paid a salary or be reimbursed for his personal expenses." *Id.* at 1257. The Eleventh Circuit stated that an incentive award "is roughly analogous to a salary . . . ." *Id.* "Incentive awards are intended not only to compensate class representatives for their time (i.e., as a salary), but also to promote litigation by providing a prize to be won (i.e., as a bounty)." *Id.* at 1258. Prohibiting incentive awards is also in line with Eleventh Circuit "precedent carefully scrutinizing settlements that give class representatives preferred treatment." *Id.* at 1259 n.9.

The parties argue that the general releases are not incentive awards and thus *Johnson* does not prohibit them. Doc. No. 107. They point out that *Johnson* is a class action case brought under Federal Rule of Civil Procedure 23. *Id.* at 5. They contend that the payments for the general releases are not the type of payment prohibited in *Johnson*. *Id.* at 6. The parties state that even after *Johnson*, courts have approved payments for general releases in FLSA cases. *Id.* They assert that general releases provide a significant value to employers. *Id.* at 7.

The Eleventh Circuit's holding in *Johnson* was based in part on *Trustees v. Greenough*, 105 U.S. 527 (1882), which also was not a class action case. *Johnson*, 975 F.3d at 1255-60. The Eleventh Circuit noted that in *Greenough*, the Supreme Court rejected a private litigant's award for "personal services and private expenses." *Id.* at 1257.

Because the Eleventh Circuit did not attribute significance to *Greenough* not being a class action, no reason appears why this Court should attribute significance to this action being a collective action, and not a class action. *See Poblano v. Russell Cellular Inc.*, 543 F. Supp. 3d 1293, 1295 n.1 (M.D. Fla. 2021) (declining to approve FLSA collective settlement agreement due to service awards to named plaintiffs and rejecting argument that *Johnson* is distinguishable as a class action compared to a FLSA collective action: "The reasoning . . . is equally, if not more, compelling for the Court to conclude that it applies to collective actions

brought under the FLSA."). Instead, it appears that under *Johnson*, the relevant analysis is whether the payments are truly for Named Plaintiffs' time and to reward them for bringing this litigation. *See Johnson*, 975 F.3d at 1260.

They also argue that the general releases are valid because Defendants sought them to obtain "a complete resolution of all claims that the Named Plaintiffs might have against them rather than engaging in piecemeal litigation over each potential claim[,]" and that general releases are not otherwise obtainable in FLSA actions. Doc. No. 107 at 2. The parties proffer no other claims that Named Plaintiffs have or could have against Defendants, however. Doc. No. 107. Instead, the $10,000 payments to Named Plaintiffs appear to give them preferred treatment [7] over the Settlement Collective Members, which was a concern underlying the Eleventh Circuit's decision prohibiting incentive awards in *Johnson*. *Johnson v. NPAS Solutions, LLC*, 975 F.3d at 1259 n.9. Also notably absent from the parties' presentations is any identification of what potential non-FLSA claims these three Named Plaintiffs *uniquely* possess so as to justify treating them differently.

The undersigned recognizes that the District Judge assigned to this case approved a report and recommendation recommending approval of a settlement

---

[7] At footnote 9 in the *Johnson* opinion, the court specifically stated that preferential treatment for named plaintiffs is subject to careful scrutiny. *Johnson v. NPAS Solutions, LLC*, 975 F.3d at 1259 n.9.

agreement in a FLSA collective action that also involved a $10,000 payment for a general release to the named plaintiff. *Huff v. Bobcat N. Am., LLC*, Case No. 6:19-cv-861-RBD-DCI, 2021 WL 268356 (M.D. Fla. Jan. 25, 2021), *report and recommendation adopted*, 2021 WL 268355 (M.D. Fla. Jan. 27, 2021). In *Huff*, however, the recommendation was that "the Court not pass on the validity of the separate release, but instead find that it does not affect the fairness of the FLSA settlement in this action as set forth in the Agreement." *Id.* at *4. As here, the parties were not seeking approval of the general release. *Id.*; Doc. No. 102 at 10. The magistrate judge found "that it is somewhat troubling that this release could be interpreted as a de facto service payment to a named plaintiff—a payment that would be unsupported on this record and perhaps improper." *Id.* Regardless of this concern expressed by the magistrate judge, the Court made no determination to the validity of the release. *Id.*; 2021 WL 268355.

Based on (1) there being no distinguishing characteristics between Named Plaintiffs and the Settlement Collective Members; (2) the amount of the consideration given for the general releases; and (3) the apparent lack of any possible claims Named Plaintiffs may have or could have against Defendants other than the ones released in the Agreement, the payments to Named Plaintiffs for the general releases look like they are made to compensate Named Plaintiffs

for their time and reward them for bringing suit, making them prohibited incentive awards under *Johnson*.

It is noted that there is a pending petition for rehearing en banc in *Johnson*. *mandate withheld*, No. 18-12344 (Nov. 9, 2020). In addition, as recognized in the *Johnson* opinion itself, the ruling is something of an outlier among the circuits and is a significant change from long-standing practice.

In light of these circumstances and in consideration of the extensive professional efforts devoted by counsel here and the legitimate expectations of the parties, the Court may wish to defer ruling on the validity of the payments made under the general releases until *Johnson* is more settled. *See, e.g., Mosley v. Lozano Ins. Adjusters, Inc.*, No. 3:19-CV-379-TJC-JRK, 2021 WL 289031, at *1 (M.D. Fla. Jan. 28, 2021) (deferring ruling on the issue of the service award and retaining jurisdiction pending a final decision in *Johnson*, directing the parties to deposit the service award into the Court's registry pending "the Court's determination of the service award issue," and directing the parties to "notify the Court of the final decision in *Johnson* within fourteen days of the same").

## IV.    CONCLUSION.

Based on the foregoing, it is **RECOMMENDED** that the Motion be **GRANTED IN PART AND DENIED IN PART** as stated herein. In particular, the Settlement Agreement should be approved subject to the proviso that any

modifications would be subject to court approval; the Court must decide whether to retain jurisdiction after final approval; and the Court should reject the portion of the Agreement providing for extra payments to the Named Plaintiffs (or defer consideration of those provisions).

## **NOTICE TO PARTIES**

A party has fourteen days from the date the Report and Recommendation is served to serve and file written objections to the Report and Recommendation's factual findings and legal conclusions. Failure to serve written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida, on March 9, 2022.

_David A. Baker_
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record