## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

|  |  |  |
|---|---|---|
| ANDREA THOMAS, DEANDRE TINSON, and SHONNIKA SPEARS, on behalf of themselves and others similarly situated, | : : : : | |
|  | : | |
| Plaintiffs, | : | Case No.: 6:19-cv-1528---RBD-GJK |
|  | : | |
| v. | : | |
|  | : | |
| AMAZON.COM SERVICES, INC., AMAZON LOGISTICS, INC., AMAZON.COM LLC, JSTC, LLC, COMMERCIAL EXPRESS, INC., COEI, LLC, AG PLUS EXPRESS, LLC, and DROP A BOX, INC., | : : : : : : : | |
|  | : | |
| Defendants. | : | |

---

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF THE
## FAIR LABOR STANDARDS ACT SETTLEMENT AGREEMENT

## **TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................... 1

II.  SETTLEMENT BACKGROUND .................................................................. 2

  A.  Preliminary Approval ......................................................................... 2

  B.  Notice Has Been Provided Pursuant to the Terms of the Agreement ............. 6

  C.  Settlement Implementation Following Final Approval .................................... 8

III.  ARGUMENT ................................................................................................ 10

  A.  The FLSA Collective Action Settlement is a Fair and Reasonable Resolution of a *Bona Fide* Dispute and Should be Approved ............................................... 10

    1.  The Settlement Reflects a Reasonable Compromise of a *Bona Fide* Dispute ............................................................................. 10

    2.  The Settlement is Fair and Reasonable ................................................. 11

    3.  The Settlement Furthers the Aims of the FLSA by Providing Compensation to Low Wage Workers .................................................... 16

  B.  Final Collective Action Certification is Proper .................................................. 17

  C.  As This Court Already Found, the Negotiated Fees and Costs Should Be Approved ........................................................................................ 20

  D.  The General Release Agreements Do Not Otherwise Render The FLSA Settlement Unfair Under Lynn's Food ................................................................. 22

    1.  The General Release Agreements and Johnson v. NPAS .................. 23

    2.  The Court's Role in Approving an FLSA Settlement is Cabined by the FLSA's Statutory Mandate and Lynn's Food ...................................... 24

    3.  Even Were the Court to Consider the General Release Agreements, the Court Should Find that The Johnson v. NPAS Decision Does Not Justify Voiding the Separately Negotiated Private Agreements Between the Parties ...................................................................... 29

IV.  CONCLUSION ............................................................................................. 33

# <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Alcantara v. Duran Landscping, Inc.*,
  2022 WL 2703610 (E.D. Pa. Jul. 12, 2022) ............................................. 25, 26, 29

*Bell v. James C. Hall, Inc.*,
  2016 WL 5339706 (M.D. Fla. Aug. 16, 2016) ..................................................... 28

*Bonetti v. Embarq Mgmt. Co.*,
  715 F. Supp. 2d 1222 (M.D. Fla. 2009) ........................................................ 20, 25

*Brooklyn Sav. Bank v. O'Neil*,
  324 U.S. 697 (1945) .............................................................................. 16

*Broughton v. Payroll Made Easy, Inc.*,
  2021 WL 3169135,n.5 (M.D. Fla. Jul. 27, 2021) ............................................... 32

*Buntin v. Square Foot Mgmt. Co., LLC*,
  2015 WL 3407866 (M.D. Fla. May 27, 2015) ................................................... 20

*Central R.R. & Banking Co. v. Pettus*,
  113 U.S. 116 (1885) ................................................................................ 24

*Diaz v. Orlando Med Transportation LLC*,
  2022 WL 2490501 (M.D. Fla. June 16, 2022) ................................................... 20

*Dominique v. Capreit, Inc.*,
  2020 WL 6585602 (M.D. Fla. Nov. 10, 2020) ................................................... 18

*Dozier v. DBI Servs., LLC*,
  2021 WL 6061742 (M.D. Fla. Dec. 22, 2021) ................................................... 12

*Easterwood v. Sedgwick Claims Mgmt. Servs. Inc.*,
  2021 WL 7450453 (M.D. Fla. June 1, 2021) ................................................ 20, 32

*Ernie Haire Ford, Inc. v. Ford Motor Co.*,
  260 F.3d 1285 (11th Cir.2001) .................................................................... 26

*George v. Academy Mortgage Corp.*,
  369 F. Supp. 3d 1356 (N.D. Ga. 2019) ...................................................... 14, 15

*Goodson v. OS Rest. Services*,
  2018 WL 1701985 (M.D. Fla. Mar. 21, 2018) ................................................... 28

*Huff v. Bobcat N. Am., LLC*, No.,
  2021 WL 268356 (M.D. Fla. Jan. 25, 2021) .............................................. *Passim*

*Hyland v. Navient Corp.*,
  --- F.4th ----, 2022 WL 4088061 (2d. Cir. 2022) ............................................... 23

*Johnson v. NPAS Sols., LLC*,
  43 F.4th 1138 (11th Cir. 2022) ........................................................... *Passim*

*Johnson v. NPAS Solutions, LLC*,
  975 F.3d 1244 (11th Cir. 2020) .................................................................. *Passim*
*Kleeklamp v. Home Performance All., Inc.*,
  2018 WL 2986687 (M.D. Fla. June 6, 2018) .......................................... 11, 12, 20
*Leverso v. SouthTrust Bank of Ala., Nat'l Assoc.*,
  18 F.3d 1527 (11th Cir. 1994) .......................................................................... 12
*Lynn's Food Stores, Inc. v. U.S.*,
  679 F. 2d 1350 (11th Cir 1982) ................................................................ *Passim*
*Marriott Corp. v. Dasta Construction Co.*,
  26 F.3d 1057 (11th Cir. 1994) .......................................................................... 26
*Martinez v. Ambi Paving, LLC*,
  2018 WL 5003754 (M.D. Fla. Oct. 11, 2018) .................................................... 27
*Mcguire v. Intelident Solutions, LLC*,
  2020 WL 10506642 (M.D. Fla. Sept. 20, 2020) ................................................ 18
*Morgan v. Family Dollar Stores, Inc.*,
  551 F.3d 1233 (11th Cir. 2008) ............................................................. 17, 18, 19
*Nall v. Mal-Motels, Inc.*,
  723 F.3d 1304 (11th Cir. 2013) ........................................................................ 25
*Ogden v. Saunders*,
  25 U.S. 213 (1827) ........................................................................................... 26
*O'Neill v. Speedster Services, LLC*,
  2018 WL 4956775 (M.D. Fla. Sept. 11, 2018) .................................................. 28
*Pascual v. Scally's Lube & Go Towing & Recovery, LLC*,
  2017 WL 11049071 (M.D. Fla. July 12, 2017) .................................................. 20
*Resnick v. Uccello Immobilien GMBH, Inc.*,
  227 F.3d 1347 (11th Cir. 2000) ........................................................................ 26
*Rivera v. U.S.A. Transporter Servs., Inc.*,
  2017 WL 11049718 (M.D. Fla. Apr. 7, 2017)...................................24, 25, 27, 28
*Roman v. FSC Clearwater*, LLC,
  2017 WL 1552304 (M.D. Fla. May 1, 2017) ..................................................... 28
*Ruddell v. Manfre*,
  2015 WL 7252947 (M.D. Fla. Nov. 17, 2015) ................................................... 19
*Trustees v. Greenough*,
  105 U.S. 527 (1881) ......................................................................................... 24
*Tweedie v. Waste Pro of Fla., Inc.*,
  2021 WL 3418197 (M.D. Fla. Aug. 5, 2021) .................................................... 32
*Vela v. Sunnygrove Landscape & Irrigation Maint., LLC*,
  2018 WL 8576382 (M.D. Fla. Oct. 4, 2018).................................................... 27
*Wiand for Valhalla Investment Partners, L.P. v. Rowe*,
  2014 WL 12691590 (11th Cir. Jul. 11, 2014) .................................................. 26

Statutes

29 U.S.C. § 201 ........................................................................................ 1
29 U.S.C. § 202 ...................................................................................... 16
29 U.S.C. § 216(b) ............................................................................. *Passim*

Rules

Fed. R. Civ. P. 23 ............................................................................ 29, 32

## I.    INTRODUCTION

Plaintiffs Andrea Thomas, DeAndre Tinson, and Shonnika Spears submit this memorandum of law in support of Plaintiffs' Unopposed Motion for Final Approval of the Fair Labor Standards Act Collective Action Settlement Agreement. The proposed settlement satisfies the criteria for approval of a Fair Labor Standards Act, 29 U.S.C. § 201 ("FLSA") collective action settlement because it is a fair and reasonable resolution of a *bona fide* dispute reached by counsel with extensive experience in complex employment law cases, and after arm's-length negotiations, including three separate mediation sessions, assisted by experienced wage and hour mediators.

This Settlement resolves the claims in Plaintiffs' Consolidated Amended Collective Action Complaint, which allege that Defendants' unlawful policy and practice of failing to pay overtime compensation to Delivery Associates ("DAs") who were paid on a day rate basis to deliver packages to Amazon.com customers violated the FLSA. *See generally* ECF No. 87. The DAs assert their FLSA claims as a collective action under 29 U.S.C. § 216(b).

The terms of the Parties' settlement are set forth in the Settlement Agreement ("Settlement Agreement" or "Agreement"). *See* ECF No. 101-2; *see also* ECF No. 102 at 5-10. The Court granted preliminary approval to the settlement on April 28, 2022, when it adopted in part the Magistrate Judge's "thorough and well-reasoned" Report & Recommendation, recommending that the Settlement be approved as fair and reasonable (and declining to adopt only the "narrow" aspect of the Adopted R&R

dealing with the Named Plaintiffs' General Release Agreements, discussed further herein). *See* Report and Recommendation, ECF No. 110, *adopted in part,* ECF No. 113 (Dalton, J.) (hereinafter referred to as "Adopted R&R"). Notice was effectuated as provided for in the Settlement Agreement. *See generally* Declaration of Settlement Administrator ("Settlement Administrator Decl.").

Plaintiffs respectfully request that the Court issue an order: 1) granting final approval of the proposed Settlement Agreement as a fair and reasonable resolution of a *bona fide* dispute; 2) granting final approval for certification of the FLSA claims pursuant to 29 U.S.C. § 216(b) on behalf of the Settlement Collective Members; and 3) dismissing the lawsuit with prejudice. Defendants do not oppose this Motion.

## II.   SETTLEMENT BACKGROUND

### A.   Preliminary Approval

On December 17, 2021, Plaintiffs submitted their Unopposed Motion for Preliminary Approval of the Fair Labor Standards Act Collective Action Settlement Agreement. On March 9, 2022, Magistrate Judge Baker issued a Report and Recommendation, recommending that the Court grant, in part, the Plaintiffs' Unopposed Motion for Preliminary Approval of the Fair Labor Standards Act Collective Action Settlement Agreement, ECF No. 102 ("Unopposed Motion for Preliminary Approval")[1].

---

[1] A description of the terms of the Settlement Agreement are set forth in this motion at pages 5-10, and Plaintiffs incorporate this summary by reference.

Specifically, Judge Baker found that the settlement reached was a fair and reasonable resolution of a *bona fide* dispute, explaining that "[t]his case involves disputed issues of liability under the FLSA, which constitutes a bona fide dispute." Adopted R&R, at 12. Judge Baker further found that the Settlement was fair and reasonable, pointing to the background of this case as well as a detailed overview of the proposed settlement procedures. *Id.* at 8-14. Judge Baker explained that the "case involves disputed issues regarding FLSA liability" and "[m]indful of the uncertainty associated with continued litigation, the parties decided to amicably resolve their dispute." *Id.* at 13.

Judge Baker continued: "[t]he parties were represented by experienced counsel during the settlement negotiations, which included three full-day mediations" and "[f]inally, the terms of the Agreement were the result of negotiations without any coercion, collusion or undue influence" and "[a]fter receiving sufficient information to make informed decisions, the parties decided to settle their dispute." *Id.* at 13-14. The Court concluded: "[c]onsidering the foregoing, and the strong presumption favoring settlement, the settlement amount is fair and reasonable." *Id.* at 14.

Judge Baker likewise found that the attorneys' fees and costs contemplated by the Agreement did "not affect the amount paid to the Settlement Collective Members." *Id.* Judge Baker also found that collective certification was appropriate: "[a]s Named Plaintiffs demonstrate that they are similarly situated to the proposed collective and that there are other aggrieved individuals in the broad putative class, it is

recommended that the Court certify the collective as defined in the Agreement." Adopted R&R, at 11-12.[2]

Judge Baker also recommended that the Court pass judgment on the Parties' separately-negotiated General Release Agreements agreed upon by Defendants and the Named Plaintiffs and void these agreements as "prohibited incentive awards" under *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020). *Id.* at 22-23. Although the Parties had not asked for approval of these agreements, they had disclosed them to the Court in interest of transparency. Notwithstanding that the Parties entered into these agreements for the purpose of obtaining a general release of all claims in exchange for bargained-for consideration that had no bearing on the Wage Settlement Amount to the Settlement Collective Members, Judge Baker found that these General Release Agreements "look like they are made to compensate Named Plaintiffs for their time and reward them for bringing suit." *Id.*[3]

---

[2]     Judge Baker further identified two other concerns with the Parties' FLSA Collective Action Settlement Agreement, relating to the amendment procedure and this Court's jurisdiction over any future disputes. The Parties have addressed these concerns by way of a proposed amendment, attached hereto as Exhibit 1, which the Parties submit for the Court's consideration.

[3]     Judge Baker did observe that *NPAS* is "something of an outlier among the circuits and is a significant change from long-standing practice" and also observed that *NPAS* was not yet entirely settled, as at that time a petition for *en banc* review was pending before the Eleventh Circuit. *Id.* at 23. Judge Baker recommended that the Court "reject the portion of the Agreement providing for extra payments to the Named Plaintiffs" or, alternatively in light of the "outlier" and unsettled nature of *NPAS* and "in consideration of the extensive professional efforts devoted by counsel here and the legitimate expectations of the parties, the Court may wish to defer ruling on the validity of the payments made under the general releases until *[NPAS]* is more settled." *Id.* at 23-24.

The Parties all filed objections to the Judge Baker's recommendation to void the General Release Agreements, and all Parties joined in requesting that the Court not enter Judge Baker's findings on this issue. ECF Nos. 111, 112.[4] Among other arguments, Plaintiffs noted that a finding voiding the General Release Agreements "would further make it more challenging (or impossible) for employers to obtain a general release in connection with the settlement of FLSA claims – something of significant value given the numerous types of litigation and claims that can arise from the employer-employee relationship that are not present in a run-of-the-mill consumer class action under Rule 23, as was at issue in *NPAS*." ECF No. 111. Additionally, Plaintiffs argued that the R&R interfered with the Parties' freedom of contract to freely enter into agreements that do not otherwise impact the fairness of the settlement to be evaluated by the Court as fair and reasonable. *Id.*

On April 28, 2022, this Court adopted in part the Magistrate Judge's "thorough and well-reasoned" Report & Recommendation, recommending that the Settlement be approved as fair and reasonable. ECF No. 113. This Court declined to adopt only the "narrow" aspect of the R&R concerning the General Release Agreements, and agreed with Judge Baker's alternative suggestion, deciding to defer ruling on the "validity" of the general releases until *Johnson* is "more settled." *Id.* at 6. The Court "otherwise adopted" the R&R issued by Judge Baker in its entirety. *Id.*

---

[4]     Plaintiffs incorporate these prior briefings by reference.

**B.      Notice Has Been Provided Pursuant to the Terms of the Agreement**

Following the Court's grant of preliminary approval to the Settlement Agreement, on July 5, 2022, the Settlement Administrator mailed the Notice of Settlement ("Notice") via First Class Mail to 1,258 Settlement Collective Members,[5] and also emailed the Notice to the 1,387 Settlement Collective Members for whom email addressed were provided. Settlement Administrator Decl., ¶ 9. The Notice advised Settlement Collective Members that they would automatically receive a settlement check if the Court grants final approval of the Settlement Agreement and that they could submit a dispute regarding Defendants' records of the number of weeks they worked by September 3, 2022, and it also provided an estimated individual settlement amount. *Id.* ¶ 10.

During the period from the initial notice mailing through September 3, 2022, 332 Notices were returned by the USPS as undeliverable. *Id.* ¶ 13. The Settlement Administrator performed address verification searches (also referred to as "skip tracing"). *Id.* The Settlement Collective List and database were updated with the new address information and Notices were promptly re-mailed to 214 Collective Members via U.S. First Class mail at the updated addresses located via skip tracing. Of all the re-mailed Notices, 105 were returned undeliverable a second time. *Id.*

---

[5]      The Settlement Collective List provided by Defendants contained 1,407 records, however, after the removal of duplicate records, the Settlement Administrator confirmed the mailing list count as 1,387. Settlement Administrator Decl. ¶ 8. Of the 1,387 Settlement Collective Members, 129 did not have a valid mailing address, and these individuals were provided e-mail notice. *Id.* ¶ 9. The Settlement Administrator is in the process of contacting these individuals to obtain current mailing addresses. *Id.*

The response to the Settlement has been positive. Because this is an FLSA collective action settlement and not a Rule 23 settlement, there was no objection and no request to exclude process; no Settlement Collective Member is bound by this Agreement – they only release their claims if they choose to cash their settlement check and accept the compensation offered. *See* Settlement Agreement, ECF No. 101-2, at ¶ 11(m); Ex. B. Each Settlement Notice was individually addressed and tailored to provide the Settlement Collective Member with their total number of settlement shares, and the estimated amount they could expect to receive. *See id.* at Ex. A.

The Settlement Administrator was responsible for receiving any disputes from Settlement Collective Members regarding the number of weeks during which they worked, and for which they would be eligible to receive a Settlement Award. *Id.* ¶ 14. On a weekly basis, the Settlement Administrator provided Plaintiffs' Counsel and Defendants' Counsel with a status update about the number of notices mailed, returned as undeliverable and re-mailed; and the number of disputes. *Id.* As of September 3, 2022, the Settlement Administrator had received a total of three disputes, all of which are in the process of being resolved.[6] *Id.* ¶ 15. In addition, Plaintiffs' Counsel received calls from numerous Settlement Collective Members in response to the notice; most of whom asked about how they could make sure their addresses were accurate and asked about when they might expect to receive their Settlement Checks.

---

[6]   Additionally, one individual has contacted the Settlement Administrator to request inclusion in the Settlement Collective. *Id.* ¶ 12. This issue is also in the process of being resolved. *Id.*

### C. Settlement Implementation Following Final Approval

On June 13, 2022, Defendants deposited the Wage Settlement Amount into a QSF established by the Settlement Administrator. *See* Settlement Administrator Dec. ¶ 7. Following final approval of the Settlement, the Settlement Administrator will handle distribution of the Wage Settlement Amount in accordance with the Settlement Agreement and the Court's order. *Id.* ¶ 18. All Settlement Collective Members will receive a physical check, to be mailed by the Settlement Administrator. *Id*. There are 1,387 Settlement Collective Members who will receive Settlement Awards in this case. *Id.* ¶ 17.

Upon the Court's final approval, the Parties will provide to the Settlement Administrator the final Settlement share calculations and the Settlement Administrator will mail Settlement Awards to all Settlement Collective Members, along with an accompanying Notice of Settlement Check substantially in the form attached at Exhibit B to the Settlement Agreement, as approved by the Court. *See* Agreement, ECF No. 101-2, at ¶ 20. The Notice of Settlement Check shall also be emailed to the last known address of the Settlement Collective Members. *Id.*

The Settlement Awards shall be checks containing a limited endorsement placed on the back of the check stating that by signing, depositing, and/or cashing the settlement check, the Settlement Collective Member agrees to opt into this action:

> By depositing or cashing this check, I am opting into and affirm my release of Amazon.com Services, Inc.; Amazon.com, LLC; Amazon Logistics, Inc.; Commercial Express, Inc.; COEI, LLC; JSTC, LLC; AG Plus Express, LLC; and Drop a Box, Inc., and all other Released Parties of my Released Claims as defined in the Settlement Agreement approved by the Court in *Thomas v.*

> *Amazon.com, LLC, et al.*, 19-cv-01528, 21-cv-00442 (M.D. Fla.). I affirm that I
> will not sue or assert any of the Released Claims, including FLSA claims,
> against any of the Released Parties.

*Id.* Settlement Award checks issued to Settlement Collective Members will be valid and negotiable for 180 days from the issue date and will be accompanied by the Notice of Settlement. A reminder letter will be distributed via U.S. mail and email to those who have still not cashed their check after 60 days, and the Settlement Administrator will call those that have still not cashed their check to remind them to do so within the last 60 days of the Check Cashing Period. Any amounts from uncashed settlement checks remaining after the 180-day period will be paid back to Defendants in recognition of the fact that those individuals who do not cash their settlement checks do not release any claims against Defendants. *Id.* ¶ 22. At the conclusion of the check cashing period, Plaintiffs' Counsel shall file a notice with the Court identifying the Settlement Collective Members who have signed, deposited, or cashed their checks and, therefore, released the Released Parties of the Released Claims.[7] *Id.* ¶ 23.

---

[7]     "Released Claims" means any and all Fair Labor Standards Act claims (and related Florida state law wage claims) that accrued to the Settlement Collective Members while working for Defendants at any time between March 1, 2017 and June 22, 2019, including, without limitations, all FLSA and Florida state law claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses. The Released Claims shall become released upon the signing, cashing, or depositing of a Settlement Award. Agreement ¶ 11(m).

## III.   ARGUMENT

### A.   The FLSA Collective Action Settlement is a Fair and Reasonable Resolution of a *Bona Fide* Dispute and Should be Approved

When parties bring a proposed settlement of an FLSA claim before a court, the Court must scrutinize the settlement to determine whether it is a fair and reasonable resolution of a *bona fide* dispute. *Lynn's Food Stores, Inc. v. U.S.*, 679 F. 2d 1350, 1354-55 (11th Cir 1982)). If a settlement in an FLSA suit reflects "a reasonable compromise over issues," such as FLSA coverage or computation of wages that are "actually in dispute," the court approves the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354. "There is a strong presumption in favor of settlement." *Huff v. Bobcat N. Am., LLC*, No. 619CV861ORL37DCI, 2021 WL 268356, at *2 (M.D. Fla. Jan. 25, 2021), *report and recommendation adopted*, No. 619CV861ORL37DCI, 2021 WL 268355 (M.D. Fla. Jan. 27, 2021) (Dalton, J.).

As the Court found when granting preliminary approval to the Settlement, the Settlement Agreement reflects a reasonable compromise of a *bona fide dispute* and meets the requirements for both fairness and reasonableness with respect to the Plaintiffs and Settlement Collective Members. *See* Adopted R&R, at 12-14. The Court should give final approval to the Settlement.

### 1.   The Settlement Reflects a Reasonable Compromise of a *Bona Fide* Dispute

As this Court previously found, "[t]his case involves disputed issues of liability under the FLSA, which constitutes a *bona fide* dispute." Adopted R&R, at 12. Indeed, in this case, Plaintiffs contend that Defendants violated the FLSA, §201 *et seq*, by

paying delivery associates on a day rate basis without overtime for work performed over forty hours in a workweek. Defendants deny the allegations, and further deny any liability for alleged failure to pay overtime compensation or any other alleged wage payment, wage and hour, or similar violation. Amazon further denies that it may be held liable as a joint employer.

Thus, as the Court previously found, significant legal and factual questions exist with respect to liability and damages. *See, e.g., Kleeklamp v. Home Performance All., Inc.*, No. 2:17-cv-660, 2018 WL 2986687, at *1 (M.D. Fla. June 6, 2018), report and recommendation adopted, 2018 WL 2970982 (M.D. Fla. June 13, 2018) (holding that a *bona fide* dispute existed where the parties contested whether an exemption to the FLSA applied, the number of hours plaintiffs worked and whether liquidated damages were warranted). Ultimately, the Wage Settlement Amount agreed upon represents a compromised resolution on these issues, accounts for the risks of litigation, and provides certain, immediate, and meaningful payment for the low wage workers in this case for the time period at issue.

## 2.    The Settlement is Fair and Reasonable

The Court has already found that the Settlement is fair and reasonable, and it should give final approval to the Settlement.

The factors used for evaluating the "fairness" of a settlement in a class action are used as a guideline for evaluating the fairness of an FLSA compromise. These factors include:

(1) the existence of collusion behind the settlement;
(2) the complexity, expense, and likely duration of the litigation;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the probability of plaintiff's success on the merits;
(5) the range of possible recovery; and
(6) the opinions of counsel.

Adopted R&R, at 5 (citing *Leverso v. SouthTrust Bank of Ala., Nat'l Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994)).  "The Court should be mindful of the strong presumption in favor of finding a settlement fair." *Id.* (citation omitted); *accord Dozier v. DBI Servs., LLC*, No. 3:18-CV-972-BJD-MCR, 2021 WL 6061742, at *6 (M.D. Fla. Dec. 22, 2021) ("courts should presume a settlement is fair and reasonable"), *report and recommendation adopted*, 2022 WL 2305814 (M.D. Fla. Jan. 19, 2022). As this Court already found, the application of these six factors supports approval of the Settlement Agreement in this case.

### a. The Parties Fairly and Honestly Negotiated the Settlement and There Was No Fraud or Collusion

This Court has already found that the Settlement was the "result of negotiations without any coercion, collusion, or undue influence." Adopted R&R, at 13-14. Indeed, the Settlement was reached after significant settlement negotiations, including three, full-day mediations overseen by two separate mediators, following the exchange of substantial data and information. *See* Schalman-Bergen Decl., ECF No. 101-1, at ¶¶ 15-18; *see also* Adopted R&R, at 13-14. The final settlement was the product a mediator's proposal designed to reach a compromise resolution between intransigent Parties. *See, e.g.,* ECF No. 95-1 (Decl. of Dennis Clifford).

As explained in Plaintiffs Motion for Preliminary Approval, *see* ECF No. 102,

and as the Court previously found, *see* Adopted R&R, the Settlement is based on extensive and appropriate investigation, including detailed analyses of the data provided and, ultimately, represented by experienced counsel, and with assistance of two experienced mediators, the Parties agreed to this Settlement as a fair and reasonable resolution of the action. The Court should again find that these factors support final approval of the Settlement.

> **b.    The Settlement is Fair and Reasonable in View of the Complexity, Expense, and Likely Duration of the Litigation and Range of Recovery**

The Court has already found that these factors are satisfied, *see* Adopted R&R, at 13-14, and it should do so again and grant final approval to the Settlement. Indeed, the Settlement ensures that Settlement Collective Members will receive compensation as quickly as practicable, with settlement payments coming shortly after the Court's final approval, and without the delay associated with motion practice, trial, and the possibility of appeal. The recovery to Plaintiffs and the Settlement Collective Members represents a fair and reasonable resolution of the dispute in this case, and should be approved.

The Wage Settlement Amount reached represents a compromise amount that totals more than approximately 4.5 times Named Plaintiffs' lowest calculations utilizing the legal and factual assumptions that Defendants argued were reasonable and proper, and approximately 50% of alleged unpaid wages using Plaintiffs' most favorable calculations (that Defendants challenged both legally and factually). *See* Adopted R&R, at 13. This will result in significant amounts of compensation being

paid to the low wages workers who worked for relatively short periods of time in workweeks between March 1, 2017 and June 22, 2019.

The Settlement provides an excellent result to Settlement Collective Members. *See generally* Schalman-Bergen Decl., ECF No. 101-1. In the absence of this settlement, lengthy and costly litigation would have continued, and a trial on the merits would involve significant risks for Plaintiffs as to both liability on the issue of joint employment by Amazon and the appropriate rate and calculation of damages. *Id.*

The fairness of the Settlement is further supported by its structure, whereby all Settlement Collective Members will be sent a check without the administrative hurdle of having to submit a claim form. Settlement Collective Members will then have the option of cashing their check and releasing their claims. If they do not believe that the settlement represents fair and adequate compensation for their claims, they do not need to cash the settlement check. This process maximizes the amount of money available to Settlement Collective Members without the due process concerns inherent in Rule 23 cases where claims are released by virtue of approval of the settlement. *Id.* at ¶ 22.

Settlement Collective Members have now been provided with notice, which included their estimated settlement amount, and have been provided with the opportunity to submit any disputes regarding those amounts. Accordingly, Settlement Collective Members' expectations support granting final approval so that checks can be promptly sent.

### c.   The Stage of the Proceedings and Discovery Completed

The court considers "the degree of case development that class counsel have accomplished prior to settlement" to ensure "counsel had an adequate appreciation of the merits of the case before negotiating." *George v. Academy Mortgage Corp.,* 369 F. Supp. 3d 1356, 1370 (N.D. Ga. 2019). "At the same time, '[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations.'" *Id.* at 1371.

As the Court previously found, "[t]he parties were represented by experienced counsel during the settlement negotiations" and "[a]fter receiving sufficient information to make informed decisions, the parties decided to settle their dispute." Adopted R&R, at 13-14. Indeed, the Settlement was reached after thorough investigation and analysis of the facts and law related to the claims, and continuous development of the facts through interviewing Plaintiffs and other collective members and through the mediation process, including Plaintiffs' Counsel's extensive review and analysis of payroll and timekeeping data and Amazon's delivery data. Schalman-Bergen Decl., ECF No. 101-01, at ¶¶ 15-17. Plaintiffs' Counsel—who have extensive experience in litigating wage and hour cases against Amazon and DSPs—were familiar with the applicable law and facts and with the risks attendant in continuing to pursue the litigation.

### d.   The Risks of Achieving Success on the Merits

"The 'likelihood and extent of any recovery from the defendants absent . . . settlement' is another important factor in assessing the reasonableness of a settlement."

*George*, 369 F. Supp. 3d at 1371. A trial on the merits would involve significant risks for Settlement Collective Members based on the disputed issues identified throughout and in Plaintiffs' prior submissions.

The Settlement reached by the Parties in this case reflects the fact that Defendants would have vigorously contested the merits of Plaintiffs' claims. In addition, as in any FLSA case, there was a risk the Settlement Collective Members would not succeed in maintaining a collective through trial. And any verdict at trial could be delayed based on any appeals by Defendants. Further, if Plaintiffs had not prevailed in holding Amazon liable as a joint employer, it is not clear that the remaining Defendants would have been able to satisfy any judgment, even if Plaintiffs had prevailed on all claims. These likely risks attending to Plaintiffs' claims and the certain delay and expense of continued litigation further counsel in favor of final approval of this Settlement. As the Court previously found, "[m]indful of the uncertainty associated with continued litigation, the parties decided to amicably resolve their dispute." Adopted R&R, at 13. The Court should again find that these factors support final approval.

### 3. The Settlement Furthers the Aims of the FLSA by Providing Compensation to Low Wage Workers

Additionally, the Settlement Agreement contains no provisions that would be contrary to the purposes of the FLSA or frustrate the implementation of the FLSA in the workplace. The Settlement Agreement furthers the purposes of the FLSA by providing Settlement Class Members with substantial recovery for their alleged unpaid

overtime that, because of the lack of bargaining power inherent in employer-employee relationships, they may have otherwise been unable to recover. *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency...."). Because the Settlement Agreement facilitates the FLSA and is a fair and reasonable resolution of a *bona fide* dispute, it should be finally approved as reasonable.

### B.    Final Collective Action Certification is Proper

Plaintiffs respectfully request that the Court finally certify the Settlement Collective for collective action treatment with respect to this Settlement. The Court has already certified the collective, *see* ECF No. 113, and Defendants do not oppose certification for the purposes of settlement. *See* Settlement Agreement, at ¶ 9.

Under the FLSA, an action "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Thus, the FLSA authorizes the use of collective actions against employers accused of violating the FLSA. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008). To maintain a collective action, plaintiffs must demonstrate that they are "similarly situated." *Id.*

Critically, the Court has already found that "Named Plaintiffs demonstrate that they are similarly situated to the proposed collective and that there are other aggrieved

individuals in the broad putative class." Adopted R&R, at 11-12. Indeed, "Named Plaintiffs' representations demonstrate that they share similar job duties, pay provisions, and were subjected to a common policy that is the basis for the alleged FLSA violations." *Id.*[8]

As set forth in Plaintiffs' Motion for Preliminary Approval, ECF No. 102, although not mandated, some courts have utilized a two-tiered approach for certifying a section 216(b) opt-in collective action, and where a collective action is settled before conditional certification, some courts in this District have utilized a two-step process for approval of an FLSA collective action settlement. *See, e.g., Dominique v. Capreit, Inc.*, No. 2:18-cv-231, 2020 WL 6585602 (M.D. Fla. Nov. 10, 2020); *but see Mcguire v. Intelident Solutions, LLC*, No. 8:18-cv-02995, 2020 WL 10506642, *3 (M.D. Fla. Sept. 20, 2020) (final certification of collective action settlement is not required, and approving settlement where only collective members who cash their settlement checks are bound by release of claims); *Huff*, 2021 WL 268356, at *2 ("final certification or decertification is not necessary for approval of the [FLSA] settlement").

Courts in the Eleventh Circuit have also utilized and endorsed a one-step approval process in FLSA cases, recognizing that the FLSA, unlike class actions under Rule 23, do not implicate the same due process concerns as underlie the two-step

---

[8]     Specifically, Plaintiffs contend that Collective Members are "similarly situated" because: (1) DAs worked under the same conditions and compensation policies; (2) were subject to the same alleged unlawful practices in that they worked more than 40 hours per week but, Plaintiffs allege, did not receive overtime compensation; and (3) the same defenses apply to all Members since Defendants deny the allegations in this lawsuit with respect to all DAs.

settlement process in Rule 23 cases. In an abundance of caution, to comport with local practice and to ensure Settlement Collective Members had an opportunity to dispute their settlement shares, Plaintiffs in this case sought to utilize a two-step approval process so that Settlement Collective Members could receive notice and have an opportunity to dispute their settlement shares, which the Court approved in granting preliminary approval to the Settlement, *see* Adopted R&R. And here, as described above, the Settlement Collective Members have received such notice, three such disputes were submitted, and all three disputes are in the process of being resolved. *See* Settlement Admin. Decl.

The Court should accordingly grant final certification to the proposed collective.[9]

---

[9]     Additionally, courts that have imposed a two-stage FLSA settlement approval process have considered the following factors at the second stage: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant[s] [that] appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations"—the "more legally significant differences appear amongst the opt-ins, the less likely it is that the group of employees is similarly situated." *Ruddell v. Manfre*, No. 3:14-CV-873-J-34MCR, 2015 WL 7252947, at *3 (M.D. Fla. Nov. 17, 2015) (quoting *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008) (quotation marks omitted; alterations in *Morgan*)).

While Plaintiffs maintain that this inquiry is unnecessary, to the extent the Court considers it, Plaintiffs further submit that final certification is warranted here for these reasons as well. In *Ruddell*, the Court found that final certification was appropriate where the "main dispute" was "whether Plaintiff and the class members were entitled to additional overtime wages" and where the "Defendant would be making the same argument and presenting the same defense against Plaintiff and the class members" and "[t]he parties have identified, and the Court independently discerns, no individualized defenses weighing against final certification." *Id.* at *3. Here too, Plaintiffs submit that the issues common to all collective members are subject to the *same* common defenses – indeed, all collective members' claims are subject to the *same* defenses regarding liability, as well as Amazon's additional defenses regarding its status as an alleged joint employer. And like in *Ruddell*, where certifying the collective action would obviate the need for over one hundred individual lawsuits "and allow

**C.    As This Court Already Found, the Negotiated Fees and Costs Should Be Approved**

The FLSA provides "[t]hat the court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the Defendants, and costs of the action." 29 U.S.C. § 216(b).

This District has held that the court's scrutiny of the reasonableness of the fees is unnecessary in an FLSA settlement where "the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff," except in circumstances where "the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney." *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).[10]

---

all class members to benefit from the settlement that has been reached on their behalf," granting final certification to the collective here – comprised of over one thousand individuals – would similarly further both fairness and procedural considerations.

For these reasons as well, the Court should finally certify the collective for settlement purposes.

[10]    This Court applies *Bonetti* and has stated that the fairness and reasonableness of attorneys' fees is established when the Parties separately negotiate the claim for attorneys' fees and nothing in the record indicates that the Plaintiffs' recovery would be adversely affected by the amount paid to counsel. *Buntin v. Square Foot Mgmt. Co., LLC*, 6:14-CV-1394-ORL-37, 2015 WL 3407866, at *4 (M.D. Fla. May 27, 2015); *see also Huff*, 2021 WL 268356, at *4 (adopted by Dalton, J.) (parties' representations of separate negotiation of attorneys' fees adequately establishes the reasonableness of the fees under the Agreement). *See also, e.g., Diaz v. Orlando Med Transportation LLC*, No. 6:21-CV-1758-CEM-DCI, 2022 WL 2490501, at *2 (M.D. Fla. June 16, 2022) (recommending approval of attorneys' fees and costs where "[t]he settlement is reasonable to the extent previously discussed, and the parties' foregoing statement adequately establishes that the issue of attorney fees and costs was agreed upon separately and without regard to the amount paid to Plaintiff"), *report and recommendation adopted*, No. 6:21-CV-1758-CEM-DCI, 2022 WL 2452613 (M.D. Fla. July 6, 2022); *Easterwood v. Sedgwick Claims Mgmt. Servs. Inc.*, No. 6:19-CV-700-WWB-LRH, 2021 WL 7450453, at *5 (M.D. Fla. June 1, 2021) (where fees were agreed upon separately and without

Critically, this Court has already found that the settlement is fair and reasonable, and that "the issue of attorneys' fees and costs does not affect the amount paid to the Settlement Collective Members." Adopted R&R, at 14. Indeed, Plaintiffs' Motion for Preliminary Approval establishes that the Parties separately negotiated the wage amount and the attorneys' fee amount: Plaintiffs' damages were calculated using the formulas discussed, and the fees were separately negotiated based on time expended, which the Parties agree was necessary for the prosecution of this action. *See* Motion for Preliminary Approval, ECF No. 102, at 23-25; *see also* Schalman-Bergen Decl., ECF No. 101-1, at ¶ 23.

In this action, Plaintiffs' Counsel spent considerable time and effort litigating and negotiating the settlement in the case over the course of the three years since it was originally filed naming only JSTC as a Defendant. ECF No. 1. This work included three mediation sessions, two of them in person, and substantial work preparing for the mediations, negotiating with the multiple Defendants, as well as analyzing data

---

regard to amount paid to Plaintiffs, recommending "that the Court find that the amount of attorneys' fees to be paid under the Agreement does not taint the amount Plaintiffs agreed to accept to settle their FLSA claims"), *report and recommendation adopted*, No. 6:19-CV-700-WWB-LRH, 2021 WL 7450450 (M.D. Fla. June 8, 2021); *Kleeklamp v. Home Performance All., Inc.*, No. 217CV660FTM38MRM, 2018 WL 2986687, at *2 (M.D. Fla. June 6, 2018) ("Because attorney's fees and costs were determined separately and apart from Plaintiffs' recovery, the Undersigned finds that the settlement and attorneys' fees were agreed upon without compromising the amount paid to Plaintiff" and recommending approval of attorneys' fees and costs), *report and recommendation adopted*, No. 217CV660FTM38MRM, 2018 WL 2970982 (M.D. Fla. June 13, 2018); *Pascual v. Scally's Lube & Go Towing & Recovery, LLC*, No. 5:16-CV-636-OC-37PRL, 2017 WL 11049071, at *2 (M.D. Fla. July 12, 2017) (recommending approval of attorneys fees and costs where "the parties represent that they were negotiated separately from Plaintiff's recovery") , *report and recommendation adopted,* No. 5:16-CV-636-OC-37PRL, 2017 WL 11049070 (M.D. Fla. Aug. 2, 2017) (Dalton, J.).

and documents to evaluate a reasonable exposure. ECF No. 101-1 at ¶¶ 15-16. In addition, Plaintiffs served and reviewed written discovery and documents produced by Defendants Commercial Express and COEI, and served and negotiated responses to subpoenas served on multiple non-party entities. *Id.* at ¶ 17. Plaintiffs' Counsel has also submitted briefing on issues related to settlement and has overseen (and will continue to oversee) the settlement process to ensure that the terms of the Settlement Agreement are fulfilled. Plaintiffs' Counsel has expended these efforts over the course of hundreds of hours over this three-year period, and has expended and advanced over twenty thousand dollars in unreimbursed out-of-pocket costs.

As the Court previously found, the settlement is reasonable on its face, and Plaintiffs' recovery was not adversely affected by the amount of attorneys' fees and costs that was separately negotiated. Consistent with the Court's prior finding, the Court should give final approval to Plaintiffs' separately negotiated attorneys' fees and costs.

### D.   The General Release Agreements Do Not Otherwise Render The FLSA Settlement Unfair Under *Lynn's Food*

In addition, Plaintiffs respectfully request that the Court find that, because the separately negotiated General Release Agreements (ECF Nos. 101-4-101-6) do not otherwise render the FLSA settlement unfair, the Court should not opine on or void the agreements. And even were the Court to consider the General Release Agreements, the Court should find that the agreements here are permissible.

1.    **The General Release Agreements and** *Johnson v. NPAS*

The Named Plaintiffs and Defendants in this case have entered into separate, individual General Release Agreements, which provide payments of $10,000.00 each to the Named Plaintiffs, in exchange for a general release of all known and unknown claims against Defendants extending to the date of execution of the Agreements. ECF No. 101-4-6. These amounts were separately negotiated, do not impact or reduce the Wage Settlement Amount, and are supported by separate and independent consideration not otherwise available in an FLSA settlement (such that, were the Court to void these agreements, the Defendants will keep the money and will not get their bargained-for releases).[11]

In its Order dated April 28, 2022, this Court granted in part Plaintiffs' Motion for Preliminary Approval, and reserved a ruling on the General Release Agreements pending a final decision in *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020).

Since the Order granting preliminary approval was issued, the Eleventh Circuit denied rehearing *en banc* in the *NPAS* case, in which four Circuit Court Justices entered a lengthy dissenting opinion. *Johnson v. NPAS Sols., LLC*, 43 F.4th 1138 (11th Cir. 2022). On September 7, 2022, the Second Circuit issued an opinion, *Hyland v. Navient*

---

[11]    Although these agreements were wholly separate from the Settlement Agreement at issue here, the Parties submitted them to the Court in the interest of transparency. Just as the plaintiffs in *Huff*, 2021 WL 268356, at *4, Plaintiffs do not seek approval of these General Release Agreements, except to the extent that the Court may consider whether they otherwise impact the fairness of the the FLSA Settlement, which, in granting preliminary approval to the Settlement, this Court has already found they do not.

*Corp.*, --- F.4th ----, 2022 WL 4088061, at *9 (2d. Cir. 2022), disagreeing with *NPAS* and rejecting the argument that *Trustees v. Greenough*, 105 U.S. 527 (1881), and *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) prohibit service awards from a common-fund settlement for service on behalf of a class. *Accord* Adopted R&R, at 23 (describing *NPAS* as "something of an outlier among the circuits and is a significant change from long-standing practice").

As of the date of this filing, the timeline for petitioning the U.S. Supreme Court for certiorari in *NPAS* has not yet expired, and, given the Circuit split on this issue, it seems likely that such review will be sought. Thus, the question at issue in *NPAS*—is a payment made from a common fund settlement that is specifically requested as payment for services rendered prohibited by the Supreme Court's prior decisions in *Pettus* and *Greenough* – will not be definitively answered for some time. However, that delay should have no impact on the General Release Agreements at issue here— agreements that are were separately negotiated by the parties for separate consideration (not from a common fund) and otherwise not obtainable in an FLSA settlement. As described below, having found that the "settlement amount is fair and reasonable," Adopted R&R at 14, the Court should not interfere with these separate contracts to void the agreement between the parties.

**2.    The Court's Role in Approving an FLSA Settlement is Cabined by the FLSA's Statutory Mandate and *Lynn's Food***

As this Court has stated, Congress enacted the FLSA to remedy "inequalities in bargaining power between employers and employees." *Rivera v. U.S.A. Transporter*

*Servs., Inc.*, No. 6:16-cv-2158, 2017 WL 11049718, at *1 (M.D. Fla. Apr. 7, 2017) (Dalton, J.) (citing *Lynn's Food Stores, Inc. v. United States ex rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982). To further this congressional purpose, the U.S. Court of Appeals for the Eleventh Circuit has placed "limits on the ability of private parties to settle FLSA lawsuits." *See Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307 (11th Cir. 2013); *see also Lynn's Food*, 679 F.2d at 1352 (holding that an employee's rights under the FLSA "cannot be abridged by contract or otherwise waived").

The review of FLSA settlements is therefore a judicially created doctrine in this Circuit unique to the FLSA[12], and the role of judges under such doctrine is limited to ensuring that the settlement is a "fair and reasonable compromise of the issue in dispute." *Rivera*, 2017 WL 11049718, at *1; *see also Lynn's Food*, 679 F.2d at 1352 (recognizing that "[t]he FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours."). If the settlement is deemed to be fair – *i.e.* it does not reflect unfair terms that are inherent in the inequalities in bargaining power between employers and employees – the Court's role is complete and the settlement should be approved.[13]

---

[12]     One federal district court recently issued an opinion questioning (in the context of an individual FLSA settlement) whether the FLSA requires court approval of a settlement at all. *See Alcantara v. Duran Landscping, Inc.*, No. 2:21-cv-03947-JDW, 2022 WL 2703610, at *4 (E.D. Pa. Jul. 12, 2022) (examining *Lynn's Food* and holding that "[i]t's not clear that *Lynn's Food* stands for the broad proposition that this Court and others have given it.").

[13]     *Cf., e.g., Bonetti*, 715 F. Supp. 2d at 1228 (establishing that an "attorneys' fee that was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court

Indeed, but for the existence of the FLSA collective action settlement, the Court would have no judicial authority to weigh in on this private agreement that concerns non-FLSA claims.[14] Having already decided that the FLSA settlement is a fair and reasonable resolution of a *bona fide* dispute, the Court should not inquire further into this private agreement between the Parties. Such a decision would represent judicial overreach.[15] The Court's authority is properly cabined under the FLSA by the evaluating the agreements as they impact the FLSA claims, as set forth in *Lynn's Food*. Thus, Plaintiffs respectfully submit that, in opining that that the General Release Agreements constitute "prohibited incentive awards" under *NPAS*, Adopted R&R, at 23, Judge Baker's opinion falls beyond the contours of the *Lynn's Food* inquiry.

---

will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel").

[14]    The 11th Circuit also holds that a court is without the power to "rewrite a contract or interfere with the freedom of contract or substitute [its] judgment for that of the parties thereto ...." *Wiand for Valhalla Investment Partners, L.P. v. Rowe*, 2014 WL 12691590, at *3 (11th Cir. Jul. 11, 2014) (citing *Marriott Corp. v. Dasta Construction Co.*, 26 F.3d 1057, 1068 (11th Cir. 1994); *see also Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 (11th Cir. 2000) ("Principles governing general contract law apply to interpret settlement agreements"); *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285 (11th Cir.2001) (it is well settled under Florida law, that "when the terms of a voluntary contract are clear and unambiguous, ... the contracting parties are bound by those terms, and a court is powerless to rewrite the contract to make it more reasonable or advantageous for one of the contracting parties.").

[15]    *See, e.g., Ogden v. Saunders*, 25 U.S. 213, 346-47 (1827) (Marshall, J. in dissent) ("individuals do not derive from government their right to contract, but bring that right with them into society; that obligation is not conferred on contracts by positive law, but is intrinsic, and is conferred by the act of the parties."). And Judge Wolson began his opinion questioning (in the context of an individual FLSA settlement) whether the FLSA requires court approval of a settlement at all with the following statement: "Ronald Reagan described the nine most terrifying words in the English language: 'I'm from the Government, and I'm here to help.' [] As federal judges, we are not immune from the possibility that our "help" will make things worse, not better, for the parties before us." *Alcantara*, 2022 WL 2703610, at *1 (citation omitted).

Indeed, the case law in this District Court is consistent with such a cabining principle. For example, courts have scrutinized proposed terms where the proposed terms were deemed to be unfair to the workers – such as where they include confidentiality, non-disparagement, or overly broad general releases. *See, e.g., Rivera*, 2017 WL 11049718, at \*2. And courts have found general releases to be particularly problematic in the context of an FLSA settlement (unless it is otherwise supported by independent consideration) because of the unique nature of the remedial statute, which differentiates it from most other federal statutes. *See Id.* at \*2 ("***In view of the special protections afforded to FLSA settlements***, there is simply no basis for leveraging compensation to which Plaintiff is legally entitled as a bargaining chip for the release of non-FLSA claims, claims against non-parties, Plaintiff's silence, and Plaintiff's future job prospects.") (emphasis added).[16]

Critically, courts in this District, including this Court, have found that independent, separate agreements between the Named Plaintiff and employers that provide for a general release of all claims do not otherwise render the FLSA settlement unfair where supported by additional and independent consideration.[17] The

---

[16]     Indeed, in *Rivera*, the Court rejected a proposed FLSA settlement that contained a broad general release supported by only the consideration underlying the FLSA settlement. 2017 WL 11049718, at \*1. By contrast, here, the separately-negotiated General Release Agreements are supported by independent consideration and are separate from the FLSA Settlement.

[17]     *See, e.g., Huff v. Bobcat N. Am., LLC*, 2021 WL 268356, at \*4 (M.D. Fla. Jan. 25, 2021), *report and recommendation adopted*, 2021 WL 268355 (M.D. Fla. Jan. 27, 2021) (Dalton, J.); *Martinez v. Ambi Paving, LLC*, 6:18-cv-737-Orl-37GJK, 2018 WL 5003754, at \*3 (M.D. Fla. Oct. 11, 2018) (additional consideration for the release of retaliation claims not pleaded was sufficient) (Kelly. J.), *report and recommendation adopted,* 2018 WL 4963697 (M.D. Fla. Oct.

underlying rationale for permitting such agreements is that the Named Plaintiffs are giving up something of additional value – bargained for complete peace and risk shifting of unknown claims – in exchange for a separate amount certain to which both parties negotiated and agreed.

And while this Court has noted that the value of a general release may be "incalculable," *Rivera*, 2017 WL 11049718, at *2, parties are and should be free to agree on a dollar value for such a general release, so long as it does not otherwise implicate the fairness of the settlement, just as parties in this Court are free to separately negotiate attorneys' fees and costs where it does not otherwise impact the fairness of the FLSA settlement. Parties make risk assessments every time they enter

---

15, 2018) (Dalton, J.); *O'Neill v. Speedster Services, LLC*, 6:18-cv-120-ORL 37GJK, 2018 WL 4956775, at *4 (M.D. Fla. Sept. 11, 2018) (Separate consideration for a general release warranted approval) (Kelly, J.), *report and recommendation adopted*, 2018 WL 4953239 (M.D. Fla. Oct. 12, 2018) (Dalton, J.); *Goodson v. OS Rest. Services, LLC,* 5:17-cv 10-Oc-RBD-PRL, 2018 WL 1701985, at *1 (M.D. Fla. Mar. 21, 2018) (Additional consideration for release did not undermine fairness of FLSA settlement), *report and recommendation adopted,* 2018 WL 1695406 (M.D. Fla. Apr. 6, 2018) (Dalton, J.); *see also, e.g., Vela v. Sunnygrove Landscape & Irrigation Maint., LLC,* No. 2:18-cv-165-FtM-38MRM, 2018 WL 8576382, at *3-4 (M.D. Fla. Oct. 4, 2018), *report and recommendation adopted*, No. 2:18-cv-165-FtM-38MRM, 2018 WL 8576384, at *1 (M.D. Fla. Nov. 7, 2018) (approving a general release, emphasizing that the parties' briefing specifically explained that "(1) the clauses were specifically bargained for between the parties and (2) the mutual general release was not a condition of their FLSA settlement"); *Sibauste v. Forge Motor Sport, Inc.,* Case No: 6:17-cv-2069-Orl-DCI, at 2 *n.1 (M.D. Fla. May 17, 2018) (court approved FLSA settlement without "passing judgment on the enforceability of any of the provisions unrelated to the settlement of Plaintiff's FLSA claim, such as the general release and confidentiality provision for which separate consideration was paid.") (Irick, J.); *Roman v. FSC Clearwater*, LLC, 6:16-cv-969-Orl-41DCI, 2017 WL 1552304, at *n.1 (M.D. Fla. May 1, 2017) (court declined to express opinion on validity of general release agreement for which additional consideration was paid) (Mendoza, J.); *Bell v. James C. Hall, Inc., No. 6:16-CV-218-ORL-41TBS,* 2016 WL 5339706, at *2 (M.D. Fla. Aug. 16, 2016), *report and recommendation adopted*, No. 6:16-CV-218-ORL-41TBS, 2016 WL 5146318 (M.D. Fla. Sept. 21, 2016)(the court must examine if there was an "independent, valuable consideration in exchange for a general release").

into settlement agreements, and the vast majority of them are not subject to any judicial scrutiny.[18] Parties are free to enter into settlements in order to avoid further risk of litigation from a plaintiff who has shown a willingness to file suit. Certainly, in this day of litigation, even in an unmeritorious case, a defendant can expect to spend more than $10,000 in legal fees alone. Under *Lynn's Food*, the Court plays a role in evaluating the fairness of the settlement as it relates to the claims brought under the Fair Labor Standards Act – the inquiry ends there. So long as the general release does not otherwise undermine the relief obtained for the FLSA claims (which, here, the Court has already found they do not), the Court has served its role.

### 3.    Even Were the Court to Consider the General Release Agreements, the Court Should Find that The *Johnson v. NPAS* Decision Does Not Justify Voiding the Separately Negotiated Private Agreements Between the Parties

Even were the Court to consider the General Release Agreements, the Court should find that they are not barred by *NPAS* and that they are otherwise permissible in this case.

*NPAS* is distinguishable from the agreements in this case, as *NPAS* involved a Telephone Consumer Protection Act class brought pursuant to Fed. R. Civ. P. 23, and proposed incentive awards drawn from a common settlement fund. Indeed, as the 11th Circuit made clear in its opinion, the Supreme Court cases of *Greenough* and *Pettus* (the primary authority relied on by the Eleventh Circuit in reaching its conclusions) are

---

[18]    *See Alcantara*, 2022 WL 2703610, at *5 ("Employers weigh risks and settle before—and often to avoid—litigation for any number of reasons.").

"the seminal cases establishing the rule – applicable in so many class-action cases, including this one – that attorneys' fees can be paid ***from a common fund***." *NPAS*, 975 F.3d at 1255-56 (emphasis added). In *NPAS,* the 11th Circuit became an outlier in interpreting these two cases to hold that "that *Greenough* and *Pettus* prohibit the type of incentive award that the district court approved here—one that compensates a class representative for his time and rewards him for bringing a lawsuit." *Id.* at 1260.

In *NPAS*, the parties were clear that the requested amount was "an incentive payment" to come out of the common fund, "for the time and effort he has invested in this Action, and for the benefits his efforts have provided to the Class." *See* Ex. 2, *NPAS Settlement Agreement,* at 6.2 ("Any incentive payment will come from the Settlement Fund and from no other source."). *See also NPAS*, 975 F.3d at 1258 (Class counsel's fee petition asserted that Johnson was entitled to the $6,000 incentive payment because he "took critical steps to protect the interests of the class, and spent considerable time pursuing their claims"—e.g., by "frequently communicat[ing] with his counsel," "ke[eping] himself apprised of th[e] matter," "approving drafts before filing," and "respond[ing] to NPAS Solutions' discovery requests."). The class plaintiff did not provide any additional consideration for the requested incentive award from the common fund, and the scope of the release given by the class plaintiff and the class members was identical. *See* Ex. 2 at Section 17. Any reduction in the incentive payment would increase the amount available for the class members. *Id.*

By contrast, here the Parties specifically and separately negotiated for the additional consideration so that Defendants could obtain the desired scope of release from the Named Plaintiffs, unrelated to the funds available to the Settlement Collective Members.[19] The release encompasses all claims, known or unknown, up to the date of execution of the General Release Agreement, whereas the scope of the release applicable to FLSA collective action members is limited in scope and date- ending on June 22, 2019. *Compare* ECF Nos. 101-04 *with* 101-02. Indeed, Ms. Thomas' (and the other Named Plaintiffs') release provides:

> THOMAS acknowledges she may have claims that are presently unknown based on actions that took place prior to the date she executes this Agreement and that the release contained in this Agreement is intended to and will fully, finally, and forever discharge all claims against Releasees, whether now asserted or not asserted, known or unknown, suspected or unsuspected, which now exist, or heretofore existed, which if known, might have affected her decision to enter this release. THOMAS agrees that, although she may discover facts in addition to or different from those that are currently known or believed to be true with respect to THOMAS's released claims, it is her intention to fully, finally, and forever settle and release any and all claims, without regard to the subsequent discovery or existence of such additional or different facts.

*See* ECF No. 101-4, at 4.

This additional release of all claims, including unknown or undiscovered claims, provided something of value to Defendants, and Plaintiffs agreed to accept such conditions in exchange for the consideration of $10,000 each. And these payments are ***not*** being made from a common fund available to all other Settlement

---

[19]   And there is no indication or suggestion that the negotiations were not at arms' length -- they were overseen by two different wage and hour mediators over the course of three separate all day mediations. Schalman-Bergen Decl., ECF No. 101-1, at ¶¶ 15-17.

Collective Members, like the payments at issue in *NPAS* or the funds available in *Pettus* and *Greenough*. Instead, they were separately negotiated contracts agreed to by all parties. If the Court voids these agreements, Defendants keep their money and they do not receive their bargained-for releases.

Federal district courts in this Circuit have declined to void such similar arrangements, even after *NPAS*.[20] To the extent the Court reads *NPAS* to require more, and specifically in these circumstances, Plaintiffs respectfully submit that this conclusion is contradictory to both the 11th Circuit's directive in *Lynn's Food*, as well as the statutory scheme created by Congress when it drafted and passed the FLSA and its subsequent amendments. The Court should not void the General Release Agreements.[21]

---

[20]   *See, e.g., Tweedie v. Waste Pro of Fla., Inc.*, Case No. 8:19-cv-01827, 2021 WL 3418197 (M.D. Fla. Aug. 5, 2021) (adopting May 4, 2021 Report and Recommendation, (ECF No. 57), in a Fair Credit Reporting Act class action settlement, which provides for a $7,500 incentive award to the named plaintiff in exchange for a general release.); *Broughton v. Payroll Made Easy, Inc.*, Case No. 2:20-cv-41, 2021 WL 3169135, at *4 n.5 (M.D. Fla. Jul. 27, 2021) (approving a FCRA class action settlement under which a named plaintiff would receive $5,000 "as consideration for his agreement to execute a general release and a Supplemental Settlement Agreement," and distinguishing such payment from the type of "incentive or service awards" at issue in *Johnson*); *see also, e.g., Easterwood v. Sedgwick Claims Mgmt. Servs. Inc.*, No. 6:19-CV-700-WWB-LRH, 2021 WL 7450453, at *5 (M.D. Fla. June 1, 2021), *report and recommendation adopted,* No. 6:19-CV-700-WWB-LRH, 2021 WL 7450450 (M.D. Fla. June 8, 2021). And this Court previously approved a settlement with the identical type of agreements entered into here, a decision that the parties relied upon in the course of their negotiations. *See also Huff*, 2021 WL 268356, at *4, *report and recommendation adopted*, 2021 WL 268355 (M.D. Fla. Jan. 27, 2021) (Dalton, J.).

[21]   Moreover, *NPAS* is also inapplicable for the reasons set forth in the Parties' Joint Supplemental Brief In Support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Fair Labor Standards Act Collective Action Settlement Agreement, ECF No. 106, incorporated herein by reference. *First, NPAS* is properly limited to incentive awards for class

## IV.    CONCLUSION

For the foregoing reasons, the Court should:

1) grant final approval of the proposed Settlement Agreement as a fair and reasonable resolution of a *bona fide* dispute;

2) grant final approval for certification of the FLSA claims pursuant to 29 U.S.C. § 216(b) on behalf of the Settlement Collective Members; and

3) dismiss the lawsuit with prejudice.

Dated: September 15, 2022                    Respectfully submitted,

<u>/s/ Sarah R. Schalman-Bergen</u>
Sarah R. Schalman-Bergen
Krysten Connon
LICHTEN & LISS-RIORDAN, PC
729 Boylston St, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
ssb@llrlaw.com
kconnon@llrlaw.com

Janet R. Varnell
Brian W. Warwick
VARNELL & WARWICK, P.A.
1101 E. Cumberland Ave.
Suite 201H, #105
Tampa, FL 33602

---

actions brought under Fed. R. Civ. P. 23 – indeed, the *NPAS* Court's decision explained that the remedy for the "result we've reached" is for the Rules Committee or Congress to "amend Rule 23" or to provide for incentive awards by statute. 975 F.3d at 1260. This suggests that the Eleventh Circuit's opinion is intended to apply to class action incentive awards – *not* the separately negotiated general releases agreements in question here. *See* ECF No. 106, at 4. And *second,* the *NPAS* Court found a prohibition on the "type of incentive award that the district court approved here – one that compensates a class representative for his time and rewards him for bringing a lawsuit." 975 F.3d at 1260. For the reasons already described herein and in the Parties' joint submission, the type of payment at issue in *Johnson* is not the one made pursuant to the separate General Release Agreements executed by the Parties.

(352)753-8600
jvarnell@vandwlaw.com

Ryan Hancock
WILLIG, WILLIAMS & DAVIDSON
rhancock@wwdlaw.com
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103

Michaela L. Wallin
BERGER MONTAGUE PC
mwallin@bm.net
1818 Market Street, Suite 3600
Philadelphia, PA 19103

*Attorneys for Plaintiffs and the FLSA Collective*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies a true and correct copy of the foregoing has been filed on the ECF docket and is available for viewing and download on this 15th day of September, 2022.

s/ Sarah R. Schalman-Bergen
Sarah R. Schalman-Bergen
